1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   DAVID A. SCHWARZ, Cal Bar No. 159376
3  dschwarz@sheppardmullin.com
   BARBARA E. TAYLOR, Cal Bar No. 166374
4  btaylor@sheppardmullin.com
   KRISTA L. LANDIS, Cal. Bar No. 348262
5  klandis@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
6  Los Angeles, California 90067-6055
   Telephone:   310.228.3700
7  Facsimile:   310.228.3701

8  BARSAMIAN & MOODY
      A Professional Corporation
9  RONALD H. BARSAMIAN, Cal Bar No. 81531
   ronbarsamian@aol.com
10 1141 West Shaw Avenue, Suite 104
   Fresno, California 93711
11 Telephone:   559.248.2360
   Facsimile:   559.248.2370
12
   ROLL LAW GROUP P.C.
13 KRISTINA M. DIAZ, Cal Bar No. 151566
   Kristina.Diaz@Roll.com
14 11444 W. Olympic Boulevard
   Los Angeles, California 90064
15 Telephone:   310.966.8400
   Facsimile:   310.966.8810
16
   Attorneys for Wonderful Nurseries LLC
17
                    U.S. DISTRICT COURT
18
              FOR THE EASTERN DISTRICT OF CALIFORNIA
19

20
   WONDERFUL NURSERIES LLC,                 | Case No.
21
            Plaintiff,                      | **VERIFIED COMPLAINT FOR:**
22
            v.                              | **(1) VIOLATION OF DUE PROCESS**
23                                          | [U.S. Const., amends. V, XIV; 42 U.S.C.
   AGRICULTURAL LABOR RELATIONS             | § 1983 and § 1988];
24 BOARD; VICTORIA HASSID in her
   official capacity as Chairperson of the  | **(2) VIOLATION OF EQUAL**
25 California Agricultural Labor Relations   | **PROTECTION** [U.S. Const., amend.
   Board; ISADORE HALL III, BARRY           | XIV; 42 U.S.C. § 1983 and § 1988];
26 BROAD,  RALPH LIGHTSTONE, and
   CINTHIA N. FLORES, in their official     | **(3) DECLARATORY AND**
27 capacities as Members of the California   | **INJUNCTIVE RELIEF** [28 U.S.C. §§
   Agricultural Labor Relations Board;      | 2201, 2202]
28 SANTIAGO AVILA-GOMEZ. in his

SMRH:4925-0179-9178.6 | VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  official capacity as Executive Secretary of
   the California Agricultural Labor Relations
2  Board; and DOES 1 through 100 inclusive,

3          Defendants.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 5

II.    THE PARTIES ......................................................................................... 12

III.   JURISDICTION AND VENUE ............................................................... 14

IV.    THE MMC STATUTORY SCHEME ....................................................... 14

V.     PROCEDURAL BACKGROUND .......................................................... 19

       A.     The Majority Support Petition ("MSP") Certification ................... 19

       B.     The ALRB Refuses To Stay The Legal Effect Of The Certification
              Pending Resolution Of Wonderful's "Election" Objections ....................... 20

       C.     The ALRB Denies The Farm Workers' Request To Intervene .................... 20

       D.     Wonderful Is Compelled Into MMC ................................................ 21

       E.     The Superior Court Preliminarily Enjoins Enforcement Of The MSP
              Statute ......................................................................................................... 22

       F.     The Court of Appeal Vacates The Preliminary Injunction Pending
              Appeal ......................................................................................................... 23

       G.     The MMC Process Resumes ........................................................... 24

VI.    THE LEGAL AND PRACTICAL CONSEQUENCES OF MMC ........................... 24

       A.     Compelled Association .................................................................... 24

       B.     Freedom Of Labor ........................................................................... 27

       C.     Freedom Of Contract ....................................................................... 30

VII.   THE MERITS OF WONDERFUL'S CONSTITUTIONAL  CHALLENGES
       CAN AND SHOULD BE DECIDED NOW ..................................................... 31

FIRST CAUSE OF ACTION VIOLATION OF DUE PROCESS UNDER THE
       FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION ..................... 37

       A.     California's Compulsory Arbitration Scheme Deprives Farm Owners
              Of Liberty And Property Without Due Process Of Law. ............................. 38

       B.     The U.S. Supreme Court Has Already Concluded That Compulsory
              Arbitration Schemes Similar To California's MMC Statute Violate
              Due Process. ................................................................................................ 40

SECOND CAUSE OF ACTION VIOLATION OF DUE PROCESS UNDER THE
       FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION ..................... 44

A.   MMC Violates Due Process By Depriving The Employer With No Exit From Compulsory Arbitration Or Any Safeguards To Secure A Reasonable Rate Of Return. ........................................................... 44

THIRD CAUSE OF ACTION VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION ...................... 47

A.   The MMC Statute's Delegation Of Coercive State Power To A Private, Self-Interested Union Violates Due Process Of Law. ................. 47

FOURTH CAUSE OF ACTION VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION ...................... 52

A.   MMC Impermissibly Combines "Mediation" And "Adjudication" Functions In One Decision-Maker. ................................................. 53

B.   The MMC Statute Precludes Admissibility Or Judicial Review Of "Off-The-Record" Or *Ex Parte* Mediation Communications. ...................... 55

FIFTH CAUSE OF ACTION VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION ........ 57

A.   The MMC Statute Violates Due Process By Requiring "Parties" To Bear Half The Costs Of A Compelled Contracting Process. ........................ 57

SIXTH CAUSE OF ACTION VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION ................................................................................. 60

A.   The MMC Statute Violates Equal Protection By Empowering A Self-Interested Union To Compel Individualized And Arbitrary Distinctions By The State Among Similarly Situated Employers. ............... 60

SEVENTH CAUSE OF ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF ................................................................................................. 65

PRAYER FOR RELIEF ................................................................................. 66

1    Plaintiff Wonderful Nurseries LLC ("Wonderful" or "Plaintiff") alleges in this

2   verified complaint for declaratory and injunctive relief, and for nominal damages, based on

3   violations of Wonderful's constitutional rights committed by Defendant California

4   Agricultural Labor Relations Board and each of its members in their official capacity,

5   pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourteenth

6   Amendment to the United States Constitution, as follows:

7   **I.    INTRODUCTION**

8    1.    This case presents the question whether a state may impose a collective

9   bargaining agreement ("CBA") on one private employer and its employees by force of law

10  by means of nonconsensual arbitration. Under 2002 amendments to California's

11  Agricultural Labor Relations Act ("ALRA"), the Agricultural Labor Relations Board

12  ("ALRB" or the "Board") may compel a private agricultural employer into a state-

13  administered process known euphemistically as "mandatory mediation and conciliation"

14  ("MMC"), in which the ALRB dictates a collective bargaining agreement without the

15  approval of the employer and without submitting the "agreement" to the workers for

16  ratification. *See* California Labor Code ("Lab. Code") §§ 1164 *et seq*. (the "MMC

17  Statute"). Once imposed, the MMC "contract" entrenches the union by barring the right of

18  employees to petition for a secret ballot decertification election during the term of this

19  State-dictated "agreement." This constitutionally indefensible treatment of farmers and

20  farmworkers infringes upon the liberty and property interests and associational rights of an

21  individual employer and its employees and violates the Due Process and Equal Protection

22  Clauses of the U.S. Constitution.

23   2.    Outside of times of war or other national emergencies where continuity of

24  private business operations is in the vital public interest, the Constitution does not permit a

25  state to force one employer to accept specific contract terms against its will simply because

26  it is the government's preferred labor policy.  MMC imposes terms and conditions

27  applicable to only one employer and one workplace, while denying the employer its right

28  to resist state-compelled contract concessions, and without any requirement that similar

1   terms and conditions be applied to similarly situated competitors. This is the very

2   antithesis of equal protection, because each imposed "agreement" will be its own set of

3   rules applicable to one employer and its employees, but not to others in the same

4   legislative classification.

5       3.      In three related cases that are a foundation of modern labor law, the U.S.

6   Supreme Court unanimously struck down a Kansas compulsory arbitration scheme closely

7   analogous to MMC because it infringed on the liberty and property interests of private

8   employers and employees without due process of law and violated the employees' freedom

9   of association. *See Wolff Packing Co.* v. *Indus. Court* (*Wolff I*), 262 U.S. 522 (1923);

10  *Dorchy* v. *Kansas*, 264 U.S. 286 (1924) (*Dorchy I*); *Wolff Packing Co.* v. *Indus. Court*,

11  267 U.S. 552 (1925) (*Wolff II*) (collectively, "*Wolff Packing*" or the "*Wolff* trilogy"); *see*

12  *also Dorchy* v. *Kansas*, 272 U.S. 306, 307 (1926) (*Dorchy II*) (recognizing the qualified

13  constitutional right to strike). *Wolff Packing* established the constitutional dividing line

14  between mandatory collective bargaining and compulsory imposition of terms which has

15  guided American labor law ever since.[1]

16      4.      Thus, when the Supreme Court stated that the Kansas Act compelled a

17  worker "to give up that means of putting himself on an equality with his employer which

18  action in concert with his fellows gives him," *Wolff I*, 262 U.S. at 540, it recognized that

19  true "freedom of contract" was illusory so long as workers were not allowed to engage in

20  their constitutionally protected rights of free speech, association, and collective action

21  (including the right to strike) necessary to obtain bargaining equality. The workers'

22

---

23  [1] *See, e.g.*, *NLRB* v. *Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45 (1937) (*Jones & Laughlin*) (U.S. labor law "does not compel agreements between employers and

24  employees," and "does not compel any agreement whatever"); *Associated Press* v. *NLRB*, 301 U.S. 103, 120 (1937) (upholding NLRA against due process challenge because statute

25  "does not fix wages or hours, or provide for compulsory arbitration of labor disputes");

26  *Virginian Ry. Co.* v. *Ry. Employees*, 300 U.S. 515,  543, 548 (1937) (upholding constitutionality of amendments to the Railway Labor Act based on the distinction

27  between the "voluntary submission to arbitration" and compelled agreements between employer and employees).

28

SMRH:4925-0179-9178.6   VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

"fundamental right" to engage in collective action, *Jones & Laughlin*, 301 U.S. at 33, along with the employer's right not to be compelled to make contract concessions or to be forced to agree to contract terms, is the constitutional premise upon which the NLRA rests.[2]

5.      *Wolff Packing* has never been overruled or even questioned by the Supreme Court, or by any state court – except one.  In *Gerawan Farming, Inc.* v. *ALRB*, 3 Cal.5th 1118 (2017) (*Gerawan I*), *cert. denied*, 139 S. Ct. 60 (2018), the California Supreme Court upheld the MMC Statute against a due process and equal protection challenge, dismissing *Wolff Packing* as a "completely repudiated" relic of the *Lochner* era. This would come as a surprise to the Court's most vociferous contemporary critics of *Lochner,* Justices Holmes and Brandeis.  Each joined the unanimous decisions in *Wolff Packing,* with Justice Brandeis writing the opinion of the Court in *Dorchy I.*

6.      The California Supreme Court did not dispute that the State's compulsory arbitration scheme implicates significant liberty and property interests. Nor did it attempt to distinguish MMC from the forced contracting scheme invalidated in *Wolff Packing,* even though the similarities are too obvious to ignore. While labelling *Wolff Packing* a "*Lochner* era relic" is a disingenuous way to avoid any discussion of the actual holdings, it is not a substitute for analysis.  *Cf.* Tribe, *American Constitutional Law* 435 (1978), cited in *Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1630 (2018) ("'*Lochnerizing*' has become so much an epithet that the very use of the label may obscure attempts at understanding").

7.      *First*, dismissing *Wolff Packing* as a "*Lochner* era relic" ignores the distinction between the New Deal Court's repudiation of a substantive due process right to be free from **general** minimum wage and maximum hour legislation and the actual holdings in *Wolff Packing*, which struck down Kansas's **particularized** efforts to restrict the rights of **one employer** and its employees through selective and procedurally unfair

---

[2] Although Congress excluded agricultural laborers from the protections of the NLRA, 29 U.S.C. § 152(3), the ALRA expressly states that the ALRB "shall follow applicable precedents of the NLRA." *See* Lab. Code § 1148.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

unilateral fiat. *Second*, the *Lochner* era cases regulated hours, pay, and working conditions – not speech, association, or the right to organize or strike, fundamental individual rights that were abridged by the "system of compulsory arbitration" condemned in *Wolff Packing*. *Third*, the core holding of *Wolff* is that the state's system of joint compulsion violates <u>both</u> the "freedom of labor" and the "freedom of contract." *Wolff I,* 262 U.S. at 534, 542. "Without this joint compulsion, the whole theory and purpose of the act would fail." *Wolff II*, 267 U.S. at 568. As *Wolff I* explained, the statute "shows very plainly that its purpose is not to regulate wages or hours of labor either generally or in particular classes of businesses," *id.* at 565, but "is intended to compel . . . the owner and employees to continue the business on terms which are not of their making." *Id*. at 569.

8.      This Court has an obligation to decide whether a state law violates the U.S. Constitution, regardless of any pronouncement by the California Supreme Court. *See Moore* v. *Harper*, 600 U.S. 1, 34, 35 (2023). When a state court flouts the U.S. Supreme Court's holdings, judicial review is essential to maintain uniformity of federal law. The proper practice is for lower courts to "follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas* v. *Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

9.      Even so, the California Supreme Court avoided other constitutionally problematic aspects of the MMC Statute. *First*, the MMC Statute violates due process because it denies the employer and its employees <u>existing</u> constitutional rights, not by general law but by arbitrary fiat. California may set minimum wage and maximum hour laws; it may establish rules for recognition of agricultural labor unions; it has broad discretion to regulate workplaces through law, and may even supervise the *process* of collective bargaining outside of areas preempted by federal law, *provided* it does not dictate the substantive outcome. But it cannot by decree compel one employer and its workers to enter into the state's notion of a proper "contract" or craft legal rules applicable to them and no one else. Neither employers nor their employees agree to compulsory arbitration as a "bargained-for" exchange. While states may deprive citizens of liberty and

1  property through due process of law, they may not do so "through arbitrary coercion."

2  *BMW of N. Am., Inc.* v. *Gore*, 517 U.S. 559, 587 (1996) (Breyer, J., concurring).

3      10.    *Second*, the Due Process Clause prohibits the delegation of the State's

4  coercive power to private, self-interested actors without any means to safeguard against the

5  arbitrary exercise of that power. Under the MMC Statute, the union dictates whether,

6  when, and which employer it will force into compulsory arbitration, "'uncontrolled by any

7  standard or rule prescribed by legislative action,'" *General Elec.* v. *N.Y. State Dept of*

8  *Labor*, 936 F.2d 1448, 1454-55 (2d Cir. 1991) (*General Elec.*) (collecting cases and

9  quoting *Seattle Trust Co.* v. *Roberge*, 278 U.S. 116, 122 (1928) (*Roberge*)), and without

10 any residual check to prevent the misuse of that power for personal gain, private bias, or

11 mere "'caprice.'" *Id.* at 1455. "To put it in the words of the constitutional guarantee, when

12 private parties have the unrestrained ability to decide whether another citizen's property

13 rights can be restricted, any resulting deprivation happens without 'process of

14 law.'" *Boerschig* v. *Pipeline*, 872 F.3d 701, 708 (5th Cir. 2017).

15     11.    The MMC Statute allows the ALRB ***no*** discretion in determining whether to

16 compel an employer into MMC. Its sole gatekeeping function is to confirm whether the

17 union made an "initial request" for bargaining at least 90 days prior to demanding MMC. It

18 does not matter whether the union thereafter attempted to engage in bargaining, or was

19 rebuffed. Once the bargaining request is sent, the union may do nothing other than to sit

20 back, wait for the 90-day period to elapse, and then demand that the ALRB direct the

21 parties into MMC.

22     12.    Such coercive official power may only be wielded by disinterested parties.

23 According to the California Supreme Court, "the *availability* of [MMC], as an ultimate

24 recourse, is itself a bargaining tool," *Gerawan I*, 3 Cal.5th at 1157. Even that threat is

25 coercive in nature, since it enables an interested party (a union) to exert pressure on an

26 employer to either make bargaining concessions or to have the contract terms imposed by

27 force of law. *Cf. Arnett* v. *Kennedy*, 416 U.S. 134, 231 (1974) (Marshall, J., dissenting)

28 ("[T]he value of a sword of Damocles is that it hangs — not that it drops.").

13.     *Third*, once directed into MMC, the forced contracting machinery grinds inexorably to the imposition of a government-drafted contract, regardless of the employer's participation in the process. The employer has no right to opt-out or to exit, and no *ex ante* mechanism to ensure the employer can obtain a fair and reasonable return, let alone avoid operating at a loss should the economic "contract" terms dictated by the State turn confiscatory.

14.     *Fourth*, under MMC, a party is forced to submit to a hybrid mediation/ arbitration process in which the decision-maker presides over confidential, "off-the-record" mediation discussions (including *ex parte* settlement communications). Once mediation is "exhausted," the mediator adjudicates the disputed contract terms during the "on-the-record" arbitration phase. This coercive, hybrid process violates due process because it combines "mediation" and "adjudication" functions in one decision-maker. It also highlights the risk that the terms imposed will be based on the subjective leanings of each mediator, particularly as there is no objective standard upon which the mediator must base his determinations, whether standing alone or in comparison to other CBAs.

15.     Thus, under MMC, each individual employer targeted for MMC will have a distinct, unequal, individualized set of rules imposed on it, without any assurance of (discretionary) statutory review. The employer must post a bond in the amount of the "entire economic value" of the MMC contract merely in order to seek that review. The employer has no way to avoid the immediate implementation of the MMC "contract" unless it can demonstrate to a Superior Court by clear and convincing evidence a likelihood of success on appeal and irreparable harm.

16.     The facts here illustrate the need for judicial resolution of the constitutionality of MMC.  *First*, the union that compelled Wonderful into MMC, the United Farmworkers of America ("UFW"), was certified by the Board as the exclusive bargaining representative of Wonderful's agricultural laborers on March 4, 2024, pursuant to 2023 amendments to the ALRA, i.e., the so-called "Majority Support Petition ("MSP") Election" procedures, also known as "Card Check."  *See* Lab. Code § 1156.37 *et seq.* (the

"MSP Statute"). This is not an election in any accepted sense of that word. Card Check allows a union to, in essence, "self-certify" as the exclusive bargaining representative by submitting authorization cards purportedly signed by a majority of the employees in the bargaining unit, albeit without any mechanism to allow the employer (or the Board) to verify the authenticity of individual card signatures or the circumstances surrounding their solicitation.

17.     The MSP Statute limits the ALRB's role in certifying the union to comparing the names on the authorization cards against the employer's payroll roster. At the same time, the MSP Statute requires the ALRB to withhold the evidence of "proof" of majority support, thus eliminating any meaningful opportunity for the employer to challenge, or for a court to review, whether the authorization cards themselves are the product of fraud or forgery *before* the ALRB certifies a union, thereby forcing the employer to recognize and to negotiate with the union, and/or to be forced into MMC.

18.     *Second*, under Card Check's "certify first, investigate later" regime, the union is immediately certified as the representative of workers following the Board's confirmation of the results of the so-called MSP "election." Once certified, employees are foreclosed from seeking to decertify the union for at least for at least 12 months after the certification issues (i.e., the "election bar").  *See* Lab. Code §§ 1156.37(l), 1156.5(a).

19.     In *Gerawan I,* the California Supreme Court upheld the MMC Statute in part based on the availability of a secret ballot election *before* an MMC contract would be imposed. *Gerawan I*, 3 Cal.5th at 1158 (citation and quotation omitted) ("So long as the employees can petition for a new election if they wish to remove the union, the employer has no real cause for concern about whether it is bargaining with the true representative of its employees."). Card Check had not been enacted when the Court offered these assurances. Under the MSP Statute, a union may be certified, without any of the safeguards of a secret ballot election, without first considering objections as to the "proof" of majority support, and without the availability of an a secret ballot election before the MMC "contract" is imposed by final Board order.

20.     *Third*, once the MMC "contract" is imposed, the workers are barred from petitioning for a decertification election during the term of the "agreement." *See* Lab. Code § 1156.7(b). As this case illustrates, there is "real cause for concern" that the combination of the "election bar" and the "contract bar" would deny the right of workers to seek decertification *for years*.

21.     Although *Gerawan I* may be distinguishable because it was decided prior to Card Check's enactment, this is not a basis to avoid a determination of the facial constitutional defects of the MMC Statute, which exist independently from the lack of any adequate safeguards to assure majority rule. That determination may not be avoided by striking down a particular provision of the MMC Statute, or by excising a particular term of the MMC "agreement," where "[m]ost of the provisions of the [MMC Statute] are very intimately connected with the system of compulsory arbitration." *See Dorchy I*, 264 U.S. at 290. As with the scheme invalidated in *Wolff Packing*, California's system of compulsory arbitration *requires* the abridgement of the liberty and property interests of the employer *and* its employees, a point best illustrated by the fact that, on information and belief, every MMC "contract" dictated by the State requires the employer to fire any employee who refuses to surrender a portion of their paycheck to the union. "Without this joint compulsion, the whole theory and purpose of the act would fail." *Wolff I*, 262 U.S. at 541.

## II.     THE PARTIES

22.     Plaintiff Wonderful Nurseries LLC is a Delaware limited liability company with agricultural operations in Wasco, Shafter, and McFarland, California, all of which are in Kern County. Wonderful Nurseries produces grapevines and trees for sale to commercial agricultural producers through cane cutting, bareroot vine harvesting, grafting, potting, irrigation, sorting and grading, shipping, and more.

23.     Wonderful's success depends on its ability to recruit, train, and motivate its most productive workers. High wages, good working conditions, and open communications with management are integral to maintaining low employee turnover and consistently high quality. As of the payroll period immediately preceding the March 4,

1   2024 certification, Wonderful employed 688 full-time and seasonal agricultural

2   employees, including both direct-hire employees and third-party contract laborers.

3       24.    Defendant California Agricultural Labor Relations Board ("ALRB" or

4   "Board") is a state agency with its principal office at 1325 J Street, Suite 1900,

5   Sacramento, California 95814-2944.  The ALRB has statutory authority to order parties to

6   MMC and to issue orders imposing CBA terms pursuant to California Labor Code §1164

7   *et seq.*  On July 10, 2024, the ALRB directed Wonderful into MMC, at the request of the

8   United Farm Workers of America ("UFW"), the labor organization certified on March 4,

9   2024, to represent Wonderful's agricultural employees pursuant to the so-called MSP

10   "election" procedures, Lab. Code § 1156.37 *et seq.*  Wonderful is informed and believes,

11   and on this basis alleges, that the UFW's principal office is at 29700 Woodford-Tehachapi

12   Road, Keene, California 93531.

13       25.    Defendant Victoria Hassid is Chairperson of the ALRB.  Defendants Isadore

14   Hall III, Barry Broad, Ralph Lightstone, and Cinthia N. Flores are members of the ALRB.

15   In their official capacities, each member of the Board is responsible for the exercise of

16   statutory powers vested in the Board, *inter alia*, "to determine the unit appropriate for the

17   purpose of collective bargaining, to investigate and provide for hearings, to determine

18   whether a question of representation exists, to direct an election by a secret ballot pursuant

19   to the provisions of Chapter 5 (commencing with section 1156), and to certify the results

20   of such election, or to certify a labor organization pursuant to section 1156.37 and to

21   investigate, conduct hearings and make determinations relating to unfair labor practices."

22   *See* Lab. Code § 1142(b). The Board is also charged with the responsibility of overseeing

23   the MMC process, and enforcing a final order of the Board imposing a MMC "contract."

24       26.    Defendant Santiago Avila-Gomez is Executive Secretary of the ALRB. The

25   Executive Secretary is appointed by the Board, and has been delegated by the Board "such

26   powers as it deems appropriate" to perform its statutory functions in connection with the

27   administrative determinations, certification, and investigation of the MSP, and under the

28   MMC Statute. (Lab. Code §§ 1142(b), 1145.) On behalf of the Board, Executive Secretary

-13-

Avila-Gomez issued and signed on March 4, 2024 the certification of the UFW ( Exhibit 5), and issued and signed various orders pertinent to the conduct of the MMC proceedings at issue here.

27.     Each of these individuals is named in his or her **official capacity as Board** members, officers, or personnel of the ALRB.

28.     The true names and capacities of defendants DOES ONE through ONE HUNDRED are unknown to Plaintiff, and Plaintiff will seek leave of court to amend this Verified Complaint to allege such names and capacities as soon as they are ascertained.

## III.   JURISDICTION AND VENUE

29.     This case is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourteenth Amendment to the United States Constitution.

30.     The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

31.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

32.     Venue is proper in this Court under 28 U.S.C. § 1391 because Wonderful has its principal place of business in the County of Kern, and because a substantial part of the events giving rise to this claim occurred in this District.

## IV.   THE MMC STATUTORY SCHEME

33.     MMC is a highly expedited, compulsory contracting process, whereby a Board-appointed "mediator" decides the terms of a collective bargaining agreement between the union and the employer, which then becomes an enforceable order of the Board.  The terms of that "contract" are subject to limited, discretionary administrative review.  By its own terms, the MMC contract may be imposed on an employer by a final Board order as soon as 60 to 90 days after the parties are directed into the process.

34.     Under Labor Code section 1164 *et seq.*, a certified labor union may file a declaration with the Board stating that the parties have not been able to reach an agreement and requesting that the Board order the parties to "mandatory mediation and conciliation"

1  of their issues.  The declaration may be filed at any time at least 90 days after an initial

2  demand to bargain has been made by a certified labor organization.

3       35.     Upon issuance of an order directing MMC, the parties must select a mediator

4  within seven days.  Labor Code section 1164(b) requires the party compelled into MMC to

5  pay for one-half of the cost of the mediator's hourly rate.  In other words, the employer is

6  must pay 50 percent of the cost of a compulsory arbitration process into which the

7  employer was forced, without its consent.

8       36.     The mediator can communicate "informally" and off the record with the

9  parties to "clarify or resolve issues."  Cal. Code of Regulations, tit. 8 ("Regs.), §

10 20407(a)(2).  At the conclusion of the mediation period, unless the parties mutually agree

11 to extend the period for another 30 days, the mediator certifies that the mediation phase of

12 the MMC process has been "exhausted."  Lab. Code § 1164(c).  The mediator, now acting

13 as an arbitrator, presides over the "on-the-record" phase of MMC, including the

14 presentation of witnesses, the admission of exhibits, the administering of oaths, and the

15 power to sanction employers who refuse to "participate or cooperate" in the MMC process,

16 including by adopting the proposed contract terms of the union.  *See* Regs., § 20407(a).

17 Absent agreement, and based on the "record" of testimony and admitted evidence, the

18 mediator dictates the terms of the collective bargaining agreement—a function beyond the

19 role of "mediator" in the ordinary sense of that term.

20      37.     The statutory "mediator" has broad discretion to set the terms in accordance

21 with his own views of industrial policy, and may impose conditions on one employer that

22 are not imposed on a competitor; in fact, nothing in the MMC Statute prohibits dissimilar

23 terms between similar agricultural businesses.  The mediator "may consider" certain

24 statutory factors to guide his decision-making, such as "[t]he financial condition of the

25 employer and its ability to meet the costs of the contract," but there is no legal requirement

26 that he apply those criteria in reaching his decision. Lab. Code § 1164(e). The statutory

27 criteria are "nonexclusive" and do not preclude the "mediator" from considering factors

28 not listed.  Nor does the statute provide guidance as to how he should weigh each listed

factor, should he decide to apply them.[3]  Even so, the statutory provisions that allow the mediator to consider these factors in resolving myriad disputed contract terms, or that direct that his particular determinations have some minimal support in the record, provide zero assurance that similarly situated employers will receive the same or similar results under the law.

38.     The California Court of Appeal explained why this is "the very antithesis of equal protection":

> Inevitably, each imposed CBA will still be its own set of rules applicable to one employer, but not to others, in the same legislative classification concerning such matters as wages, benefits, working conditions, hiring, disciplinary and termination procedures, union dues, union membership requirements, duration of the CBA, and other terms and conditions of employment and/or of the employer-union relationship. Thus, the necessary outworking of the MMC statute is that each individual employer (within the

---

[3] Section 1164(e) states: "In resolving the issues in dispute, the mediator may consider those factors commonly considered in similar proceedings, including:

(1) The stipulations of the parties.

(2) The financial condition of the employer and its ability to meet the costs of the contract in those instances where the employer claims an inability to meet the union's wage and benefit demands.

(3) The corresponding wages, benefits, and terms and conditions of employment in other collective bargaining agreements covering similar agricultural operations with similar labor requirements.

(4) The corresponding wages, benefits, and terms and conditions of employment prevailing in comparable firms or industries in geographical areas with similar economic conditions, taking into account the size of the employer, the skills, experience, and training required of the employees, and the difficulty and nature of the work performed.

(5) The average consumer prices for goods and services according to the California Consumer Price Index, and the overall cost of living, in the area where the work is performed."

1  class of agricultural employers who have not entered a first contract) will

2  have a distinct, unequal, individualized set of rules imposed on it.

3  *Gerawan Farming, Inc.* v. *ALRB*, 187 Cal. Rptr. 3d 261, 294-95 (2015), *rev'd*, 3

4  Cal. 5th 1118 (2017).

5        39.     After the "mediator" decides the terms of the collective bargaining

6  agreement, only the employer and the union—but not the farm laborers, who are excluded

7  from participating in MMC—have seven days to petition the ALRB for modification of

8  that decision.  Lab. Code § 1164.3(a). ALRB review is discretionary, highly deferential,

9  and limited to considering whether certain provisions are "unrelated to wages, hours, or

10  other conditions of employment," "based on clearly erroneous findings of material fact," or

11  "arbitrary or capricious." *Id.*

12        40.     The mediator's "report" to the Board setting forth the CBA terms to be

13  imposed must include "the basis for the mediator's determination" and "shall be supported

14  by the record." Lab. Code § 1164(d). A party may challenge the mediator's report by

15  seeking Board review within seven days.  *Id.*, § 1164.3(a).  Review is discretionary, and

16  the grounds for review are narrow.[4] If the Board determines that a *prima facie* case for

17  review has not been made, or if no petition for review is filed, the report becomes the final

18  order of the Board.  *Id.*, §§ 1164.3(b), (d).  If, upon review, the Board finds that one or

19  more grounds for review have been established, it will order the mediator to modify the

20  problematic terms of the CBA.  *Id.*, § 1164.3(c).

21        41.     Within 30 days after the ALRB's order becomes final, the employer and the

22  union may seek review before either a California appeals court or the California Supreme

23  Court.  Lab. Code § 1164.5(a). The workers may not challenge the terms imposed, because

24  the Board does deem farm laborers as "parties" to MMC.  Judicial review is limited to

---

25  [4] The grounds for such review are that a provision of the CBA set forth in the mediator's
26  report is (1) unrelated to wages, hours, or other conditions of employment, (2) based on
    clearly erroneous findings of material fact, or (3) arbitrary or capricious in light of the
27  mediator's findings of fact. (*Id.*) If a prima facie case for review is not shown, or if no
    petition is filed, the report becomes the final order of the Board.  Lab. Code § 1164.3(a).
28

examining whether the ALRB "acted without, or in excess of, its powers or jurisdiction;" the ALRB failed to "proceed[] in the manner required by law;" or "[t]he order or decision of the [ALRB] was procured by fraud or was an abuse of discretion." *Id.*, § 1164.5(b). A court may also determine whether the order violates the U.S. Constitution or the California Constitution. *Id.*, § 1164.5(b)(4).

42.     Although the employer (or labor organization) may seek judicial review of the final ALRB order, the parties are required to immediately implement the terms of the "contract" imposed under MMC.  *See* Lab. Code § 1164.3(f)(2). The filing of a petition for review does not stay the final Board order unless the court finds, "by clear and convincing evidence," that the petitioner will be irreparably harmed by the implementation of the Board's order and has a likelihood of success on appeal. *Id.*, § 1164.3(f)(3). A bond must be posted by the party seeking review "in the amount of the entire economic value of the contract as determined by the board as a condition to filing a petition for a writ of review." Lab. Code § 1164.5(d). "[T]he 'entire economic value of the contract' means the difference between the employees' existing wages and economic benefits and those set forth in the contract." (*Ibid.*)

43.     The MMC order is treated by law as if it were a consensual collective bargaining agreement, with the consequence that employees may not seek to decertify the union until the end of the contract's final year.  By invoking MMC, therefore, a union facing the prospect of decertification can maintain its position as exclusive bargaining representative for years, without any showing of support by the workers it purportedly represents. There is at least one important distinction between the *enforceability* of an MMC "agreement" and a consensual CBA: In the event the employer violates a term of the former, it exposes itself to the possibility of a contempt citation for violation of a decision and order of a State agency, as opposed to facing merely a claim for contractual damages.

V.      **PROCEDURAL BACKGROUND**

A.      **The Majority Support Petition ("MSP") Certification**

44.     On Friday, February 23, 2024, the UFW filed with the Board a majority support petition, or MSP, alleging that there were 350 employees in the bargaining unit, and that the MSP was "accompanied by evidence of support by a majority of the employees currently employed in the unit as required by Section 1156.37(c) of the Act." (Exhibit 1.)  Pursuant to section 1156.37(e)(1), the Board must within five days make "an administration determination" as to whether the petitioning union provided proof of majority support.  The employer must provide a list of all current employees (along with addresses, telephone numbers, job classifications, etc.) within 48 hours after the petition is served.  Lab. Code § 1156.37(d).

45.     Wonderful filed its Employer's Response to Petition for Certification on Monday, February 26, 2024. (Exhibit 2.)  In addition to producing payroll information which revealed the MSP grossly underrepresented the number of current employees in the bargaining unit (thereby lowering the threshold required to demonstrate proof of majority support by approximately 50%), Wonderful submitted employee signature exemplars along with 148 employee declarations in which workers claimed to have been misled into signing card authorizations, or informed the Board that did not want to be represented by the UFW in contract negotiations.  (Exhibit 3; Exhibit 4.)  The ALRB, acting through its Regional Director, concluded it lacked statutory authority to investigate allegations of misconduct, including those relating to forgery of signatures, stating: "[N]either the Act, regulations, nor proposed regulations require or contemplate a procedure whereby the Regional Director must compare signatures of workers to make her determination as to the showing of majority support." (Exhibit 4.)

46.     On Friday, March 1, the Regional Director determined that the UFW had provided 327 authorization cards (out of 640 employees determined to comprise the bargaining unit), or a bare majority showing of 51%.  (Exhibit 3). On Monday morning, March 4, 2024, the ALRB certified the UFW as the exclusive representative of

Wonderful's agricultural laborers (the "Certification") (Exhibit 5.) That evening, the UFW sent a letter requesting Wonderful to bargain over the terms of a CBA (Exhibit 6), thus triggering the 90-day period before MMC may be demanded.  *See* Lab. Code § 1164(a)(2).[5]

**B.     The ALRB Refuses To Stay The Legal Effect Of The Certification Pending Resolution Of Wonderful's "Election" Objections**

47.     Both prior to and immediately after the ALRB's certification of the UFW, Wonderful made repeated attempts to stay the legal effect of the Certification, or at least to hold the MMC process in abeyance pending investigation of employee allegations that UFW representatives falsely assured Wonderful's agricultural laborers that their authorization cards were *not* a vote for the union, but were needed to obtain or confirm a $600 payment from the federal government for COVID-19 related relief.

48.     The ALRB rejected these requests, concluding that the MSP Statute "does not provide a mechanism for a party to request the Board stay the certification." *See, e.g.,* ALRB Admin. Order No. 2024-02, at 2 (March 6, 2024); ALRB Admin. Order No. 2024-04 (March 18, 2024); ALRB Admin. Order No. 2024-08 (April 12, 2024) (citing Lab. Code § 1156.37(f)(3), which explicitly states that post-certification objection proceedings "shall not diminish the duty to bargain or delay the running of the 90-day period" between the union's initial demand to bargain and its right to invoke the MMC process, pursuant to Labor Code section 1164(a)).[6]

**C.     The ALRB Denies The Farm Workers' Request To Intervene**

49.     On April 22, 2024, the investigative hearing examiner ("IHE") appointed by the ALRB to preside over the post-certification objections hearing denied the request of

---

[5] The UFW did not ask for available dates for contract negotiations until May 2, 2024, (Exhibit 7), or roughly 60 days after the union was certified and Wonderful's bargaining obligations incepted.

[6] The administrative orders of the Board are available at https://www.alrb.ca.gov/legal-searches/decision-index/admin-orders/administrative-orders-2024/

1  thirteen Wonderful workers to intervene in the election objection proceedings. (Exhibit 9.)

2  On May 6, 2024, the Board affirmed the IHE's order.  (Exhibit 10.) The Board also refused

3  the workers' California Public Records Act ("PRA") requests to inspect the 327

4  authorization cards deemed to be valid proof of majority support or to even disclose

5  whether the cards of these 13 workers who made the PRA requests were included as part

6  of the "proof" of majority support.[7]

7          **D.**    **Wonderful Is Compelled Into MMC**

8       50.     On June 26, 2024, the UFW petitioned the ALRB to refer Wonderful into

9  MMC. *See* ALRB Admin. Order No. 2024-23 (July 10, 2024) (Exhibit 8.)  The Board

10  rejected Wonderful's request to defer MMC until the Kern County Superior Court

11  adjudicated Wonderful's pending constitutional challenge to the MSP Statute,[8] and

12  referred the parties into MMC on July 10, 2024, finding that the UFW satisfied "the

13  statutory and regulatory criteria for referral to MMC."  Those "criteria" were:  (a) that the

14  UFW is certified as the exclusive bargaining representative of Wonderful's agricultural

15  employees, (b) it has been 90 days since the union's initial request to bargain, and (c) the

16  parties have not entered into a CBA. *See id*., at p. 3 (citing MMC Statute, § 1164(a)(2), and

17  Regs., § 20400(b)).

18       51.     The Board concluded it was without authority "to declare or refuse to

19  enforce the provisions of [the MSP Statute] or [the MMC Statute] as unconstitutional," *id*.,

20

21  _____

  [7] The MSP process is in stark contrast to the card check procedure under the NLRB, where

22  upon the union's demand for recognition based on authorization cards, the ***employer***
compares the authorization cards to payroll records, and thus has the ability to review

23  signatures (from employee personnel files) and question their authenticity, and may
request a secret ballot election in lieu of voluntary recognition of the union.  (*See* ¶¶ 16-21

24  *supra*.)

25  [8] On May 13, 2024, Wonderful filed a verified petition for writ of mandate and complaint

26  challenging the constitutionality of the MSP Statute alleged, *inter alia*, that the
certification process of the MSP Statute, facially and as applied, violates the Due Process

27  Clauses of the California and United States Constitutions, and violates the Separation of
Powers and the Judicial Powers Clauses of the California Constitution.

28

1   at p. 5.  Wonderful did not ask the ALRB to do that which the California Constitution

2   prohibited administrative agencies from doing, *see* Cal. Const., article III, § 3.5.  It asked

3   the Board (a defendant in the pending Kern County Superior Court proceedings) to merely

4   defer its decision to compel Wonderful into MMC pending a judicial determination as to

5   whether the MSP "election" Certification was the invalid result of a constitutionally

6   defective process.

7        **E.      The Superior Court Preliminarily Enjoins Enforcement Of The MSP**

8             **Statute**

9        52.    On July 18, 2024, the Superior Court granted Wonderful's motion for

10  preliminary injunction, finding that (i) "Wonderful is likely to prevail on its due process

11  challenges to Labor Code section 1156.37," (ii) "the harm suffered by Wonderful if it is

12  forced to comply with a process that is likely unconstitutional while waiting until the

13  Agricultural Labor Relations Board's final order becomes effective to challenge the

14  certification (which Wonderful credibly contends is erroneous) is largely irreparable," and

15  (iii) "the public interest weighs in favor of preliminary injunctive relief given the

16  constitutional rights at stake in this matter, … [and] Wonderful has met its burden that a

17  preliminary injunction should issue until the matter may be heard fully on the merits."[9]

18  The Ruling enjoined the Board and UFW from: (1) enforcing the certification; and (2)

19  continuing to conduct the post-certification objections proceedings. The Preliminary

20  Injunction Order ("PI Order") was entered on August 12, 2024.

21       53.    On July 19, 2024, the day after the Superior Court issued its Ruling, the

22  Board notified the parties that the post-certification objections proceedings (ALRB Case

23  No. 2024-RM-002) and the MMC proceedings (ALRB Case No. 2024-MMC-001) were

24  _____

[9] The Superior Court held that Wonderful was not required to await a "final" order of the
25  Board before seeking judicial relief, first, because Wonderful had brought a facial
    challenge to section 1156.37; second, because Wonderful did not have a plain, speedy, or
26  adequate means to challenge the constitutionality of the MSP Statute; and third, that there
    was substantial uncertainty that Wonderful could ever obtain judicial review of the
27  certification.

28

stayed pending further notice from the ALRB.  The following month, on August 12, 2024, the ALRB and the UFW both sought a stay of the PI Order. On August 23, 2024, the Superior Court overruled the Board's and UFW's demurrers. The Superior Court declined the ALRB and UFW's request for a stay of the Preliminary Injunction on September 12, 2024.

**F.     The Court of Appeal Vacates The Preliminary Injunction Pending Appeal**

54.     On August 20, 2024, the ALRB and UFW filed separate Notices of Appeal of the PI Order in the California Court of Appeal (Fifth District) ("5th DCA"), Case Numbers F088515 and F088520 (the "Appeals").  The Appeals were consolidated on September 23, 2024.

55.     On September 12 and 13, 2024, the ALRB and UFW filed separate petitions for a writ of supersedeas vacating the PI Order pending resolution of the Appeals (the "Supersedeas Writ"). In addition, the ALRB and UFW each filed petitions for a writ of mandate directing the Superior Court to vacate its order overruling their demurrers on the basis of failure to exhaust administrative remedies, and dismiss the underlying action (the "Writ Proceedings").

56.     On October 24, 2024, the Fifth DCA issued the Supersedeas Writ and ordered Wonderful to file written returns in the Writ Proceedings within 30 days, without explanation. The UFW immediately demanded that the MMC process resume. On October 30, 2024, Defendant Avila-Gomez, the ALRB Executive Secretary, issued a "Notice Lifting Stay" in the MMC proceedings, notifying the parties that the objections hearing would resume forthwith.  Hearings before the IHE (the fourth assigned by the ALRB to oversee the objections hearing) recommenced on December 10-13, 2024.  Future hearing dates are calendared for January, 2025.

57.     On December 6, 2024, on motion from Wonderful, the Fifth DCA granted the appeal of the PI Order calendar priority, so the appeal will be placed on the first available calendar once it is fully briefed.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### G.    The MMC Process Resumes

58.    The MMC mediator, Matt Goldberg, was empaneled by the ALRB on or about November 12, 2024.  He presided over the first "off-the-record" confidential mediation session on December 19, 2024. The mediator also set the "on-the-record" arbitration phase of the MMC proceedings for February 25, 2025 – February 27, 2025.

59.    Assuming that the arbitration phase of MMC concludes on February 27, 2025, the mediator shall file his report with the ALRB within 21 days "that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement, including all issues subject to mediation and all issues resolved by the parties prior to the certification of the exhaustion of the mediation process." Lab. Code § 1164(d).

60.    Thus, the ALRB could issue a final decision and order imposing the MMC "agreement" on Wonderful and its employees as early *as the end of March, 2025*.

## VI.    THE LEGAL AND PRACTICAL CONSEQUENCES OF MMC

61.    The certification of a labor organization is akin to the grant of a monopoly right to a public utility or common carrier, whereby the state designates the union as the workers' exclusive bargaining representative. *See Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.,* 24 Cal.3d 458, 481-82 (1979), quoting *James* v. *Marinship Corp.,* 25 Cal.2d 721, 731 (1944); *see also J. I. Case Co.* v. *NLRB,* 321 U.S. 332, 335 (1944) (likening terms of collective bargaining agreement to "to the tariffs established by a carrier, to standard provisions prescribed by supervising authorities for insurance policies, or to utility schedules of rates and rules for service). Once certified, nothing – other than the passage of 90 days after the union's initial demand to bargain – stands between the employer and a State-imposed MMC "contract."

### A.    Compelled Association

62.    The MMC contract forces Wonderful to associate with the UFW against its will. *See Janus* v. *American Federation of State, County, and Mun. Employees, Council 31* 585 U.S. 878, 892 (2018) (*Janus*) ("[f]reedom of association . . . plainly presupposes a freedom not to associate]; *see also Roberts* v. *U.S. Jaycees,* 468 U.S. 609, 623 (1984)

1    ("Infringements on [the right to associate for expressive purposes] may be justified by

2    regulations adopted to serve compelling state interests, unrelated to the suppression of

3    ideas, that cannot be achieved through means significantly less restrictive of associational

4    freedoms."). But a compulsory collective bargaining agreement also infringes on the right

5    of *workers* to speak and to associate, because the ALRA bars their right to seek to remove

6    the union during the term of the MMC "agreement."  That amounts to state-compelled

7    association, a direct impingement on the farm workers' liberty interests.

8        63.      In upholding the NLRA against a constitutional due process challenge, the

9    U.S. Supreme Court held that laborers have a "fundamental right" to organize and to select

10    representatives of their own choosing.  *See Jones & Laughlin,* 301 U.S. at 33, citing

11    *American Steel Foundries* v. *Tri-City Council,* 257 U.S. 184, 209 (1921) (Taft, C.J.) (the

12    employees' right of self-organization was "essential to give laborers opportunity to deal on

13    an equality with their employer"). This right of self-determination "is guaranteed by the

14    federal Constitution as an incident of freedom of speech, press and assemblage, and it is

15    not dependent upon the existence of a labor controversy between the employer and his

16    employee." *See County Sanitation Dist.* v. *L.A. Cty. Employees*, 38 Cal.3d 564, 587-88

17    (1985) (citations omitted); *accord id*., at 596 (Bird, C.J., concurring), *citing American Steel*

18    *Foundries*, *supra* at 209.

19        64.      Congress did not create this "fundamental right" when it enacted the NLRA;

20    rather, it "safeguarded" *existing constitutional protections* against state interference in the

21    associational rights of workers. *Jones & Laughlin*, *supra*, at 33-34. As the Supreme Court

22    has explained, "[e]mployees have as clear a right to organize and select their

23    representatives for lawful purposes as the [employer] has to organize its business and

24    select its own officers and agents." *Amalgamated Workers* v. *Edison Co.*, 309 U.S. 261,

25    263-64 (1940). Thus, the NLRA's prohibition against government interference in the

26    exercise of those choices, "'instead of being an invasion of the constitutional right of

27    either, was based on the recognition of the rights of both.'" *Jones & Laughlin*, *supra*, at 34,

28    quoting *Texas N.O.R. Co.* v. *Ry. Clerks,* 281 U.S. 548, 570 (1930).

65.     Conversely, there could be "no clearer abridgement" of free choice than to grant exclusive bargaining status to a union "selected by a minority of its employees, thereby impressing that agent upon the nonconsenting majority." *Int'l Ladies' Garment Workers' Union* v. *NLRB,* 366 U.S. 731, 737 (1961). Regulations that infringe on the freedom not to associate or that compel association may be justified only "to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Smith v. Regents of University of California,* 4 Cal.4th 843, 853 (1993) (internal quotation marks omitted). Assuming that the State may place any limitations on the employee's right to withdraw his or her support for a union, "the resulting burden on freedom of association requires that the procedure be carefully tailored to minimize the infringement." *Ibid.*

66.     Where either the union (or the MMC contract) enjoys majority support, the State can claim the sacrifice of the labor rights of both employer and individual employees is necessary to enable the union to effectively represent the best interests of the bargaining unit as a whole.  There is no requirement that the MMC contract (or, as alleged by 148 (or roughly 25%) of Wonderful's agricultural employees, the UFW itself) enjoys majority support.  Quite the contrary, the workers have no opportunity to vote on the forced contract, let alone to participate in (or to observe even silently) the MMC process.  *See Gerawan Farming, Inc.* v. *ALRB*, 40 Cal.App.5th 241, 278 (2019) (*Gerawan II*) (no constitutional right of public access to on-the-record MMC proceedings).

67.   The impairment of the associational rights of workers goes well beyond the subordination of the individual's economic interests to the collective. On information and belief, every MMC contract imposed by the ALRB includes a so-called "union security" clause – a provision in union contracts which require the employer to fire any worker who refuses to surrender a portion of his wages to the union as "union dues" or "agency fees."[10]

---

[10] *See also Gerawan Farming, Inc.* v. *ALRB,* 52 Cal.App.5th 141, 169 (2020)  (*Gerawan III*) (quoting testimony by UFW First-Vice President Elenes) (emphasis added) ("Well, obviously ... we have an obligation to represent all employees .... ***And again, all our***

1    Because the Board deems union security clauses to be a standard or "typical" provision in

2    virtually every union agreement, the employer's refusal to accede to this clause has been

3    held to constitute bad faith bargaining, *even where the employer has been compelled into*

4    *MMC. See Gerawan III,* 52 Cal.App.5th at 183-184 & n. 19.

5         68.   Requiring an employer to fire an employee who refuses to subsidize the

6    union's speech-related activities infringes on the freedom of association between the

7    employee and employer. Wonderful has standing to seek redress for any injury due to

8    direct violations of its own associational rights, including not only which employees it

9    must fire, but – under the detailed and comprehensive seniority, layoff, promotion, and

10   disciplinary rules that are a staple of every MMC contract – which employees it can rehire.

11        69.   These infringements do not strictly involve regulation of hours, pay, or

12   working conditions. They directly impact First Amendment rights.  To again consider the

13   analogy with a grant of a monopoly to a public utility: "The right of a State to regulate, for

14   example, a public utility may well include, so far as the due process test is concerned,

15   power to impose all of the restrictions which a legislature may have a 'rational basis' for

16   adopting. But freedoms of speech and of press, of assembly, and of worship may not be

17   infringed on such slender grounds." *West Virginia State Board of Education v. Barnette*,

18   319 U.S. 624, 639 (1943).

19        **B.    Freedom Of Labor**

20        70.   Farmworkers have some "generalized due process right to choose one's field

21   of private employment," *Conn* v*. Gabbert,* 526 U.S. 286, 291-92 (1999), a right recognized

22   by Justice Brandeis in the last of the Court's unanimous Kansas Act decisions. *See Dorchy*

23   *II*, 272 U.S. at 311 (Brandeis, J.) ("The right to carry on business — be it called liberty or

24

25   **contracts have some type of union security language** that indicates that the employees are
     either going to pay agency fees or going to pay dues, membership dues. And obviously we
26   need that to be able to collect dues, be able to collect agency fees so that we can fund the
27   work that we're going to have to do to administer the contract and continue improving the
     conditions of other farm workers.")

28

property — has value. To interfere with this right without just cause is unlawful."); *see also Ry. Employees' Dep't* v. *Hanson,* 351 U.S. 225, 234 (1956) ("[T]he right to work, which the Court has frequently included in the concept of 'liberty' within the meaning of the Due Process Clauses may not be denied by the Congress."). The right to hold specific private employment "free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene* v. *McElroy*, 360 U.S. 474, 492 (1959); *Merritt* v. *Mackey*, 827 F.2d 1368, 1370 (9th Cir. 1987) ("It is indisputable that an individual may have a protected property interest in private employment."). An employer has standing to redress for injuries it suffers as a consequence of the deprivation of constitutional rights of its employees.[11]

71.   A compulsory CBA affects the "freedom of labor."  *Wolff I*, 262 U.S. at 542. For example:  A compulsory *collective* bargaining agreement inherently eliminates an ***employee's right to individually bargain with the employer***. An individual worker may negotiate on the basis of his own best interests. A union has leeway to "subordinate the interests of an individual employee to the collective interests of … the bargaining unit." *14 Penn Plaza LLC* v. *Pyett*, 556 U.S. 247, 269 (2009).  Indeed, a union has "powers comparable to those possessed by a legislative body both to create and restrict the rights of

---

[11] *See, e.g.*, *Truax* v. *Raich,* 239 U.S. 33, 38 (1915) ("The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will."). *Wolff I,* 262 U.S. at 541 (emphasis added), is singularly instructive in this regard:

> We are considering the validity of the act as compelling the employer to pay the adjudged wages, and as forbidding the employees to combine against working and receiving them. The penalties of the act are directed against effort of either side to interfere with the settlement by arbitration. Without this joint compulsion, the whole theory and purpose of the act would fail. *The State cannot be heard to say, therefore, that upon complaint of the employer, the effect upon the employee should not be a factor in our judgment.*

-28-

1   those whom it represents." *Steele* v. *Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202

2   (1944).

3          72.    A compulsory collective-bargaining agreement affects **the right to strike**.

4   "Collective-bargaining contracts frequently have included certain waivers of the

5   employees' right to strike." *Mastro Plastics Corp.* v. *NLRB*, 350 U.S. 270, 356 (1956).

6   Based on information and belief, *every* MMC contract imposed by the ALRB includes

7   such a waiver.

8          73.    A compulsory CBA affects **the right to redress for employment grievances.**

9   A union generally has "discretion" when performing its functions under "the collective-

10  bargaining system." *Electrical Workers*  v. *Foust*, 442 U.S. 42, 51 (1979).  As a result, a

11  worker has little ability to "force unions to process … claims" that the unions wish to drop.

12  *Id*.  Based on information and belief, every MMC contract supplants the right of workers

13  to pursue claims as an individual with an intricate grievance and arbitration scheme

14  whereby the union controls which workers are permitted to avail themselves of the

15  process.

16         74.    A compulsory CBA affects **the right to vote on employment terms**. Workers

17  ordinarily may vote (a so-called "ratification vote") on collective bargaining agreements.

18  *See NLRB* v. *Rockaway News Supply Co.*, 345 U.S. 71, 73 (1953).  But under the MMC

19  Statute, the "contract" takes effect by force of law, and without submission to the workers

20  for their approval.

21         75.    The compulsory CBA in this case directly affects **the right of workers to**

22  **hold the bargaining representative accountable** for its actions. Workers ordinarily have

23  the right to "petition … for a decertification election, at which they would have an

24  opportunity to choose no longer to be represented by a union." *Brooks* v. *NLRB*, 348 U.S.

25  96, 100–01 (1954). The MMC contract takes away that right.  Under Labor Code section

26  1156.7(b), a collective bargaining agreement shall be a bar to a petition for election for the

27  term of the agreement, but in any event such bar shall not exceed three years.

28

76.     An employee's interests in taking collective action, in pressing his own grievances, in voting, and in holding his bargaining representative to account are therefore in tension with the union's own interests in perpetuating its monopoly control over the bargaining rights of agricultural laborers (and, of course, its financial interest in continuing to compel farmworkers to hand over a portion of their paycheck as union fees). "It is difficult to assume that the incumbent union has no self-interest of its own to serve by perpetuating itself as the bargaining representative." *NLRB* v. *Magnavox Co.*, 415 U.S. 322, 325 (1974). The union invoking MMC has an interest in obtaining an "agreement" backed by the coercive power of the State, precisely *because* it diminishes the farmworker's right to self-determination and his take-home pay.

77.     The necessary outworking of the MMC process is to empower the union to seize fees from unwilling workers; to require Wonderful to fire workers who refuse to subsidize the UFW; and to bar farm laborers from seeking to decertify the union until the final year of the "contract." At the same time, it forces employees (and their employer) to associate with a union they cannot dislodge, to pay union fees under a CBA they did not ratify, and to relinquish myriad rights, including (as is standard in every MMC contract) the right to strike.

**C.     Freedom Of Contract**

78.     A compulsory collective bargaining agreement involves a total government takeover of the operations of the workplace—hours and breaks, pay and seniority, working conditions, and more – imposed by force of law. It leaves the workers and the employer no flexibility at all, because it dictates precisely how long the employee must work, how much he must be paid, or whether employees may engage in constitutionally protected rights of collective action, including whether to replace or oust their bargaining representative.

79.     A CBA "is more than a contract; it is a generalized code to govern a myriad of cases . . . covering the whole employment relationship." *Steelworkers v. Warrior & Gulf*

1  *Navigation Co.*, 363 U.S. 574, 578-79 (1960).  Agreements reached through consensual

2  negotiation are "an effort to erect a system of industrial self-government." *Id.* at 580.

3       80.    A compulsory CBA involves a takeover of labor-management relations of

4  the workplace by the State — hours and breaks, hiring and firing, pay and seniority,

5  working conditions, the adjustment of grievances, and more – all imposed by force of law.

6  Unlike (e.g.) general minimum wage or maximum hours requirements where the state

7  imposes floors or ceilings, California has undertaken to dictate every single term of the

8  employment relationship at one particular workplace, including by curtailing the ability of

9  farm laborers to exercise their constitutionally protected right to replace or oust their

10  bargaining representative. This goes well beyond general police power legislation.

11       81.    Juxtaposed against this near complete takeover of one employer's economic

12  relationship with its farm workers is the absence of any due process afforded the ostensible

13  beneficiaries of the MMC Statute's protections.  Farm workers are prevented from

14  "intervening" in MMC proceedings, denied any statutory right of judicial review of the

15  "contract," and barred from even observing in silence the "on the record" arbitral phase of

16  MMC.  *See Gerawan Farming, Inc*., 39 ALRB No. 11, at 2, 7 (2013) ("The statutes and

17  regulations governing MMC do not provide any mechanism for third parties to "intervene"

18  in MMC proceedings," and concluding that intervention by workers "would be

19  inconsistent with the structure of MMC and would undermine its functioning."); *Gerawan*

20  *Farming, Inc*., 39 ALRB No. 13 (2013) (barring worker access to the arbitration phase of

21  MMC on the grounds that their presence was not in the public interest), aff'd, *Gerawan II*,

22  40 Cal.App.5th at 278. The workers must depend on the employer to raise their rights in

23  the MMC proceedings, or via the statutory review procedures.

24  **VII.   THE MERITS OF WONDERFUL'S CONSTITUTIONAL**

25         **CHALLENGES CAN AND SHOULD BE DECIDED NOW**

26       82.    There are no exhaustion or abstention considerations standing in the way of

27  this Court deciding the merits of Wonderful's federal constitutional challenges now, before

28  Wonderful suffers further injury.  Even before the inevitable imposition of a MMC

1   contract, Wonderful has suffered, and continues to suffer, from being thrust into an

2   unconstitutional process.

3          83.    In *Axon Enterprise, Inc.* v. *Federal Trade Commission*, 598 U.S. 175 (2023)

4   (*Axon*), the Supreme Court explained that the plaintiff, who brought a facial challenge

5   based on "being subjected" to "unconstitutional agency authority," would suffer the same

6   constitutional injury regardless of whether he prevailed on  his separation of powers claim

7   before the agency, i.e.*,* his claim arose from subjection to an unconstitutional proceeding.

8   *Id.* at 191.  As *Axon* explained: "The court could of course vacate the FTC's order. But

9   Axon's separation-of-powers claim is not about that order; indeed, Axon would have the

10  same claim had it *won* before the agency. The claim, again, is about subjection to an

11  illegitimate proceeding, led by an illegitimate decisionmaker." *Ibid*.  In other words, a

12  "here-and-now injury," *Seila Law LLC* v. *CFPB*, 591 U.S. 197, 212 (2020), once inflicted

13  cannot be undone, since "[j]udicial review of [plaintiffs'] structural constitutional claims

14  would come too late to be meaningful." *Axon*. 598 U.S. at 192.

15         84.    Federal precedent tilts decisively in favor of expeditious judicial resolution

16  of Wonderful's facial constitutional challenges. "The questions of law presented in these

17  proceedings arise under the Constitution, not under the statute whose validity is

18  challenged."  *See Johnson* v. *Robison,* 415 U.S. 361, 367 (1974) (citation and quotation

19  marks omitted). A declaratory relief action is uniquely suited to the expeditious resolution

20  of pure questions of law, especially those involving the constitutionality of statutes. One of

21  the reasons why declaratory relief is appropriate is to avoid requiring a plaintiff to expose

22  himself to the risk of violating the law in order to challenge it.  *See, e.g.*, *MedImmune, Inc.*

23  v. *Genentech, Inc.*, 549 U.S. 118, 128-129 (2007) ("[W]here threatened action

24  by *government* is concerned, we do not require a plaintiff to expose himself to liability

25  before bringing suit to challenge the basis for the threat") (emphasis original); *Maryland*

26  *Right to Life State Political Action Committee* v. *Weathersbee*, 975 F.Supp. 791, 794 (D.

27  Md. 1997) (plaintiff "not required to violate state law to challenge it as violative of the

28

1  Constitution, he need only face 'a credible threat of prosecution'") (quoting *International*

2  *Soc'y for Krishna Consciousness* v. *Eaves,* 601 F.2d 809, 819 (5th Cir.1979)).[12]

3       85.    The threat here is indisputably real. Although the MMC process is moving

4  forward, the Board, as an administrative agency, cannot decide the constitutionality of the

5  MMC Statute. *See* Cal. Const. art. III, § 3.5.  At the same time, the Board has repeatedly

6  stated that it has no authority to stay the MMC proceedings pending the outcome of the

7  MSP objections hearing or of Wonderful's state case challenging the constitutionality of

8  the MSP statute. (*See* Exhibit 8, p. 5; *see* ¶¶ 48, 51 *supra*.)  As the Supreme Court has held,

9  "exhaustion of state administrative remedies should not be required as a prerequisite to

10  bringing an action pursuant to [42 U.S.C.] § 1983." *Patsy* v. *Florida Board of Regents*, 457

11  U.S. 496, 516 (1982).

12       86.    As for the availability of state court judicial review, the MMC Statute

13  provides only discretionary and limited review.  *See* Lab. Code § 1164.5.[13] Moreover, it

14  would be an exercise in futility to ask a lower state court to disagree with the California

15  Supreme Court's holding in *Gerawan I* (*see* ¶ 5, *supra*), or to expect the California

16  Supreme Court to overturn its own decision.  *Cf. Sweet* v. *Cupp*, 640 F.2d 233, 236 (9th

17  Cir. 1981) (noting, in a habeas case: "A number of circuits have held that a petitioner may

18  be excused from exhausting state remedies if the highest state court has recently addressed

19  the issue raised in the petition and resolved it adversely to the petitioner, in the absence of

20

---

21  [12] The justiciability of Wonderful's facial constitutional challenges is explained by the distinction between reviewing a decision by the ***administrator*** made "under" the statute

22  and reviewing the decision by the ***Legislature*** that created the statutory scheme. The

23  decision by the agency involves the application of a particular provision of the law to a particular set of facts or circumstances.  Under those circumstances, a court should be

24  reluctant to inject itself via interlocutory rulings. Among other reasons, these interim agency orders and discretionary decisions may or may not prove dispositive, or even

25  relevant, as to the final agency action.

26  [13] This is so, even though that holding is distinguishable from the procedural posture of

27  Wonderful's case, i.e., Gerawan's employees could seek to decertify the union **before** the MMC contract was imposed.

28

-33-

intervening United States Supreme Court decisions on point or any other indication that the state court intends to depart from its prior decisions."). "[T]he futility doctrine … promotes comity by requiring exhaustion where resort to state courts would serve a useful function but excusing compliance where the doctrine would only create an unnecessary impediment to the prompt determination of individuals' rights." *Id*.[14]

87.    The circumstances here also do not support this Court exercising discretion to abstain, *Younger* v. *Harris*, 401 U.S. 37 (1971), from deciding Wonderful's federal constitutional claims.[15]  First, regardless of whether Wonderful could obtain full review on the merits in state court at some indefinite time in the future, *Younger* abstention requires state proceedings to be pending.  *See Ankenbrandt* v. *Richards*, 504 U.S. 689, 705 (1992) ("Absent any *pending* proceeding in state tribunals, therefore, application by the lowers courts of *Younger* abstention was clearly erroneous.") (emphasis original).  The Supreme Court recently reaffirmed, in *Sprint Communications, Inc.* v. *Jacobs*, 571 U.S. 69 (2013), the limited "scope" of the types of state proceedings warranting *Younger* abstention. "'[O]nly exceptional circumstances … justify a federal court's refusal to decide a case in deference to the States,'" 571 U.S. at 78 (quoting *New Orleans Public Service, Inc.* v. *Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 368 (1989)). Those circumstances are:  (1) "state criminal prosecutions"; (2) "certain 'civil enforcement proceedings'"; and (3) "'civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions.'" 571 U.S. at 78, quoting *NOPSI*, 491

---

[14] Although some of Wonderful's federal constitutional arguments have not been addressed by the California Supreme Court, *see* ¶¶5-9, *supra*, it would be inefficient (to say the least) for this Court to resolve only some of Wonderful's federal constitutional challenges.

[15] "There is no discretion to abstain in cases that do not meet the requirements of the abstention doctrine being invoked. " *Martinez* v. *Newport Beach City*, 125 F.3d 777, 780 (9th Cir. 1977) (citations omitted).

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  U.S. at 368. The only relevant ongoing state proceedings here involving the MMC Statute

2  are the mediation and negotiations before the mediator, which do not trigger *Younger*.[16]

3          88.     In *Sprint*, the Supreme Court held that the Iowa Utility Board's (IUB)

4  proceedings to resolve the question of whether Voice over Internet Protocol (VoIP) calls

5  were subject to intrastate regulation "does not fall within any of the three exceptional

6  categories … and therefore does not trigger *Younger* abstention."  571 U.S. at 70, 79. The

7  only category potentially applicable was civil enforcement proceedings.[17]  However, such

8  proceedings "have generally concerned state proceedings 'akin to a criminal prosecution'

9  in 'important respects.'"  *Id*. at 79, quoting *Huffman* v. *Pursue, Ltd.*, 420 U.S. 592, 604

10  (1975).  In other words, enforcement actions "initiated by 'the State in its sovereign

11  capacity'" "to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for

12  some wrongful act." 571 U.S. at 79-80 (quoting *Trainor* v. *Hernandez*, 431 U.S. 434, 444

13  (1977).)  The IUB proceedings were "initiated" by a "private corporation" and the IUB's

14  "adjudicative authority … was invoked to settle a civil dispute between two private parties,

15  not to sanction Sprint for commission of a wrongful act."  571 U.S. at 80. The Supreme

16  Court emphasized the importance of the "quasi-criminal context," expressly disapproving

17  of the attempt to "extend *Younger* to virtually all parallel state and federal proceedings, at

18  _____

[16] In *Sprint*, as in *NOPSI*, the Supreme Court "assume[d] without deciding … that an

19  administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for *Younger* purposes," instead answering the question whether the "initial

20  [administrative] proceeding is of the 'sort … entitled to *Younger* treatment."  571 U.S. at

21  592 (quoting *NOPSI*, 491 U.S. at 369).

22  [17] The IUB proceeding "was civil, not criminal in character, and it did not touch on a state court's ability to perform its judicial function." *Sprint*, 571 U.S. at 78-79 (providing as

23  examples of the latter a civil contempt order or requirement for posting bond pending appeal).  Regarding the third *Sprint* category, the Ninth Circuit defines the relevant

24  question as whether the federal plaintiff "question[s] the *process* by which [state] courts compel compliance" with state orders.  *See Cook* v. *Harding*, 879 F.3d 1035, 1041 (9th

25  Cir. 2018) (emphasis original). Under this definition, for example, "[t]he mere existence of the appeal bond requirement is not enough," a plaintiff must "actually *challenge* this

26  appeal bond requirement." *Dignity Health* v. *Dept. of Industrial Relations, Division of*

27  *Labor Standards Enforcement*, 445 F.Supp.3d 491, 497-98 (N.D. Cal. 2020).

28

-35-

1   least where a party could identify a plausibly important state interest," as "irreconcilable

2   with [the Court's] dominant instruction that, even in the presence of parallel state

3   proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the

4   rule.'"  *Id.* at 81-82 (quoting *Hawaii Housing Authority* v. *Midkiff*, 467 U.S. 229, 236

5   (1984)).  In other words, one of the three "exceptional  categories" must be satisfied before

6   "additional factors," i.e., "important state interests" and "adequate opportunity to raise

7   [federal] challenges" are considered.  *Sprint*, 571 U.S. at 81.

8         89.    The MMC proceedings are similar in relevant respects to the IUB

9   proceedings the Supreme Court held did not trigger *Younger*, having been "initiated" by

10   the UFW (a private party and not the state) following the parties failure to reach a CBA

11   (and not to punish Wonderful for any alleged wrongful conduct).  (Indeed, *Gerawan I*

12   characterized MMC as a "quasi-legislative" proceeding.)  Even if Board review of the

13   mediator's report and thereafter judicial review of the Board's resulting order is sought,

14   such review is initiated by a "party," and not the state.  (Lab. Code §§ 1164.3 & 1164.5.)[18]

15         90.    More pertinent, the Ninth Circuit did not disturb the district court's holding

16   in *Lopez* v. *Shiroma*, 2014 WL 3689696, at **17-18 (E.D. Cal. July 24, 2014), aff'd in

17   part, rev'd in part, and remanded, 668 Fed. Appx. 804 (9th Cir. 2016), that ongoing ALRB

18   proceedings did not warrant *Younger* abstention. In that case, the district court concluded:

19            The facts of this case are similar to the facts of *Sprint* and *Readylink* in that

20            ongoing ALRB proceedings were initiated to resolve a dispute between

21            private parties. Plaintiff sought the Board's approval and oversight when she

22            petitioned for a decertification election. Later, Plaintiff, Gerawan and the

23            UFW sought review from the ALRB when each alleged objections to aspects

24            of the election. Plaintiff alleges that Defendant [ALRB Regional Director]

25

26   [18] Further indicia of the MMC process not being quasi-criminal is the California Supreme
Court's characterization of the MMC process as "result[ing] in 'quasi-legislative action'"

27   and "a continuation of the ordinary bargaining process."  (*Gerawan I*, 3 Cal.5th at 1133,
1156.)

28

Shawver filed some enforcement actions against Gerawan during these proceedings. However, this Court finds that these activities are secondary to the larger issue in dispute—which is whether the decertification election was conducted properly. This is a dispute between Plaintiff, her employer and the Union; not, at this juncture, between the ALRB and Gerawan or the UFW. Thus, this is not the sort "exceptional case" where *Younger* applies.

2014 WL 3689696, at *8.[19] In sum, the exceptional circumstances allowing discretionary *Younger* abstention are not present here.

**FIRST CAUSE OF ACTION**

**VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION**

**(Compulsory Arbitration)**

**(Against All Defendants)**

**(42 U.S.C. § 1983)**

91.     Wonderful incorporates by reference and realleges each allegation set forth in Paragraphs 1 through 90 above.

92.     "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, §1.

93.     42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

---

[19] In *ReadyLink Healthcare, Inc.* v. *State Comp. Ins. Fund,* 754 F.3d 754, 760 (9th Cir. 2014), the Ninth Circuit held that *Younger* abstention did not attach to a decision of the California Department of Insurance, when the adjudication was initiated to resolve a dispute between an employer and a state insurance fund that acted as a private party, explaining that "[i]f the mere 'initiation' of a judicial or quasi-judicial administrative proceeding were an act of civil enforcement, *Younger* would extend to every case in which a state judicial officer resolves a dispute between two private parties."

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

94.     California's law mandating compulsory arbitration and allowing the ALRB to impose contract terms on certain parties without imposing similar terms on similarly situated parties violates both due process and equal protection.

95.     In depriving Wonderful of these rights, as more fully described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

96.     Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

### A.     California's Compulsory Arbitration Scheme Deprives Farm Owners Of Liberty And Property Without Due Process Of Law.

97.     Since the Magna Carta, the essence of due process is that "there can be no proceeding against life, liberty, or property . . . without the observance of . . . general rules."  *See, e.g.*, *Hagar* v. *Reclamation District No. 108*, 111 U.S. 701, 708 (1884); *Hurtado* v. *California*, 110 U.S. 516, 535-36 (1881) ("Law must be not a special rule for a particular person or a particular case, but 'the general law,' and thus excluding, as not due process of law, special, partial, and arbitrary exertions of power under the forms of legislation.") (cleaned up).  "The words 'due process of law,' were undoubtedly intended to convey the same meaning as the words, 'by the law of the land,' in Magna Carta." *Murray's Lessee* v. *Hoboken Land & Improvement Co*., 18 How. 272, 276 (1855); *see also Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 847 (1992) ("The

guaranties of due process, though having their roots in Magna Carta's '*per legem terrae*,'[20] … have in this country become bulwarks also against arbitrary legislation.") (citations and quotations omitted). Traditionally, "law of the land" has been always understood to require some measure of generality.  An enactment that applied only to a fixed and identifiable class of people would not qualify as the law of the land.  *See* Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 Yale L.J. 1672 (2012).

98.     "From the earliest time, it was understood that the due process right was 'intended to secure the individual from the arbitrary exercise of the *powers of government*.'" *Martinez* v. *High*, 91 F.4th 1022, 1032 (9th Cir. 2024) (Bumatay, J., concurring in the judgment, emphasis original) (quoting *Hurtado*, 110 U.S. at 527); *see also Daniels* v. *Williams*, 474 U.S. 327, 331 (1986) (quoting *Wolff* v. *McDonnell*, 418 U.S. 539, 558 (1974)  ("The touchstone of due process is protection of the individual against arbitrary action of government, *Dent* v. *West Virginia*, 129 U.S. 114, 123 (1889)"). These precedents remain valid.  *See, e.g., United States* v. *Winstar Corp.*, 518 U.S. 839, 897–98 (1996) (plurality opinion of Souter, J., joined by Stevens, O'Connor, and Kennedy, JJ.) (reaffirming "*Hurtado* [and] its principle of generality"); *United States* v. *Lovett*, 328 U.S. 303, 317 (1946) ("[T]hose who wrote our Constitution well knew the danger inherent in special legislative acts which take away the life, liberty, or property of particular named persons."). The law today continues to reflect "the Framers' concern that a legislature should not be able unilaterally to impose a substantial deprivation on one person." *Plaut* v. *Spendthrift Farm, Inc.*, 514 U.S. 211, 242 (1995) (Breyer, J., concurring in the judgment).

99.     The California Supreme Court attempted to portray the MMC process as merely "a continuation of the ordinary bargaining process," and compulsory arbitration as a mere "bargaining tool." *Gerawan I*, 3 Cal.5th at 1157.  But compulsion is not bargaining. *Virginian Ry. Co.*, 300 U.S. at 543, 548.

---

[20] The Latin term *per legem terrae* translates to "by the law of the land" or "by due process of law."

100.    Neither Wonderful nor its workers agreed to compulsory arbitration as a "bargained-for" exchange. *Pyett*, 556 U.S. at 257; *see also Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Junior Univ*, 489 U.S. 468, 479 (1989) (arbitration "is a matter of consent, not coercion").  Instead, Wonderful was forced into this process based on the exercise of the State's "coercive power" over its employment relationship, *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982), on demand by a private, self-interested actor.  "The terms of the 'agreement' determined by the arbitrator [are] imposed upon [the employer] by force of law." *Gerawan I*, 3 Cal.5th at 1091 (citation omitted)). The *ad hoc*, arbitrary drafting of private contracts by a "mediator," which is then imposed by a state agency, without any chance for workers or owners to disapprove, is a coercive substitute for collective bargaining.

101.    The imposition of the MMC order has the legal effect of barring workers from seeking to decertify the union until the final year of the contract, no matter how large a majority of the workers wish to rid themselves of the union. This "makes these [farmworkers] and others similarly situated [] prisoners of the Union." *Emporium Capwell Co.* v. *W. Addition Cmty. Org.*, 420 U.S. 50, 73 (1975) (Douglas, J., dissenting). The systematic elimination of the farmworkers' right to labor, replacing in its stead a complex scheme of rules and restrictions imposed by arbitral fiat, unquestionably infringes upon liberty and property interests of employees and their employer.

**B.     The U.S. Supreme Court Has Already Concluded That Compulsory Arbitration Schemes Similar To California's MMC Statute Violate Due Process.**

102.    In his monumental study of the Taft Court, Professor Robert Post states that the most striking feature about *Wolff Packing* "is its unanimity," which he ascribes to the Justices' shared recognition of "a sphere of individual liberty that was beyond the

administrative management of the state."[21] As with the Kansas Act invalidated in *Wolff,* the MMC unconstitutionally intrudes on "the freedom of contract and of labor secured by the Fourteenth Amendment." *Wolff I*, 262 U.S. at 540.

103.   In *Wolff I*, the U.S. Supreme Court examined a Kansas statute that, among other provisions, required employers "to pay the wages fixed" by the state agency in compulsory arbitration proceedings, and forbade the workers to "strike against them." *Id*. at 540. The joint compulsion scheme in *Wolff Packing* was not about the "regulat[ion] [of] wages or hours of labor either generally or in particular classes of business." *Wolff II*, 267 U.S. at 565. *Wolff Packing* dealt with a "system of compulsory arbitration" eerily similar to MMC, one that produced individualized, state-imposed labor contracts that extended no further than the employer and its workers subject to this joint compulsion. *Id*. at 569.

104.   The compelled contracting scheme in *Wolff Packing* was a response to post-World War I strikes, which threatened to cripple the nation's railroads, coal mines, steel mills, and other heavily unionized industries. In 1920, Kansas created an administrative agency, the so-called "Court of Industrial Relations," or "CIR," to thwart labor strife in industries "affected with a public interest," defined to include businesses "engaged in the manufacture of food, and clothing, and the production of fuel." *Wolff I,* 262 U.S. at 533.

105.   The Kansas Act required such businesses and their employees to continue operations and employment "on terms fixed by an agency of the State if they cannot agree. . . . [T]he act gives the Industrial Court authority to permit the owner or employer to go out of the business, if he shows that he can only continue on the terms fixed at such heavy loss that collapse will follow," a "privilege" which the Supreme Court described as "generally illusory," in light of the requirements to obtain that relief.  *Id*., at 533-534.  It

---

[21] Robert Post, *The Taft Court: Making Law for a Divided Nation: 1921-1930* (Oliver Wendell Holmes Devise History of the Supreme Court of the United States), , Vol. 10, Ch. 5, at 793 (2023)  (Cambridge University Press). *See also* David A. Schwarz, *Compelled Consent:* Wolff Packing *and the Constitutionality of Compulsory Arbitration*, 12 NYU J. of Law & Liberty 14 (2018) (comparing the MMC contracting regime with the Kansas act struck down in *Wolff Packing*).

"compel[led]" employers and employees in the food, clothing, and fuel industries "to continue in their business and employment on terms fixed by an agency of the state, if they cannot agree." *Id.* Worker rights were also constrained: "A laborer dissatisfied with his wages is permitted to quit, but he may not agree with his fellows to quit or combine with others to induce them to quit." *Id*.

106.    Once subjected to the CIR's wage and hour orders, an employer could avoid compliance only by application for permission to limit or cease operations, "if said application found to be in good faith and meritorious."[22] The employer's only means of exit would be to demonstrate the ruinous financial consequences of the order. In contrast, the MMC Statute provides no *ex ante* mechanism to allow the employer to avoid similar consequences, even if the economic impacts of the terms to be imposed are (theoretically) considered by the arbitrator in fixing wages, hours, benefits and other conditions of employment.

107.    As with MMC, the Kansas scheme depended on the power of the State to compel employees and their employer to submit to a coercive process "to secure such continuity of the business as the legislature believes would result from the settlement of industrial disputes by compulsory arbitration." Alpheus Mason, *The Labor Decisions of Chief Justice Taft,* 78 U. Pa. L. Rev. 585, 620, n. 79 (1930). Though Wolff Packing's business losses the previous year were due to world-wide business conditions beyond the company's control, the CIR concluded that "'the laboring man is not in a position to take advantage of rising markets or prosperous conditions.'"[23] As such, "[t]he purpose of the Act was to ensure that laborers employed in 'these essential industries…receive a fair

---

[22] 1920 Kan. Sess. Laws ch. 29, § 16.

[23] Schwarz, *Compelled Consent, supra* n.21 at 58 (footnotes and internal quotations omitted).

wage and that capital invested therein shall receive a fair return,'" regardless of whether the result would further plunge Wolff Packing's operations into the red.[24]

108.   *Wolff Packing* involved the very kind of selective deprivation of liberty that "due process of law" in its fundamental sense prohibits. The *Wolff* trilogy invalidated a "system of compulsory arbitration" through which the state imposed bespoke contracts extending no further than a given employer and its workers. *Wolff II*, 267 U.S. at 569.  In distinguishing the Kansas scheme from laws of general application, the Court noted that the state did "*not* … regulate wages or hours of labor either generally or in particular classes of business." *Id*. at 565 (emphasis added).  It explicitly *refused* to decide whether the same requirements "would be valid" if they had been made "either general or applicable to all businesses of a particular class." *Id*. at 569. There can be no doubt, in short, that *Wolff Packing* rested—at least in part—on "the traditional 'rule of law' assumption that generality in the terms by which the use of power is authorized will tend to guard against its misuse to burden or benefit the few unjustifiably." *Winstar Corp.*, 518 U.S. at 897 & 898, n. 43).

109.   *Wolff Packing*'s condemnation of *selective* deprivations of liberty has a firm grounding in the text and history of the Due Process Clause. In contrast, *Lochner* and other pre-New Deal "substantive due process" cases struck down laws of *general* application, including those prohibiting all bakers from working for more than sixty hours a week, *Lochner* v. *New York*, 198 U.S. 45 (1905), or general regulations setting minimum wages for all workers in particular industries, e.g., *Adkins* v. *Children's Hospital,* 261 U.S. 525 (1923).

---

[24] *Id*.  As Professor Post explains, Chief Justice Taft "apparently based his [initial draft] decision on the theory that preparing human food was not 'affected with the public interest.' In his final, published version, however, Taft merely cast strong doubt on this question and decided that, even if the Wolff Packing Company were clothed with the public interest, its owners and workers could not be ordered to continue in business "on terms fixed by an agency of the State." Post, at 793, quoting *Wolff I*, 262 U.S. at 534.

110.   The New Deal Court's rejection of *Lochner* is consistent with democratic, majoritarian values.  In contrast, invalidating a selective law "does not disable any governmental body from dealing with the subject at hand," but instead "merely means that the prohibition or regulation must have a broader impact." *Railway Express Agency* v. *New York*, 336 U.S. 106, 112 (1949) (Jackson, J., concurring).

111.   In depriving Wonderful of the rights described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

112.   An actual and substantial controversy exists between Wonderful and the Board regarding the pending MMC process. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court should exercise its discretion to issue a declaratory judgment because the declaratory judgment will serve a useful purpose in clarifying and settling the legal issue involved, and the judgment will finalize the controversy and offer relief from uncertainty.

113.   Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

## SECOND CAUSE OF ACTION

## VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT
## OF THE U.S. CONSTITUTION

### (Lack of Adequate Safeguards)

### (Against All Defendants)

### (42 U.S.C. § 1983)

**A.     MMC Violates Due Process By Depriving The Employer With No Exit From Compulsory Arbitration Or Any Safeguards To Secure A Reasonable Rate Of Return.**

114.   Wonderful incorporates by reference and realleges each allegation set forth in Paragraphs 1 through 90 above.

-44-

115.   "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, §1.

116.   42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

117.   In depriving Wonderful of these rights, as more fully described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

118.   Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

119.    In the context of public utility regulation, the U.S. Supreme Court has set out constitutional limitations on the ratemaking power of the national government to guard against the risk of confiscation that arises if the rates in question are not high enough to allow for recovery of the fixed investments in the enterprise. *See Fed. Power Comm'n* v. *Hope Natural Gas,* 320 U.S. 591 (1944). While these rules leave regulators of public utilities, playing a role not unakin to the mediator, some discretion in making these calculations, they do not grant unchecked power to set up a rate schedule that fails to allow the company to recover sufficient revenues to avoid operating at a loss.

120.   The U.S. Supreme Court has recognized that a collective bargaining agreement "may be likened to the tariffs established by a carrier, to standard provisions prescribed by supervising authorities for insurance policies, or to utility schedules of rates and rules of service." *See J.I. Case*, 321 U.S. at 335.  MMC forces the employer to enter into a collective bargaining arrangement without providing any exit right or mechanism

-45-

that secures the employer "a just and reasonable return" on its extensive investment in all aspects of its business operations.

121.    In *Birkenfeld* v. *City of Berkeley,* 17 Cal. 3d 129 (1976), the California Supreme Court struck down a Berkeley Charter Amendment that imposed "a blanket rollback of all controlled rents" and would prohibit any adjustments in maximum rents except under a unit-by-unit procedure which, the court determined, was unworkable. *Id*. at 136.  Although the law required a reasonable rate of return, the Court held that it did not provide adequate safeguards to reasonably allow the rent board to adjust rents to allow for such a return, *id*. at 170-71, because there was no provision under the law that would permit <u>timely</u> adjustments <u>before</u> the existing rent caps forced the property owners to sell (or to abandon) their properties rather than to maintain them at a loss. *See id*. at 165.

122.    *Birkenfeld* held that "whether a regulation of prices is reasonable or confiscatory depends ultimately on the result reached, . . . *such a regulation may be invalid on its face when its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties.* It is to the possibility of such facial invalidity that our present inquiry is directed." *Ibid*. (emphasis added); *Cotati Alliance for Better Housing* v. *City of Cotati,* 148 Cal.App.3d 280, 286, fn. 5 (1983), citing *Birkenfeld* ("[C]ourts may review the facial validity of a rent control ordinance for *possible* confiscatory effects *before* the ordinance has been allowed to become operative and actual rent ceilings imposed."). *See also Calfarm Ins. Co.* v. *Deukmejian,* 48 Cal. 3d 805, 819 (1989)  ("The just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service. . . ."); *Bayscene Resident Negotiators* v. *Bayscene Mobilehome Park*, 15 Cal.App.4th 119, 134 (1993), citing *Birkenfeld*, and holding that the compulsory arbitration scheme in question "must "provide [ ] . . . [mobile home] park owners with a 'just and reasonable return on their property.'").

123.    In depriving Wonderful of the rights described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

124.    An actual and substantial controversy exists between Wonderful and the Board regarding the pending MMC process. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court should exercise its discretion to issue a declaratory judgment because the declaratory judgment will serve a useful purpose in clarifying and settling the legal issue involved, and the judgment will finalize the controversy and offer relief from uncertainty.

125.    Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

## THIRD CAUSE OF ACTION

## VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

### (Unlawful Delegation)

### (Against All Defendants)

### (42 U.S.C. § 1983)

**A.    The MMC Statute's Delegation Of Coercive State Power To A Private, Self-Interested Union Violates Due Process Of Law.**

126.    Wonderful incorporates by reference and realleges each allegation set forth in Paragraphs 1 through 90 above.

127.    "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, §1.

128.    42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

129.   In depriving Wonderful of these rights, as more fully described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

130.   Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

131.   Under the MMC Statute, the union – not the State of California – decides whether, when, and which employer it will target for forced contracting. The ALRB operates without any discretionary decision-making or control over the union's targeting. Its role in "referring" an employer into MMC requires nothing more than to confirm that 90 days have elapsed since the union's initial request to bargain.  The MMC Statute "abdicate[s] effective state control over state power [to] private parties, serving their own private advantage, [who] may unilaterally invoke state power" over another private party. *Fuentes* v. *Shevin*, 407 U.S. 67, 69-70 (1972).

132.   In *Fuentes*, the Supreme Court struck down the delegation of regulatory authority to private parties – that case involved state power to replevy goods from another – as a violation of the Due Process Clause: "No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark." *Ibid*.

133.   This constitutional due process rationale was recognized by the U.S. Supreme Court over a century ago. The cases are numerous and varied in the application of this constitutional "private nondelegation" tenet.  In the context of industrial regulation, a "majority" of industry participants "whose interests may be and often are adverse to the

1   interests of others in the same business" may not "regulate the affairs of an unwilling

2   minority." *See Carter* v. *Carter Coal Co.*, 298 U.S. 238, 311 (1936).  Regarding zoning

3   decisions, a legislature may not delegate a power to some property owners to "virtually

4   control and dispose of the property rights of others" when they can "do so solely for their

5   own interest." *Eubank* v. *City of Richmond*, 226 U.S. 137, 143–44 (1912); *see also*

6   *Roberge*, 278 U.S. at 121–22.  A creditor may not simply freeze a debtor's wages or seize

7   his goods without making some showing before a judge.  *See Sniadach* v. *Family Finance*

8   *Corp. of Bay View*, 395 U.S. 337 (1969); *N. Ga. Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U.S.

9   601, 606–07 (1975).[25]

10       134.   "These opinions still stand for the proposition that a legislative body may not

11   constitutionally delegate to private parties the power to determine the nature of rights to

12   property in which other individuals have a property interest, without supplying standards

13   to guide the private parties' discretion. " *General Elec.*, 936 F.2d at 1455 ("Otherwise,

14   "administrative decision-making [will be] made potentially subservient to selfish or

15   arbitrary motivations or the whims of local taste.") (citation and quotations omitted).

16       135.   Most recently, the Supreme Court reaffirmed the rule in the context of

17   landlord-tenant law. *See Chrysafis* v. *Marks*, 594 U.S. ___, 141 S.Ct. 2482 (2021) (tenant

18   may not unilaterally prevent eviction by self-certifying financial hardship, where the

19   landlord has no access to a hearing to contest that certification). The due process violation

20   in each of these cases involved vesting self-interested, private actors with unfettered and

---

[25]  Although the Supreme Court was "given the opportunity in [*City of Eastlake* v. *Forest City Enterprises, Inc.*, 426 U.S. 668 (1976)] to overrule the *Lochner*-era cases of *Eubank* and *Roberge,* the Court chose instead to distinguish them," noting that these cases "involved delegations by 'the legislature to a *narrow segment* of the community, not to the people at large.'" *Silverman* v. *Barry*, 727 F.2d 1121, 1126 (D.C. Cir. 1984) (citing *City of Eastland*, *supra* at 677); accord *Rice* v. *Vill. of Johnstown, Ohio*, 30 F.4th 584, 589 (6th Cir. 2022) ("The Court has never overruled *Eubank* or *Roberge.*  And these cases have made occasional appearances in the Court's later opinions."); *Boerschig* v. *Pipeline*, 872 F.3d 701, 707 (5th Cir. 2017), citing *General Elec.*, 936 F.2d at 1455 ("Although this so-called 'private nondelegation' doctrine has been largely dormant in the years since, its continuing force is generally accepted.").

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   unreviewable power while divesting the government of any residual discretion over how

2   that power may be invoked.

3       136.   A state may not delegate power of decision to individuals who "are not

4   bound by any official duty, but are free to withhold consent for selfish reasons or

5   arbitrarily," *Roberge*, 278 U.S. at 122, because it incentivizes self-interested persons  "to

6   seek personal gain by placing arbitrary conditions on the liberty of their adversaries. "

7   *Texas* v. *United States*, 300 F. Supp. 3d 810, 843 (N.D. Tex. 2018), *rev'd on other*

8   *grounds, Texas* v. *Rettig*, 987 F.3d 518 (5th Cir. 2021).  This is "a situation where the

9   Legislature has delegated authority to the very individuals who are to be the subject of the

10  regulations." *Antoine* v. *Department of Public Health,* 33 Cal.App.3d 215, 227-28 (1973)*.*

11  *See also Department of Transportation* v. *Ass'n of American Railroads,* 575 U.S. 43, 62

12  (2015) (Alito, J., concurring) ("When it comes to [a legislative delegation to] private

13  entities, however, there is not even a fig leaf of constitutional justification."). Put another

14  way, "nothing opens the door to arbitrary action so effectively as to allow those officials to

15  pick and choose only a few to whom they will apply legislation," *Railway Express Agency*,

16  336 U.S. at 112 – except perhaps where that official power is wielded by a private, self-

17  interested union against an employer.

18      137.   Under MMC, the mediator fixes the terms of the MMC "agreement." The

19  Board may review them, within the narrow parameters allowed by the MMC Statute.  But

20  *no one* – other than the union triggering the compulsory arbitration process – gets to decide

21  whether, when, and which employers will be compelled into MMC.  Once that happens,

22  the employer has no avenue to avoid the coercive results of this process. Because

23  bargaining to an agreement is no longer consensual, the employer cannot refuse to accede

24  to terms, or engage in other, permitted tactics in any arms-length negotiation. *See NLRB v.*

25  *Insurance Agents' International Union*, 361 U.S. 477, 487–489 (1960) (employers and

26  unions in collective bargaining "proceed from contrary and to an extent antagonistic

27  viewpoints and concepts of self-interest. . . . The presence of economic weapons in

28  reserve, and their actual exercise on occasion by the parties, is part and parcel of the

1  system that the Wagner and Taft-Hartley Acts have recognized.").  Although the employer

2  can walk out of "negotiations," this will not forestall the arbitral decree. A contract will be

3  imposed, regardless of whether the employer participates in the process. *See* Regs., §

4  20407(a)(1) ("The failure of any party to participate or cooperate in the mediation and

5  conciliation process shall not prevent the mediator from filing a report with the Board that

6  resolves all issues and establishes the final terms of a collective bargaining agreement,

7  based on the presentation of the other party.").

8      138.   An administrative agency may subdelegate to private entities so long as the

9  entities "function subordinately to" the administrative agency and the agency "has

10  authority and surveillance over [their] activities."  *Sunshine Anthracite Coal Co.* v. *Adkins*,

11  310 U.S. 381, 399 (1940).  But here, the ALRB has no say-so whatsoever as to which

12  employer will be subjected to the coercive power of the State, leaving open the risk of a

13  collusive arrangement between a union and a competitor of the farmer targeted for MMC.

14      139.   Second, the forced contract enriches and entrenches the union, allowing it to

15  invoke the power of the State to force farmworkers to choose between losing their jobs and

16  remitting a portion of their salary in agency fees, while barring a decertification election

17  until the end of the term of the MMC contract. The conflict of interest is made more

18  palpable by the inability of the farmworkers to ratify that "agreement," or to participate (or

19  even observe) the process triggered by the union's demand.

20      140.   In depriving Wonderful of the rights described below, Defendants acted

21  under color of state law. This deprivation under color of state law is actionable under and

22  may be redressed by 42 U.S.C. § 1983.

23      141.   An actual and substantial controversy exists between Wonderful and the

24  Board regarding the pending MMC process. The controversy is of sufficient immediacy

25  and reality to warrant the issuance of a declaratory judgment. This Court should exercise

26  its discretion to issue a declaratory judgment because the declaratory judgment will serve a

27  useful purpose in clarifying and settling the legal issue involved, and the judgment will

28  finalize the controversy and offer relief from uncertainty.

-51-

142.   Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

## FOURTH CAUSE OF ACTION VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

**(Role of the Mediator)**

**(Against All Defendants)**

**(42 U.S.C. §1983)**

143.   Wonderful incorporates by reference and realleges each allegation set forth in Paragraphs 1 through 90 above.

144.   "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, §1.

145.   42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

146.   In depriving Wonderful of these rights, as more fully described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

147.   Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

**A.    MMC Impermissibly Combines "Mediation" And "Adjudication" Functions In One Decision-Maker.**

148.    Under MMC, a party is forced to submit to a hybrid mediation/arbitration process in which the decision-maker is expected to engage in "off-the-record" or *ex parte* settlement communications and then adjudicate the dispute.  The coercive, hybrid process violates due process.

149.    The fairness of mediation is predicated on the voluntary nature of the process, *Travelers Casualty and Surety Co.* v. *Superior Ct.*, 126 Cal. App. 4th 1131, 1140 (2004), and the absolute inadmissibility of communications made in the course of mediation.  Cal. Evid. Code §§1119, 1121*; see also Cassel* v. *Superior Court,* 51 Cal.4th 113, 118-19 (2011).  The Evidence Code's mediation confidentiality provisions are "clear and absolute," and bar the discoverability or admissibility "'in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which . . . testimony can be compelled to be given,'" of anything spoken or written in connection with the mediation proceeding.  *Cassel*, 51 Cal.4th at 117-18 (quoting Cal. Evid. Code § 1119 (a), (b)). These provisions "must be strictly applied and do not permit judicially crafted exceptions or limitations, even where competing public policies may be affected." *Id*. at 118.

150.    During MMC, the mediator engages in "off-the-record" discussions whereby the parties share their best offers to settle the dispute voluntarily, whether during plenary mediation sessions or via *ex parte* communications.  All off-the-record MMC communications are subject to the mediation confidentiality protections. *See* Regs., § 20407(a)(2) ("All communications taking place off the record shall be subject to the limitations on admissibility and disclosure provided by Evidence Code section 1119(a) and (c), and shall not be the basis for any findings and conclusions in the mediator's report."). At the same time, the mediator is required to obtain "on-the-record" evidence in an arbitration setting, where the parties present their conflicting positions as to critical terms and conditions of the CBA.

151.   To be sure, parties may *choose* to engage in settlement discussions with the judge presiding over their dispute. Under MMC, the employer's consent is not required. MMC compels the employer into a different choice: Refuse to participate (and have the mediator impose terms proposed by the union, *see* Regs., § 20407(a)(1)), or participate involuntarily in the MMC's hybrid mediation/arbitration process (without consenting to the admixture of both roles in the same person).

152.   This undermines the neutrality of the decision-maker and the decision-making process. *First*, it creates the inherently coercive dynamic whereby a party understands that the mediator may compel terms not agreed to by either party. This "settle, or else" dynamic infects the entire process, whereby a party is, in effect, coerced into making concessions for fear that the adjudication of the same term may yield a worse result.

153.   *Second*, the purpose of the mediator's privilege is to insulate the decision-maker from learning the parties' private settlement positions.  But the MMC process inverts these protections by creating a structurally biased procedure whereby the mediator **is** the decision-maker who obtains privileged communications, and then adjudicates any terms still in dispute.  It is not possible for the mediator to banish all recollection of those off-the-record communications in resolving disputed issues and fixing contract terms. Whatever the mediator learns "off-the-record" has the danger, and certainly the appearance, of biasing the mediator's determination of the provisions of the "agreement."

154.   *Third*, in arbitrations as well as judicial proceedings, *ex parte* communications are presumed to inject bias into the decision-making process, and are to be avoided.  *See* Cal. R. Ct. 3.820(b); *Maaso* v. *Singer,* 203 Cal.App.4th 362, 375 (2012) (affirming vacating an arbitration award based on *ex parte* communications between the neutral arbitrator and the party arbitrator, holding that such communications "undermine the fairness and integrity of the arbitration process"). Yet MMC allows and encourages *ex parte* communications, thus violating fair process and creating an appearance of bias,

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  whether or not prohibited under regulations. *See Sangamon Valley* v. *Television Corp. v.*

2  *United States,* 269 F.2d 221, 224 (D.C. Cir. 1959).

3     **B.      The MMC Statute Precludes Admissibility Or Judicial Review Of "Off-**

4            **The-Record" Or *Ex Parte* Mediation Communications.**

5     155.    Judicial review presumes the ability of the parties to present, and the court to

6  consider, the substantive communications in the underlying proceeding. The same holds

7  true in agency proceedings. For example, under the Rule 1.1 of the California Public

8  Utilities Commission's Rules of Practice and Procedure, the PUC may impose penalties or

9  issue orders to ensure the integrity of the formal record and to protect the public interest

10 when an *ex parte* violation has been found. *See* Cal. Pub. Util. Code §§ 701, 2107, 2108.

11    156.    When an administrative adjudicator uses "evidence" outside the record there

12 is a denial of a fair hearing.  As to that "evidence," there has been no hearing at all. *Cf.*

13 *Morgan* v. *United States*, 304 U.S. 1 (1938) (right to a hearing denied where Secretary of

14 Agriculture fixed maximum rates to be charged by stock yard market agencies in reliance

15 on evidence taken by investigating personnel, with whom the Secretary conferred *ex parte*,

16 accepted their recommendations, and issued an order, without allowing plaintiff to

17 challenge the evidence.).  If a trial-type hearing of the sort mandated by MMC is required

18 by due process of law – clearly this is the case, given that the mediator's report "shall

19 include the basis for the mediator's determination [and] shall be supported by the record,"

20 Lab. Code § 1164(d) – such review is impossible where the record does not disclose the

21 evidence and communications that may have influenced the mediator's decision.  *See*

22 *United Steelworkers of Am.* v. *Marshall* (D.C. Cir. 1980) 647 F.2d 1189, 1215 (noting

23 "general concern that whenever the record fails to disclose important communications that

24 may have influenced the agency decision maker, the court cannot fully exercise its power

25 of review").

26    157.    But under MMC, "off-the-record" communications are subject to the

27 limitations on admissibility and disclosure, *see* Cal. Evid. Code §1119(a)-(c), and "shall

28 not be the basis for any findings and conclusions in the mediator's report." *See* Regs.,

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20407(a)(2). These communications are obviously not a part of the record that may be reviewed in evaluating a "mediator's" decision.  They are "absolutely" barred from any discovery.[26] Cross-examination of the mediator is prohibited under the Board's regulations.  *See* Regs., § 20407(a)(2); *see also Hess Collection Winery,* 29 ALRB No. 6 at 7 (2003).  It is also foreclosed by "simple notions of due process," since the mediator cannot defend himself without violating the mediation confidentiality statutes.  *Cf. Solin* v. *O'Melveny & Myers,* 89 Cal.App.4th 451, 463, 467 (2001) (dismissing malpractice action which could not be resolved without breaching the attorney-client privilege).

158.   Accordingly, once rendered the mediator's decision is effectively immunized from a challenge based on the (mis)use of confidential information, or the failure to consider relevant (albeit confidential) information, in reaching his decision.  This leaves the aggrieved party with no practical means to overturn the findings of the mediator, and no ability of the court to conduct any judicial review of communications immunized from discovery or admissibility.

159.   The deprivation involves fundamental liberty and property interests affecting Wonderful and hundreds of its employees – some of whom complained to the very agency now ordering them to surrender over their bargaining rights to the UFW – by compelling them into a relationship with a union based on an "administrative determination" entirely dependent on card authorizations submitted by a self-interested party, without any pre-deprivation checks on the authenticity of the proof of majority support, and with no means for the employer to review the evidence.

160.   In depriving Wonderful of the rights described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

---

[26] The MMC Statute does not contain any "express statutory exception" to Cal. Evid. Code § 1119 that would permit a court to obtain a communication protected by the mediator's privilege. *Cassel*, 51 Cal.4th at 124.

161.    An actual and substantial controversy exists between Wonderful and the Board regarding the pending MMC process. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court should exercise its discretion to issue a declaratory judgment because the declaratory judgment will serve a useful purpose in clarifying and settling the legal issue involved, and the judgment will finalize the controversy and offer relief from uncertainty.

162.    Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

<div align="center">

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION**

**(Requirement of Parties to Pay MMC Mediation Costs)**

**(Against All Defendants)**

**(42 U.S.C. § 1983)**

</div>

**A.      The MMC Statute Violates Due Process By Requiring "Parties" To Bear Half The Costs Of A Compelled Contracting Process.**

163.    Wonderful incorporates by reference and realleges each allegation set forth in Paragraphs 1 through 90 above.

164.    "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, §1.

165.    42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

166.   In depriving Wonderful of these rights, as more fully described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

167.   Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

168.   Labor Code section 1164(b) states:

Upon receipt of a declaration pursuant to subdivision (a), the board shall immediately issue an order directing the parties to mandatory mediation and conciliation of their issues. The board shall request from the California State Mediation and Conciliation Service a list of nine mediators who have experience in labor mediation. The California State Mediation and Conciliation Service may include names chosen from its own mediators, or from a list of names supplied by the American Arbitration Association or the Federal Mediation Service. The parties shall select a mediator from the list within seven days of receipt of the list. If the parties cannot agree on a mediator, they shall strike names from the list until a mediator is chosen by process of elimination. If a party refuses to participate in selecting a mediator, the other party may choose a mediator from the list. ***The costs of mediation and conciliation shall be borne equally by the parties.***

169.   The MMC process is not a matter of consensual agreement. It is a compelled contracting process, whereby upon demand by an agricultural employer or a certified labor organization, the Board shall "immediately issue an order directing the parties to mandatory mediation and conciliation of their issues." An employer which has no desire or intention to invoke this process is ordered into this process. Whether or not the employer chooses to participate in the choice of mediator, or to even participate in the MMC process itself, a contract shall be imposed.

170.    Under Labor Code section 1164(d), the mediator, acting as an arbitrator, "resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement, including all issues subject to mediation and all issues resolved by the parties prior to the certification of the exhaustion of the mediation process." The mediator also determines the "entire economic value of the collective bargaining agreement" if the parties are unable to agree. Lab. Code § 1164(d).

171.    The statute requires the "parties" to each bear one-half of the costs of mediation and conciliation. The statute makes no allowance based on financial need, the costs of the mediator's hourly fees, or other expenses incurred.

172.    The State may not require a party compelled into a state legal proceedings by order of the State to pay for one-half the public costs of a mediator, who is also imposed by force of law. *California Teachers Assn.* v. *State of California* (1999) 20 Cal.4th 327, 354-55, 357 (invalidating provision requiring dismissed or suspended public teachers to pay for one-half the public cost of the administrative law judge as in "total and fatal conflict with controlling constitutional principles and is invalid on its face.")

173.    In depriving Wonderful of its due process rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

174.    An actual and substantial controversy exists between Wonderful and the Board regarding the pending MMC process. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court should exercise its discretion to issue a declaratory judgment because the declaratory judgment will serve a useful purpose in clarifying and settling the legal issue involved, and the judgment will finalize the controversy and offer relief from uncertainty.

175.    Labor Code section 1164(b) should therefore be declared unconstitutional on its face in violation of Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH

## AMENDMENT OF THE U.S. CONSTITUTION

**(Compulsory Arbitration)**

**(Against All Defendants)**

**(42 U.S.C. § 1983)**

**A.      The MMC Statute Violates Equal Protection By Empowering A Self-
Interested Union To Compel Individualized And Arbitrary Distinctions
By The State Among Similarly Situated Employers.**

176.    Wonderful incorporates by reference and realleges each allegation set forth in Paragraphs 1 through 90 above.

177.    The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

178.    42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

179.    In depriving Wonderful of these rights, as more fully described below, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

180.    Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Equal Protection Clause under the Fourteenth Amendment to the U.S. Constitution.

181.    The core of equal protection is equal treatment — those that are similarly situated shall be treated similarly.  The corollary is that the state cannot "pick and choose"

only a few to whom it will apply legislation. Both principles are violated by the MMC Statute: *first*, by empowering a self-interested union to compel the regulation of individual employers of its choosing; and *second*, by requiring a private mediator to draw individualized classifications that have no rational relationship to the statute's purpose.

182.   A private MMC mediator is not a judge or elected official, but acts in every practical aspect as a quasi-legislator or quasi-judicial officer in fixing the terms of the MMC contract, subject only to a highly deferential standard of administrative and judicial review. A private union is not a prosecutor. But, just as a prosecutor can choose his defendants, here a union can decide, whether for reasons of expediency, profit, or punitive intent, to target a weak employer (with fewer employees) or a successful employer (with many employees). The union has unilateral power to decide which employer will be targeted (some perhaps never), or when, opening the door to collusive arrangements *between* the union and the employer, to the detriment of employees who otherwise would never ratify a consensual CBA imposing agency fees.

183.   A legislative body may adopt laws of a "less than comprehensive fashion by merely 'striking the evil where it is felt most,' *[but] its decision as to where to 'strike' must have a rational basis in light of legislative objectives.  Hays* v. *Wood*, 25 Cal.3d 772, 791 (1979) (emphasis added). The MMC Statute provide no guidance as to "where to strike," in terms of the targeting of a specific employer, leaving that decision entirely to the union.

184.   The California Supreme Court, in essence, concluded in *Gerawan I* that the statutory purpose is to allow the mediator to make individualized, discretionary decisions, and on that basis, any decision is rationally related to that purpose, so long as it is "supported by the record," meaning that the mediator was able to point to other, "typical" terms or provisions in another CBA submitted as evidence, regardless of the other trade-offs involved in any consensual, arms-length, labor contract negotiation.

185.   But reducing rational basis scrutiny to such a tautology violates equal protection by necessitating that individuals, all similarly situated with respect to the statute's aim, be treated distinctly. What results from this process is "special legislation"

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   without any rational basis to distinguish why this employer was singled out, why the

2   differences or similarities as to its business justify treating it differently from other

3   employers, or how such distinctions were made.  This is, as the California Court of Appeal

4   held (before being reversed), "'the very antithesis of equal protection.'"

5         186.  A statute violates equal protection if it "intentionally treated [one individual]

6   differently from others similarly situated and[] there is no rational basis for the difference

7   in treatment." *Vill. of Willowbrook* v. *Olech*, 528 U.S. 562, 564 (2000).  Such an equal

8   protection claim can give rise to a facial constitutional violation where the disparate

9   treatment is "occasioned by express terms of a statute." *Ibid*.; *see also Gerhart* v. *Lake*

10  *Cnty., Mont*., 637 F.3d 1013, 1022 (9th Cir. 2011).  While evidence of unequal or arbitrary

11  application (present here) certainly supports a finding that a statute facially violates equal

12  protection, if a statute "lays down no rule by which its impartial execution can be secured

13  or partiality and oppression prevented," and thereby allows arbitrary distinctions to be

14  drawn, it necessarily violates equal protection.  *See, e.g., Yick Wo* v. *Hopkins*, 118 U.S.

15  356, 370, 372-73 (1886) (licensing decisions must be based on established standards,

16  rather than upon the whim or caprice of the licensor).

17        187.  For purposes of equal protection analysis, the relevant classification is

18  comprised of any employer where the union has been certified to represent the bargaining

19  unit. The distinction within that class as to which employers will be subjected to MMC is

20  left entirely to the discretion of the union. While it is beyond dispute that California has the

21  authority to regulate employment, *see Schaezlein* v. *Cabaniss*, 135 Cal. 466 (1902), the

22  Legislature may not leave "the question as to whether or how these things shall be done or

23  not done to the arbitrary disposition of [an] individual," *id*., at 470, particularly where that

24  individual is neither disinterested nor accountable for his decisions.  The manner by which

25  the MMC Statute permits the targeting of one employer is a perfect example of an instance

26  where the individual has been irrationally singled out from other, similarly situated

27  employers.

28

-62-

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

188.   It is these specific distinctions as to how similarly situated persons are treated, and not the legislative device of compulsory arbitration in the abstract, that must be rationally related to the legislative goals. *Gerhart*, 637 F.3d at 1022.  In *Gerhart*, the Ninth Circuit explained that the district court had made a "crucial error in its analysis of the rational basis requirement "by misconstruing for what there must be a rational basis. The court explained that it was not the legislative act — in that case, denying Gerhart's construction permit application — that must be justified as rational, but rather the decision to "treat[] Gerhart differently" than similarly situated individuals under the statute. *Id.* at 1023; *see also Hodel* v. *Indiana*, 452 U.S.314, 332 (1981). The only conceivable rationale for the distinction drawn between otherwise similarly situated employers within the statute's classification is an irrational and illegitimate one.

189.   Even where rational basis review applies, justifications for legal discrimination "must find some footing in the realities of the subject addressed by the legislation. *Heller* v. *Doe*, 509 U.S. 312, 321 (1993). The only stated purpose of the MMC Statute is to promote stability in bargaining relationships and foster collective bargaining. But the objective of imposing ***some*** CBA on ***some*** employers is accomplished no matter ***which*** employer a union chooses to compel into MMC, and no matter ***what*** terms the mediator ultimately supplies.  The imposition of ***any*** individual term of a CBA on a particular employer, then, is not rationally related to the statute's purpose — *all* terms, whatever their content, would be equally related to the statutory goal of imposing ***some*** CBA.

190.   Based on this statutory objective, the statute might plausibly differentiate between those employers with an existing CBA and those without — treating those classes of employers distinctly may bear a rational relationship to the statutory purpose of promoting collective bargaining. But even within that class, the statute does not discriminate rationally. The only difference between Wonderful and those employers not forced into MMC is that the union chose Wonderful, for reasons that the statute ***does not*** consider, and the ALRB ***may not*** consider

191.    As the California Court of Appeal explained in *Gerawan Farming*, "[B]ecause the mediator has no power to extend the enactment [of a CBA] to other agricultural employers," each regulated employer forms a "class of one," without any means to insure the differences or similarities between contracts bear a rational relationship to the statutory purpose.  187 Cal. Rptr. 3d at 293.  It is not the potential for an individuated outcome, but the <u>certainty</u> that each employer will be subjected to an individual legislative act, which makes the classification intentional.  It is the <u>lack</u> of any nexus between the statutory purpose and the distinctions drawn by any individual mediator which makes the classification arbitrary. *See Barsky* v. *Bd. of Regents  of Univ.*, 347 U.S. 442, 470 (1954) (finding constitutional violation where "a State licensing agency lays bare its arbitrary action, or if the State law explicitly allows it to act arbitrarily").

192.    The California Supreme Court believes that the mediator is guided by various statutory factors that ensure that similarly situated individuals will be treated alike. *See* Lab. Code § 1164(e) (listing "factors commonly considered in similar proceedings"). These are not standards at all.  It is impossible to replicate bargaining (because the mediator cannot understand, based on his review of "comparable" CBAs, the trade-offs that were made as part of a consensual negotiation); he cannot find any equivalence for a fair adjustment of dozens of competing terms in any agreement.

193.    Because the statute does not pass any judgments as to the sort of terms that would foster collective bargaining and stability, a mediator could consider one employer's wages with relation to "comparable firms" and choose to impose a wage increase, a wage decrease, or no change at all, with equal justification.

194.    It is no answer to argue that, by design, the MMC Statute requires the mediator to make subjective, individualized determinations; disparate treatment is to be expected, because no two employers are alike. The MMC Statute's lack of an independent purpose cannot be rescued by analogy to the exercise of prosecutorial or administrative enforcement discretion.  This argument fails for the same reason the MMC Statute suffers from a basic constitutional defect: it provides only arbitrary classifications. The State

cannot simultaneously argue that the MMC Statute affords adequate guiding standards to the mediator <u>and</u> that it is intended to enable subjective determinations that are insulated from rational basis review. *See Merrifield* v. *Lockyer*, 547 F.3d 978, 991 (9th Cir. 2008) ("We cannot simultaneously uphold the licensing requirement under due process based on one rationale and then uphold Merrifield's exclusion from the exemption based on a completely contradictory rationale.").

195.    In depriving Wonderful of due process under the law, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

196.    An actual and substantial controversy exists between Wonderful and the Board regarding the pending MMC process. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court should exercise its discretion to issue a declaratory judgment because the declaratory judgment will serve a useful purpose in clarifying and settling the legal issue involved, and the judgment will finalize the controversy and offer relief from uncertainty.

197.    Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process Clause under the Fourteenth Amendment to the U.S. Constitution.

<div align="center">

**SEVENTH CAUSE OF ACTION**

**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**(Against All Defendants)**

**(28 U.S.C. §§  2201, 2202; 42 U.S.C. § 1983)**

</div>

198.    Wonderful incorporates by reference and realleges each allegation set forth in Paragraphs 1 through 198 above.

199.    Wonderful desires a judicial determination of its rights, the Board's duties, and the constitutionality of the mandatory mediation and conciliation procedures under Labor Code section 1164 *et seq.*, including that part of section 1164(b) relating to the payment of the cost of mediation and conciliation.

200.    A declaration is necessary and appropriate at this time so that Wonderful and the Board may be relieved from the uncertainty and insecurity giving rise to this controversy. A proper remedy to challenge an unconstitutional statute or regulation is an action for declaratory and injunctive relief.

201.    Notwithstanding anything to the contrary under law, an injunction may be granted to prevent the execution of a public state statute, by officers of the law, where the statute violates the U.S. Constitution. *See e.g., Ex parte Young,* 209 U.S. 123 (1908); *Citizens Comm. for Hudson Valley v. Volpe*, 297 F. Supp. 809, 814 (S.D.N.Y. 1969).

202.    In depriving Wonderful of due process and equal protection under the law, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983 by, *inter alia*, a temporary and permanent injunction restraining the enforcement of the MMC Statute. As such, Wonderful has stated a cause of action under section 1983.

203.    An actual and substantial controversy exists between Wonderful and the Board regarding the pending MMC process. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court should exercise its discretion to issue a declaratory judgment because the declaratory judgment will serve a useful purpose in clarifying and settling the legal issue involved, and the judgment will finalize the controversy and offer relief from uncertainty.

204.    Pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, Labor Code section 1164 *et seq.* should therefore be declared unconstitutional on its face in violation of the Due Process and Equal Protection Clauses under the Fourteenth Amendment to the U.S. Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Wonderful prays:

1.    An order declaring that the Defendants violated Wonderful's rights protected under the Fourteenth Amendment of the United States Constitution and under 42 U.S.C. §

1    1983 by enforcing the MMC Statute against Wonderful, and declaring that Labor Code

2    section 1164 *et seq.* is unconstitutional on its face.

3         2.     An order preliminarily and then permanently enjoining Defendants and their

4    agents and all other persons or entities in active concert or privity or participation with

5    them, from enforcing Labor Code section 1164 *et seq.*

6         3.     An entry of judgment for Wonderful for nominal damages of $1 against

7    Defendants in their individual capacities;

8         4.     An award to Wonderful of reasonable attorneys' fees and costs incurred in

9    connection with this action from Defendants under 42 U.S.C. §§ 1983 and 1988, California

10   Code of Civil Procedure section 1021.5, and any other relevant provision of law.

11        5.     For such other and further relief as this court deems just and proper.

12   Dated: December 30, 2024

13                              Respectfully submitted,

14                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

15

16

17                              By    _____
                                              */s/ David A. Schwarz*
                                      DAVID A. SCHWARZ

18

19                              Attorneys for Wonderful Nurseries LLC

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION**

2      I, Rob C. Yraceburu, am President of Wonderful Nurseries LLC, the Petitioner and

3   Plaintiff herein. I have read the foregoing Verified Petition and Complaint and know the

4   contents thereof.  The facts alleged therein are true of my own knowledge, except as to

5   those matters which are therein stated on information and belief, and, as to those matters, I

6   believe them to be true.

7      I declare under penalty of perjury under the law that the foregoing is true and

8   correct.

9      Executed on this 30th day of December 2024, in California.

10

11                                           /s/ Rob C. Yraceburu (original signature
                                              retained by attorney David Schwarz)
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**State of California**

**Agricultural Labor Relations Board**

## Majority Support Petition

`[ Print Form ]`

**Instructions:** Submit an original and two (2) copies of this petition to the ALRB regional office in the region in which the employer concerned is located. If more space is required for any one item, attach additional sheets as necessary.

**Do not write in this space**

Case No. _____

Date Filed: _____

**The Petitioner requests that the Agricultural Labor Relations Board proceed under its authority pursuant to Section 1156.37 of the Agricultural Labor Relations Act of 1975.**

**1. Name, address and phone number of petitioner and its affiliation, if any:**

**Petitioner**

| | |
|---|---|
| Name | United Farm Workers of America |
| Addr | 29700 Woodford-Tehachapi Road | Phone | (661) 823-6105 |
| City | Keene | State | CA | Zip | 93531 | Fax | |
| Email | info@farmworkerlaw.com |

**Affiliation**

| | |
|---|---|
| Name | C/O Martinez Aguilasocho Law, Inc. |
| Addr | P.O. Box 1998 | Phone | (661) 859-1174 |
| City | Bakersfield | State | CA | Zip | 93303 | Fax | |
| Email | info@farmworkerlaw.com |

**2. Name, address and phone number of representative of petitioner authorized to make agreements with the Board and the parties and to accept service of papers:**

| | |
|---|---|
| Name | Erika Navarrete |
| Addr | 29700 Woodford-Tehachapi Road |
| City | Keene | State | CA | Zip | 93531 | Phone | (661) 370- 1444 |
| Email | enavarrete@ufw.org | Fax | |

Page 1 of 4

2

**3. Petitioner alleges:**

a.   That the number of agricultural employees currently employed by the employer named below is not less than fifty percent of his peak agricultural employment for the current calendar year;

b.   That no valid election pursuant to Sections 1156.3 or 1156.37 has been conducted among the agricultural employees of the employer named below within the past 12 months; and

c.   That no labor organization is currently certified as the exclusive collective bargaining representative of the agricultural employees of the employer named below.

☑   I certify that this labor organization has filed a LM-2 form with the United States Department of Labor in accordance with the Labor-Management Reporting and Disclosure Act for the previous two years.

☑   I certify that this labor organization had a collective bargaining agreement covering agricultural employees as defined in Labor Code section 1140.4, subdivision (b) in effect on May 15, 2023.

**4. Employer:**

| | |
|---|---|
| 4a. Employer Name | Wonderful Nurseries, LLC. |
| 4b. Employer Phone | (661) 758-4777 |
| 4c. Employer Fax | |
| 4d. Employer Email | |
| 4e. Representative Name | Craig B. Cooper (General Counsel) |
| 4f. Representative Phone | 310-966-5728 |
| 4g. Representative Fax | (310) 966-5758 |
| 4h. Representative Email | craig.cooper@wonderful.com |

4i. Employer Mailing Address

| | |
|---|---|
| Address | 27920 McCombs Rd. |
| City | Wasco     State CA     Zip 93280 |

**5. The nature of the employer's agricultural commodity or commodities encompassed by the unit:**

Commodities:   Nursery

**6. The bargaining unit is all agricultural employees of the employer at the following locations:**

| | | | |
|---|---|---|---|
| Addr | 27920 McCombs Rd. | Addr | 30904 Merced Ave. |
| City | Wasco | State CA Zip 93280 | City Shafter | State CA Zip 93263 |
| Addr | 6801 E Lerdo Hwy | Addr | 15632 Zerker Rd. |
| City | Shafter | State CA Zip 93280 | City McFarland | State CA Zip 93250 |

**7.**

a.  Does the unit sought include all of the employer's agricultural employees in the State of California?

    [✓]  Yes    [ ]  No

b.  Are the agricultural employees of the employer employed in two or more non-contiguous geographical areas?

    [✓]  Yes    [ ]  No

c.  Does the employer have any packing sheds or cooling facilities?

    [✓]  Yes    [ ]  No

**8. The approximate number of agricultural employees currently employed in the unit sought.**

Number of Agricultural Employees: 350

**9.  Is the petition accompanied by evidence of support by a majority of the employees currently employed in the unit as required by Section 1156.37(c) of the Act?**

    [✓]  Yes    [ ]  No

## Declaration

I declare under penalty of perjury that I have read this petition and that the statements herein are true to the best of my knowledge and belief.

| | |
|---|---|
| Petitioner | United Farm Workers of America |
| Affiliation (If any) | |

By: _Erika Navarrete_ (signature)     Date: 2/23/24

**Signature of Representative or Person Filing Petition**

| | |
|---|---|
| Name | Erika Navarrete |
| Title | Vice President |
| Addr | 29700 Woodford-Tehachapi Road     Phone (661) 370- 1444 |
| City | Keene     State CA   Zip 93531     Fax |
| Email | enavarrete@ufw.org |

| | |
|---|---|
| Executed at (City, State) | Bakersfield, CA |
| Executed Date | 2/23/24 |

Print Form

Page 4 of 4

5

**State of California**

**Agricultural Labor Relations Board**

## Proof of Service

Print Form

**Instructions:** A **petition for certification**, a **notice of intention to take access**, or a **notice of intention to organize** shall be served on the employer, either by personal service or by a method including a return receipt from the post office. Service may be accomplished by service upon any owner, officer, or director of the employer, or by leaving a copy at an office of the employer with a person apparently in charge of the office or other responsible person, or by personal service upon a supervisor of employees covered by the petition for certification. If service is made by delivering a copy of the petition to anyone other than an owner, officer, or director of the employer, immediately send a telegram or facsimile transmission to the owner, officer, or director of the employer declaring that a certification petition is being filed and stating the name and location of the person actually served.  File with the regional office proof that the telegram or facsimile transmission was sent and received.

A **petition for decertification** or a **rival union petition** shall be served in the same manner as above, except that service of the petition also shall be made upon an officer or director of the incumbent union, or upon an agent of the union authorized to receive service of papers.

A **petition for intervention** shall be served in the same manner as above, except that service of the petition shall be made upon both the employer and the original petitioner.

**Do not write in this space**

Case No.  _____

Date Filed:  _____

**Check one:**

☒ Petition for Certification　　　　　　　　　☐ Rival Union Petition

☐ Petition for Intervention　　　　　　　　　☐ Notice of Intent to Organize

☐ Petition for Decertification　　　　　　　　☐ Notice of Intent to Take Access

**I served a completed and signed copy of the attached document to**

| | |
|---|---|
| Name | Yecenia Martinez |
| Title | Receptionist |

at:

| | |
|---|---|
| Addr | 27920 McCombs Rd. |

City [Wasco] State [CA] Zip [93280]

☒ by personally delivering the charge to the named person at the address specified above on

Date: [2/23/24]　　Time: [10:16 A.M.]

**or alternatively,**

☐ by mailing said documents, by a method that includes a return receipt, to the named person at the following address:

Addr [_____]

City [_____] State [___] Zip [_____]

The return receipt is (check one):

☐ Attached

☐ Will be provided upon receipt

ALRB 198 E (Rev. 11/08)　　　　　　　　Page 1 of 2

**6**

## Declaration

**I declare under penalty of perjury that the foregoing is true and correct.**

By: *Erika Navarrete*                                    Date: 2/23/24

Signature of Representative Filing Proof of Service

| | |
|---|---|
| Name | Erika Navarrete |
| Title | Vice President |
| Addr | 29700 Woodford-Tehachapi Road    Phone (661) 370-1444 |
| City | Keene    State CA    Zip 93531    Fax |
| Email | enavarrete@ufw.org |
| Executed at (City, State) | Wasco, CA |
| Executed Date | 2/23/24 |

ALRB 198 E (Rev. 11/08)                    Page 2 of 2                    Print Form

7

# EXHIBIT 2

Print Form

**State of California**

**Agricultural Labor Relation Board**

# Employer's Response to Petition for Certification

**Instructions:** The requirements for an Employer's Response to a Petition for Certification are set out in Section 20310 of the ALRB Regulations. **PLEASE USE THIS FORM FOR YOUR RESPONSE**. This will facilitate the processing of the petition and the resolution of any issues with regard to the validity of the petition. An employer who is served with a copy of a Petition for Certification shall provide to the regional office in which the petition is filed, or an alternative place as provided by Section 20310(c), **a completed copy of this form** and the additional documents and information stated herein. (Information to be attached is indicated by *). The Response and all supplemental information shall be provided <u>within 48 hours</u> of the filing of the Petition for Certification.

Do not write in this space

Case No. _____

Date Filed: _____

**1. Employer's full and correct legal name, address, and telephone number:**

| | | | |
|---|---|---|---|
| Name | Wonderful Nurseries LLC | | |
| Addr | 11444 West Olympic Boulevard | Phone | 6617584777 |
| City | Los Angeles | State CA | Zip 90064 | Fax |
| Email | Sean.Sullivan@wonderful.com | | |

**2. Brief description of the legal entity, e.g., partnership, corporation, sole proprietorship:**

| | |
|---|---|
| Description | Wonderful Nurseries LLC, a Delaware limited liability company |

**3. Name, address, telephone number, location and title of a person within the employer's organization who is authorized to accept service of papers for the employer. The same person shall be one authorized to make agreements with the Board and the parties regarding the petition unless another representative of the employer is designated in Part 4.**

| | | | |
|---|---|---|---|
| Name | Sean Sullivan | | |
| Addr | 11444 West Olympic Boulevard, Floor 10 | Phone | 4243546795 |
| City | Los Angeles | State CA | Zip 90064 | Fax |
| Email | Sean.Sullivan@wonderful.com | | |
| Location | Los Angeles, California | | |
| Title | Senior Employment Counsel | | |

ALRB 42 E (Rev 11/08)                    Page 1 of 4

**9**

**4. Name, address, and telephone number of an attorney or other representative of the employer, if any:**

| | | | | |
|---|---|---|---|---|
| Name | Seth G. Mehrten | | | |
| Addr | 1141 West Shaw Avenue, Suite 104 | | Phone | 5592482360 |
| City | Fresno | State CA | Zip 93711 | Fax 5592482370 |
| Email | SMehrten@TheEmployersLawFirm.com | | | |

**5. Are the following allegations made in the Petition for Certification correct?**

(a) No valid election pursuant to Labor Code Section 1156.3(c) has been conducted among the agricultural employees of the employer within 12 months preceding the date of filing of the petition.

☒ Correct         ☐ Incorrect

If incorrect, date of election: [                    ]

(b) No labor organization is currently certified as the exclusive collective bargaining representative of the agricultural employees of the employer.

☒ Correct         ☐ Incorrect

If incorrect, date of certification: [                    ]

Labor organization certified: [                    ]

(c) The petition for certification is not barred by an existing collective bargaining agreement between the employer and a certified union.

☒ Correct         ☐ Incorrect

\* If incorrect, **ATTACH** a signed copy of the collective bargaining agreement.

**6.   (a) Does the unit sought in the Petition for Certification include all the employer's agricultural employees in California?**

☐ Yes         ☒ No

If no, describe locations of other agricultural employees of the employer.

Locations: 27920 McCombs Road, Wasco, CA 93280; 30904 Merced Avenue, Shafter, CA 93263; 15644 Zerker Road, McFarland, CA 93250; 501 North Driver Road, Shafter, CA 93263; and various field locations in Kern County that change periodically.

(b) Are the agricultural employees of the employer employed in two or more non-contiguous geographical areas?

☒ Yes         ☐ No

If yes, state locations: See response to No. 6(a).

(c) Does the employer have any packing or cooling sheds?

☒ Yes          ☐ No

If yes, are they located on or off the farm property where agricultural employees work?

☒ Yes          ☐ No

(d) Does the employer agree that the unit sought in the Petition for Certification is appropriate?

☐ Yes          ☒ No

If no, describe the unit the employer contends is appropriate:

Unit description: | All agricultural employees working at the locations listed in response to No. 6(a).

(e) What agricultural commodities are involved in the work of employees in the bargaining unit sought and in the bargaining unit which the employer contends is appropriate?

Commodities: | Nursery: Grafted grapevines and trees.

**7. What is the duration and timing of the payroll period under which agricultural employees in the unit sought are paid?**

Payroll Period
| Weekly |

Other description: | |

If weekly or bi-monthly, on which day of the week or which dates in the month does each new payroll period end?

Days or Dates: | The employer's payroll period begins on Monday and ends on Sunday.

* If agricultural employees in the unit sought are paid on more than one payroll period, state the duration and timing of each payroll and **ATTACH** a list showing which agricultural employees are on each pay schedule:

Duration and Timing: | |

**8.   (a) How many agricultural employees were employed in the payroll period immediately preceding the filing of the Petition for Certification, that is, during the last payroll period that ended before the date of filing the petition?**

Number of Agricultural Employees: | 688 |

* **ATTACH** a copy of the employer's original payroll records which show the names of agricultural employees employed each day during the payroll period immediately preceding the filing of the Petition and the hours worked by each agricultural employee or, if employment is on a piece-rate basis, the number of units credited to each agricultural employee.

(b) What are the dates of the payroll period which the employer contends was or will be its peak payroll period for the current calendar year?

List dates: | Varies between December to March.

(c) How many employees were or will be employed in the payroll period?

Number of Agricultural Employees: | 700 |

(d) Does the employer agree that the number of agricultural employees employed in the payroll period immediately preceding the filing of the Petition for Certification is at least 50 percent of the employer's peak employment for the current calendar year?

☒ Yes          ☐ No

(e) If the employer contends that the petition has been filed when it is at less than 50% of its peak employment, provide the Regional Director with 1) a detailed explanation of how it calculates such peak employment and 2) payroll records showing the number of agricultural employees employed on each day, and the number of hours such agricultural employees worked, during the previous peak payroll period, as well as any crop and acreage statistics and other information relevant to the determination of its peak employment needs. The Regional Director shall have the discretion to require the employer to provide payroll records and/or crop and acreage statistics for up to three years prior to the filing of the petition.

**\* 9. <u>ATTACH</u> a complete and accurate list of the complete and full names and current street addresses (no postal addresses will be accepted) and job classifications of all agricultural employees, including agricultural employees hired through a labor contractor, in the bargaining unit sought by the Petition for Certification in the payroll period immediately preceding the filing of the Petition. The list shall also include the names, current street addresses (no postal addresses will be accepted) and job classifications of persons working for the employer as part of a family or other group for which the name of only one group member appears on the payroll.**

\* If the employer contends that the unit sought in the Petition for Certification is inappropriate, the employer shall **ATTACH**, in addition to the list described above, a complete and accurate list of the complete and full names and current street addresses (no postal addresses will be accepted) and job classifications of all agricultural employees, including labor contractor employees and family group employees, in the unit the employer contends is appropriate for the payroll period immediately preceding the filing of the Petition.

**\* 10. <u>ATTACH</u> the names, addresses and telephone numbers of all labor contractors who supplied labor to the employer during the payroll period immediately preceding the filing of the Petition and during the payroll period which the employer contends was its peak employment period.**

☐ Check if "None"

**11. Which languages other than English and Spanish should be used on the ballots in any election which may be conducted pursuant to the Petition for Certification?**

| Language: | | Number of Employees for Only This Language: | |
|---|---|---|---|
| Language: | | Number of Employees for Only This Language: | |
| Language: | | Number of Employees for Only This Language: | |

## Declaration

**I declare under penalty of perjury that I have read the above Response to the Petition for Certification and that the statements herein are true to the best of my knowledge and belief.**

By: _____     Date: February 26, 2024

**Signature of Representative or Person Filing Response**

Name | Seth Mehrten

Title | Partner

Addr | 1141 West Shaw Avenue, Suite 104     Phone | (559) 248-2360

City | Fresno     State | CA     Zip | 93711     Fax | (559) 248-2370

Email | SMehrten@TheEmployersLawFirm.com

# EXHIBIT 3

1   Julia L. Montgomery, General Counsel, SBN 184083
2   Franchesca C. Herrera, Deputy General Counsel, SBN 239081
    AGRICULTURAL LABOR RELATIONS BOARD
3   1325 J Street, Suite 1900 A
    Sacramento, CA 95814-2944
4   Tel: (916) 653-2690
    Julia.Montgomery@alrb.ca.gov
5   Franchesca.Herrera@alrb.ca.gov

6   Yesenia De Luna, Regional Director, SBN 309467
    Anibal Lopez, Assistant General Counsel, SBN 335251
7   Agricultural Labor Relations Board
    1642 West Walnut Avenue
8   Visalia, CA 93277
    Tel: (805) 718-7526
9   Yesenia.DeLuna@alrb.ca.gov
    Anibal.Lopez@alrb.ca.gov
10

11

12                      **STATE OF CALIFORNIA**

13            **AGRICULTURAL LABOR RELATIONS BOARD**

14

15   UNITED FARM WORKERS OF AMERICA, )   Case No.: 2024-RM-002
                                       )
16           Petitioner Labor Organization, )
                                       )
17   and                               )   **REGIONAL DIRECTOR'S TALLY**
                                       )
18                                     )
                                       )
19   WONDERFUL NURSERIES, LLC;         )
                                       )
20           Employer.                 )
                                       )
21                                     )
                                       )
22   _____)

23

24

25

26

27

28

**14**

I.      **Procedural History**

On February 23, 2024, the United Farm Workers of America ("UFW") filed a Majority Support Petition seeking to represent all of the agricultural employees of Wonderful Nurseries, LLC ("Wonderful Nurseries") in the State of California.[1] (Declaration of Yesenia De Luna in Support of the Regional Director's Tally ("De Luna Decl.") at ¶ 3, Ex. A.) On February 26, 2024, Wonderful Nurseries filed an employer response. (*Id.* at ¶ 5, Ex. B.)

II.     **Factual Background**

On February 23, 2024, upon receipt of the UFW's Majority Support Petition, the Regional Director commenced an investigation regarding the validity of the petition and the proof of support submitted. (De Luna Decl. at ¶ 4.) Accompanying the Majority Support Petition, the United Farm Workers submitted 423 authorization cards. (*Id.* at ¶ 3.) The Region, at the direction of the Regional Director, investigated whether the petition met the requirements set forth in Labor Code section 1156.37(b) and whether the UFW submitted proof of majority support as required by Labor Code section 1156.37(e)(1). (*Id.* at ¶ 4.)

Wonderful Nurseries Employer Response identifying the relevant pay period as February 12, 2024, through February 18, 2024, and included an employee list containing the names of 688 individuals purported to have been employed by Wonderful Nurseries as agricultural workers during the relevant payroll period.[2] (De Luna Decl. at ¶ 5.) Wonderful Nurseries further indicated it contracted labor through four farm labor contractors during the applicable period: Guerrero Labor Contractor; Kern Labor Contracting, Inc.; O.F.R., Inc.; and Paragon Personnel. (De Luna Decl. at ¶ 7.)

The UFW raised concerns that thirty-eight individuals on the list should be excluded on the basis that they were crew bosses, crew leaders, administrative staff, and/or other

---

[1]   The Petition identifies four sites: 27920 McCombs Rd., Wasco, CA 93280; 30904 Merced Ave., Shafter, CA 93263; 6801 E Lerdo Hwy, Shafter, CA 93280; and 15632 Zerker Rd., McFarland, CA 93250. The Employer Response identifies the following sites: 27920 McCombs Rd., Wasco, CA 93280; 30904 Merced Ave., Shafter, CA 93263; 15632 Zerker Rd., McFarland, CA 93250; 501 North Driver Road, Shafter, CA 93263; and "various field locations in Kern County that change periodically." (De Luna Decl. at ¶ 5, Ex. B.) Despite the discrepancy in addresses, the UFW and Wonderful Nurseries agrees the Petition covers all of Wonderful Nurseries' agricultural workers in California. (De Luna Decl. at ¶ 6, Ex. B.)

[2] The relevant period is the pay period immediately preceding the filing of the petition. (Labor Code § 1156.37(c).)

1   management. (De Luna Decl. at ¶ 8.) The UFW also raised concerns that Kern Labor
2   Contracting, Inc provided labor to Wonderful Orchards, LLC ("Wonderful Orchards"), not
3   Wonderful Nurseries. (*Ibid.*) The Region investigated these concerns. (*Id.* at ¶¶ 8-10, 12, 18.)

4           Wonderful Nurseries indicated that nine individuals on the employee list provided on
5   February 26, 2024, had not worked during the applicable period and were inadvertently included
6   in the list. (De Luna Decl. at ¶ 14.) Wonderful Nurseries further identified, and provided payroll,
7   for one individual who worked during the relevant period, but was inadvertently omitted. (*Ibid.*)
8   The Regional Director investigated these inadvertent omissions and additions. (*Ibid.*)

9           The Regional Director added to the list the one individual that Wonderful Nurseries'
10  contended and documents showed worked during the relevant period. (De Luna Decl. at ¶ 15.)
11  The Regional Director removed the nine individuals from the eligibility list that Wonderful
12  Nurseries contended were inadvertently included and payroll showed that they did not work
13  during the relevant period. (*Ibid.*) Based on evidence gathered during her investigation, the
14  Regional Director removed thirty-three (33) individuals she deemed possessed supervisory
15  authority and thus should not be included in the bargaining unit. (*Id.* ¶¶ 20-22.) Based on
16  evidence gathered during her investigation, the Regional Director removed seven (7) individuals
17  whose work site was listed as "WOSPFA – Orchards Spray Ops Farm" and who she found
18  lacked a community of interest with other Wonderful Nurseries employees. (*Id.* at ¶ 21.)

19          Between February 27, 2024 and March 1, 2024, the UFW submitted 181 additional
20  authorization cards. (De Luna Decl. at ¶¶ 11, 13, 16, 23.)

21  **III.    Employee Lists**

22          The Region has not attached payroll, eligibility lists or other documents containing the
23  names and contact information of agricultural employees to this Tally and Declaration. These
24  documents contain personal and economic information of voters as well as the employer. The
25  Region remains willing to file these documents under seal with the Board if the Board so
26  requests.
27  ///
28

**IV.     Tally**

As Regional Director overseeing the investigation of this Majority Support Petition, I find the following:

- The number of agricultural employees employed during the relevant payroll period was not less than fifty percent of the employer's peak agricultural employment.[3] (*Id*. at ¶¶ 3, 5, Exs. A, B.)
- No valid election has been conducted among Wonderful Nurseries' agricultural employees within the twelve months immediately preceding the filing of the petition. (*Ibid*.)
- The Majority Support Petition is not barred by an existing collective bargaining agreement. (*Ibid*.)
- The bargaining unit described in the petition is appropriate.[4] (*Id*. at ¶¶ 3-6, Exs. A, B.)
- The UFW submitted 327 valid authorization cards.
- The number of Wonderful Nurseries' agricultural workers who worked during the relevant payroll period, and are thus eligible, is 640. (*Id*. at ¶ 5, 15, 20-22.)

**V.      Conclusion**

The requirements set forth in Labor Code section 1156.37, subdivision (b) are met. The Regional Director finds proof of majority support.

//

//

//

---

[3] In its response, Wonderful Nurseries estimated employing 700 agricultural employees at peak. (De Luna Decl. at ¶ 5, Ex. B.)

[4] Despite the discrepancy in addresses, the UFW and Wonderful Nurseries agree the Petition covers all of Wonderful Nurseries' agricultural workers in California. (De Luna Decl. at ¶ 6, Exs. A, B.)

1

Respectfully Submitted,

2  Dated: March 1, 2024                AGRICULTURAL LABOR RELATIONS BOARD

3

4  _____

5  YESENIA DE LUNA
   Regional Director

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Julia L. Montgomery, General Counsel, SBN 184083
2   Franchesca C. Herrera, Deputy General Counsel, SBN 239081
    AGRICULTURAL LABOR RELATIONS BOARD
3   1325 J Street, Suite 1900 A
    Sacramento, CA 95814-2944
4   Tel: (916) 653-2690
    Julia.Montgomery@alrb.ca.gov
5   Franchesca.Herrera@alrb.ca.gov

6   Yesenia De Luna, Regional Director, SBN 309467
    Anibal Lopez, Assistant General Counsel, SBN 335251
7   Agricultural Labor Relations Board
    1642 West Walnut Avenue
8   Visalia, CA 93277
    Tel: (805) 718-7526
9   Yesenia.DeLuna@alrb.ca.gov
    Anibal.Lopez@alrb.ca.gov
10

11

12                          **STATE OF CALIFORNIA**

13                  **AGRICULTURAL LABOR RELATIONS BOARD**

14

15   UNITED FARM WORKERS OF AMERICA, )   Case No.: 2024-RM-002
                                        )
16          Petitioner Labor Organization, )
                                        )
17   and                                )   **DECLARATION OF YESENIA DE LUNA**
                                        )   **IN SUPPORT OF THE REGIONAL**
18                                      )   **DIRECTOR'S TALLY**
                                        )
19   WONDERFUL NURSERIES, LLC;          )
                                        )
20          Employer.                   )
                                        )
21                                      )
                                        )
22   _____)

23

24

25

26

27

28

                                                                              **19**

I, Yesenia De Luna, declare as follows:

1.     I am employed by the State of California as Regional Director for the Agricultural Labor Relations Board.

2.     I am familiar with the legal and factual issues in the above-captioned proceedings. If called, I could testify competently to the facts attested to in this declaration, as they are based on my personal knowledge and/or a review of the records in this matter.

3.     On February 23, 2024, the United Farm Workers of America ("UFW") filed a Majority Support Petition seeking to represent all of the agricultural employees of Wonderful Nurseries, LLC ("Wonderful Nurseries") in the State of California. Attached as Exhibit A is a true and correct copy of the Majority Support Petition. Accompanying the Majority Support Petition, the United Farm Workers submitted 423 authorization cards.

4.     On February 23, 2024, I commenced an investigation regarding the validity of the Majority Support Petition and the proof of support submitted.

5.     On February 26, 2024, Wonderful Nurseries filed its Employer Response. Attached as Exhibit B is a true and correct copy of the Employer Response. Accompanying the Employer Response, Wonderful Nurseries submitted a list containing the names of 688 individuals purported to be agricultural workers employed by Wonderful Nurseries between February 12, 204 and February 18, 2024.

6.     Both parties confirmed to my staff that the appropriate bargaining unit covered by the petition is all of Wonderful Nurseries' agricultural employees in the State of California.

7.     In a letter dated February 26, 2024, Wonderful Nurseries indicated it contracted labor through four farm labor contractors during the applicable period: Guerrero Labor Contractor; Kern Labor Contracting, Inc.; O.F.R., Inc.; and Paragon Personnel.

8.     On February 27, 2024, the UFW alleged that thirty-eight individuals on the Employee List provided by Wonderful Nurseries on February 26, 2024, be excluded on the basis that they were crew bosses, crew leaders, administrative staff, and/or other management. The UFW also raised concerns that Kern Labor Contracting, Inc. provided labor to Wonderful

**20**

1   Orchards, LLC, not Wonderful Nurseries, and thus these workers may not be properly part of the
2   bargaining unit.

3        9.    I requested documents and information from Wonderful Nurseries to investigate
4   the scope of the bargaining unit.

5        10.   On February 27, 2024, Wonderful Nurseries provided job descriptions for the job
6   classifications for individuals identified as direct hires on the employee eligibility list.
7   "Wonderful Orchards" appeared on the letter head of several of the job descriptions.

8        11.   On February 27, 2024, the UFW submitted an additional 44 authorization cards.

9        12.   On February 28, 2024, I requested paystubs for Kern Labor Contracting, Inc.
10   employees that appeared on the employee list.

11        13.   On February 28, 2024, the UFW submitted an additional 76 authorization cards.

12        14.   On February 28, 2024, Wonderful Nurseries indicated that nine individuals on the
13   employee list provided on February 26, 2024, had not worked during the applicable period and
14   were inadvertently included in the list. Wonderful Nurseries further identified, and provided
15   payroll, for one individual who worked during the relevant period, but was inadvertently omitted.
16   The payroll indicated the individual worked at Wonderful Nurseries during the applicable period.

17        15.   Based on this payroll data, on February 29, 2024, I removed nine individuals from
18   the list and added one individual.

19        16.   On February 29, 2024, the UFW submitted an additional 46 authorization cards.

20        17.   On February 29, 2024, I received paystubs for Kern Labor Contracting, Inc. and
21   learned that twenty-four of the individuals on the list were paid by Wonderful Orchards, LLC
22   during the applicable period. I further received timesheets for these employees and learned they
23   worked alongside other agricultural workers whose paystubs indicate were paid by Wonderful
24   Nurseries.

25        18.   During the investigation, I directed my staff to interview workers on the employer
26   provided eligibility list to obtain information regarding alleged statutory supervisors and the
27   scope of the bargaining unit.

28

Declaration of Yesenia De Luna in Support of the Regional Director's Tally
*Wonderful Nurseries, LLC*, Case No. 2024-RM-002
2

21

19. After several requests, on March 1, 2024, at 12:58 p.m., I received payroll documents for the individuals on the list identified as direct hires. The Wonderful Company and Wonderful Orchards appeared on the payroll documents of all of these employees. The Pay Group on all payroll records is "Won. Orchards – Biweekly." The "site" indicated on the payroll was either "WOWANU – Orchards Wasco Nurseries" or "WOSPFA – Orchards Spray Ops Farm."

20. After reviewing the documentary and testimonial evidence gathered during the investigation, I removed twelve individuals whom I found to be statutory supervisors.

21. After reviewing the documentary and testimonial evidence gathered during the investigation, I removed seven individuals whose work site was listed as "WOSPFA – Orchards Spray Ops Farm." The evidence did not indicate that these individuals worked share a community of interest with the workers in the Wonderful Nurseries eligibility list.

22. After reviewing the documentary and testimonial evidence gathered during the investigation, I removed from the eligibility list twenty-one employees whom I deemed statutory supervisors with farm labor contractors (Guerrero Labor Contractor; O.F.R., Inc.; Kern Labor Contracting, Inc.; and Paragon Personnel) who provided labor to Wonderful Nurseries.

23. On March 1, 2024, the UFW submitted an additional 15 authorization cards.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 1st day of March 2024, in Santa Rosa, California.

_____
Yesenia De Luna

Declaration of Yesenia De Luna in Support of the Regional Director's Tally
*Wonderful Nurseries, LLC*, Case No. 2024-RM-002
3

22

# EXHIBIT "A"

**State of California**

**Agricultural Labor Relations Board**

## Majority Support Petition

Print Form

**Instructions:** Submit an original and two (2) copies of this petition to the ALRB regional office in the region in which the employer concerned is located. If more space is required for any one item, attach additional sheets as necessary.

**Do not write in this space**

Case No. *2024-RM-002*

Date Filed: *Feb. 23, 2024*

*11:59 am rc*

RECEIVED VISALIA

FEB 23 2024

Agricultural Labor Relations Board

The Petitioner requests that the Agricultural Labor Relations Board proceed under its authority pursuant to Section 1156.37 of the Agricultural Labor Relations Act of 1975.

1. Name, address and phone number of petitioner and its affiliation, if any:

**Petitioner**

| | |
|---|---|
| Name | United Farm Workers of America |
| Addr | 29700 Woodford-Tehachapi Road |
| Phone | (661) 823-6105 |
| City | Keene |
| State | CA |
| Zip | 93531 |
| Fax | |
| Email | info@farmworkerlaw.com |

**Affiliation**

| | |
|---|---|
| Name | C/O Martinez Aguilasocho Law, Inc. |
| Addr | P.O. Box 1998 |
| Phone | (661) 859-1174 |
| City | Bakersfield |
| State | CA |
| Zip | 93303 |
| Fax | |
| Email | info@farmworkerlaw.com |

2. Name, address and phone number of representative of petitioner authorized to make agreements with the Board and the parties and to accept service of papers:

| | |
|---|---|
| Name | Erika Navarrete |
| Addr | 29700 Woodford-Tehachapi Road |
| City | Keene |
| State | CA |
| Zip | 93531 |
| Phone | (661) 370- 1444 |
| Email | enavarrete@ufw.org |
| Fax | |

**3. Petitioner alleges:**

a.   That the number of agricultural employees currently employed by the employer named below is not less than fifty percent of his peak agricultural employment for the current calendar year;

b.   That no valid election pursuant to Sections 1156.3 or 1156.37 has been conducted among the agricultural employees of the employer named below within the past 12 months; and

c.   That no labor organization is currently certified as the exclusive collective bargaining representative of the agricultural employees of the employer named below.

☑   I certify that this labor organization has filed a LM-2 form with the United States Department of Labor in accordance with the Labor-Management Reporting and Disclosure Act for the previous two years.

☑   I certify that this labor organization had a collective bargaining agreement covering agricultural employees as defined in Labor Code section 1140.4, subdivision (b) in effect on May 15, 2023.

**4. Employer:**

| | |
|---|---|
| 4a. Employer Name | Wonderful Nurseries, LLC. |
| 4b. Employer Phone | (661) 758-4777 |
| 4c. Employer Fax | |
| 4d. Employer Email | |
| 4e. Representative Name | Craig B. Cooper (General Counsel) |
| 4f. Representative Phone | 310-966-5728 |
| 4g. Representative Fax | (310) 966-5758 |
| 4h. Representative Email | craig.cooper@wonderful.com |

4i. Employer Mailing Address

| | |
|---|---|
| Address | 27920 McCombs Rd. |
| City | Wasco          State CA     Zip 93280 |

**5. The nature of the employer's agricultural commodity or commodities encompassed by the unit:**

Commodities:   Nursery

**6. The bargaining unit is all agricultural employees of the employer at the following locations:**

| | |
|---|---|
| Addr **27920 McCombs Rd.** | Addr **30904 Merced Ave.** |
| City **Wasco** State **CA** Zip **93280** | City **Shafter** State **CA** Zip **93263** |
| Addr **6801 E Lerdo Hwy** | Addr **15632 Zerker Rd.** |
| City **Shafter** State **CA** Zip **93280** | City **McFarland** State **CA** Zip **93250** |

**7.**

a.  Does the unit sought include all of the employer's agricultural employees in the State of California?

☑ Yes    ☐ No

b.  Are the agricultural employees of the employer employed in two or more non-contiguous geographical areas?

☑ Yes    ☐ No

c.  Does the employer have any packing sheds or cooling facilities?

☑ Yes    ☐ No

**8. The approximate number of agricultural employees currently employed in the unit sought.**

Number of Agricultural Employees: **350**

**9.  Is the petition accompanied by evidence of support by a majority of the employees currently employed in the unit as required by Section 1156.37(c) of the Act?**

☑ Yes    ☐ No

## Declaration

I declare under penalty of perjury that I have read this petition and that the statements herein are true to the best of my knowledge and belief.

| | |
|---|---|
| Petitioner | United Farm Workers of America |
| Affiliation (If any) | |

By: _Erika Navarrete_ (signature)        Date: 2/23/24

**Signature of Representative or Person Filing Petition**

| | |
|---|---|
| Name | Erika Navarrete |
| Title | Vice President |
| Addr | 29700 Woodford-Tehachapi Road |
| Phone | (661) 370- 1444 |
| City | Keene |
| State | CA |
| Zip | 93531 |
| Fax | |
| Email | enavarrete@ufw.org |

| | |
|---|---|
| Executed at (City, State) | Bakersfield, CA |
| Executed Date | 2/23/24 |

Print Form

**State of California**

**Agricultural Labor Relations Board**

**Proof of Service**

Print Form

**Instructions:** A **petition for certification**, a **notice of intention to take access**, or a **notice of intention to organize** shall be served on the employer, either by personal service or by a method including a return receipt from the post office. Service may be accomplished by service upon any owner, officer, or director of the employer, or by leaving a copy at an office of the employer with a person apparently in charge of the office or other responsible person, or by personal service upon a supervisor of employees covered by the petition for certification. If service is made by delivering a copy of the petition to anyone other than an owner, officer, or director of the employer, immediately send a telegram or facsimile transmission to the owner, officer, or director of the employer declaring that a certification petition is being filed and stating the name and location of the person actually served.  File with the regional office proof that the telegram or facsimile transmission was sent and received.

A **petition for decertification** or a **rival union petition** shall be served in the same manner as above, except that service of the petition also shall be made upon an officer or director of the incumbent union, or upon an agent of the union authorized to receive service of papers.

A **petition for intervention** shall be served in the same manner as above, except that service of the petition shall be made upon both the employer and the original petitioner.

RECEIVED VISALIA
FEB 23 2024
Agricultural Labor Relations Board

11:59 am

**Do not write in this space**

Case No.   *2024-RM-002*

Date Filed:   *Feb. 23, 2024*

**Check one:**

[X] Petition for Certification
[ ] Petition for Intervention
[ ] Petition for Decertification

[ ] Rival Union Petition
[ ] Notice of Intent to Organize
[ ] Notice of Intent to Take Access

**I served a completed and signed copy of the attached document to**

| | |
|---|---|
| Name | Yecenia Martinez |
| Title | Receptionist |

at:

| | |
|---|---|
| Addr | 27920 McCombs Rd. |
| City | Wasco   State CA   Zip 93260 |

[X] by personally delivering the charge to the named person at the address specified above on

Date:   2/23/24      Time:   10:16 A.M.

**or alternatively,**

[ ] by mailing said documents, by a method that includes a return receipt, to the named person at the following address:

Addr

City      State      Zip

The return receipt is (check one):

[ ] Attached
[ ] Will be provided upon receipt

ALRB 198 E (Rev. 11/08)          Page 1 of 2

**28**

## Declaration

I declare under penalty of perjury that the foregoing is true and correct.

By: _Erika Navarrete_      Date: 2/23/24

Signature of Representative Filing Proof of Service

| | |
|---|---|
| Name | Erika Navarrete |
| Title | Vice President |
| Addr | 29700 Woodford-Tehachapi Road |
| Phone | (661) 370-1444 |
| City | Keene |
| State | CA |
| Zip | 93531 |
| Fax | |
| Email | enavarrete@ufw.org |
| Executed at (City, State) | Wasco, CA |
| Executed Date | 2/23/24 |

# EXHIBIT "B"

## State of California
## Agricultural Labor Relation Board
## Employer's Response to Petition for Certification

Print Form

**Instructions:** The requirements for an Employer's Response to a Petition for Certification are set out in Section 20310 of the ALRB Regulations. **PLEASE USE THIS FORM FOR YOUR RESPONSE.** This will facilitate the processing of the petition and the resolution of any issues with regard to the validity of the petition. An employer who is served with a copy of a Petition for Certification shall provide to the regional office in which the petition is filed, or an alternative place as provided by Section 20310(c), **a completed copy of this form** and the additional documents and information stated herein. (Information to be attached is indicated by *). The Response and all supplemental information shall be provided within 48 hours of the filing of the Petition for Certification.

Do not write in this space

Case No.   *2024-RM-002*

Date Filed:   *Feb. 26, 2024*

*10:38 am MP*

RECEIVED VISALIA
FEB 26 2024
Agricultural Labor Relations Board

**1. Employer's full and correct legal name, address, and telephone number:**

| | |
|---|---|
| Name | Wonderful Nurseries LLC |
| Addr | 11444 West Olympic Boulevard    Phone  6617584777 |
| City | Los Angeles    State  CA   Zip  90064    Fax |
| Email | Sean.Sullivan@wonderful.com |

**2. Brief description of the legal entity, e.g., partnership, corporation, sole proprietorship:**

| | |
|---|---|
| Description | Wonderful Nurseries LLC, a Delaware limited liability company |

**3. Name, address, telephone number, location and title of a person within the employer's organization who is authorized to accept service of papers for the employer. The same person shall be one authorized to make agreements with the Board and the parties regarding the petition unless another representative of the employer is designated in Part 4.**

| | |
|---|---|
| Name | Sean Sullivan |
| Addr | 11444 West Olympic Boulevard, Floor 10    Phone  4243546795 |
| City | Los Angeles    State  CA   Zip  90064    Fax |
| Email | Sean.Sullivan@wonderful.com |
| Location | Los Angeles, California |
| Title | Senior Employment Counsel |

ALRB 42 E (Rev 11/08)                    Page 1 of 4

**31**

**4. Name, address, and telephone number of an attorney or other representative of the employer, if any:**

| Name | Seth G. Mehrten | | | | | |
|------|-----------------|--|--|--|--|--|
| Addr | 1141 West Shaw Avenue, Suite 104 | | | Phone | 5592482360 | |
| City | Fresno | State | CA | Zip | 93711 | Fax | 5592482370 |
| Email | SMehrten@TheEmployersLawFirm.com | | | | | |

**5. Are the following allegations made in the Petition for Certification correct?**

(a) No valid election pursuant to Labor Code Section 1156.3(c) has been conducted among the agricultural employees of the employer within 12 months preceding the date of filing of the petition.

☒ Correct          ☐ Incorrect

If incorrect, date of election: [                    ]

(b) No labor organization is currently certified as the exclusive collective bargaining representative of the agricultural employees of the employer.

☒ Correct          ☐ Incorrect

If incorrect, date of certification: [                    ]

Labor organization certified: [                    ]

(c) The petition for certification is not barred by an existing collective bargaining agreement between the employer and a certified union.

☒ Correct          ☐ Incorrect

* If incorrect, **ATTACH** a signed copy of the collective bargaining agreement.

**6.   (a) Does the unit sought in the Petition for Certification include all the employer's agricultural employees in California?**

☐ Yes          ☒ No

If no, describe locations of other agricultural employees of the employer.

Locations: 27920 McCombs Road, Wasco, CA 93280; 30904 Merced Avenue, Shafter, CA 93263; 15644 Zerker Road, McFarland, CA 93250; 501 North Driver Road, Shafter, CA 93263; and various field locations in Kern County that change periodically.

(b) Are the agricultural employees of the employer employed in two or more non-contiguous geographical areas?

☒ Yes          ☐ No

If yes, state locations: See response to No. 6(a).

(c) Does the employer have any packing or cooling sheds?

☒ Yes          ☐ No

If yes, are they located on or off the farm property where agricultural employees work?

☒ Yes          ☐ No

(d) Does the employer agree that the unit sought in the Petition for Certification is appropriate?

☐ Yes          ☒ No

If no, describe the unit the employer contends is appropriate:

Unit description: | All agricultural employees working at the locations listed in response to No. 6(a).

(e) What agricultural commodities are involved in the work of employees in the bargaining unit sought and in the bargaining unit which the employer contends is appropriate?

Commodities: | Nursery: Grafted grapevines and trees.

**7. What is the duration and timing of the payroll period under which agricultural employees in the unit sought are paid?**

Payroll Period
Weekly

Other description: |

If weekly or bi-monthly, on which day of the week or which dates in the month does each new payroll period end?

Days or Dates: | The employer's payroll period begins on Monday and ends on Sunday.

\* If agricultural employees in the unit sought are paid on more than one payroll period, state the duration and timing of each payroll and **ATTACH** a list showing which agricultural employees are on each pay schedule:

Duration and Timing: |

**8.   (a) How many agricultural employees were employed in the payroll period immediately preceding the filing of the Petition for Certification, that is, during the last payroll period that ended before the date of filing the petition?**

Number of Agricultural Employees: | 688

\* **ATTACH** a copy of the employer's original payroll records which show the names of agricultural employees employed each day during the payroll period immediately preceding the filing of the Petition and the hours worked by each agricultural employee or, if employment is on a piece-rate basis, the number of units credited to each agricultural employee.

(b) What are the dates of the payroll period which the employer contends was or will be its peak payroll period for the current calendar year?

List dates: | Varies between December to March.

(c) How many employees were or will be employed in the payroll period?

Number of Agricultural Employees: | 700

(d) Does the employer agree that the number of agricultural employees employed in the payroll period immediately preceding the filing of the Petition for Certification is at least 50 percent of the employer's peak employment for the current calendar year?

☒ Yes          ☐ No

(e) If the employer contends that the petition has been filed when it is at less than 50% of its peak employment, provide the Regional Director with 1) a detailed explanation of how it calculates such peak employment and 2) payroll records showing the number of agricultural employees employed on each day, and the number of hours such agricultural employees worked, during the previous peak payroll period, as well as any crop and acreage statistics and other information relevant to the determination of its peak employment needs. The Regional Director shall have the discretion to require the employer to provide payroll records and/or crop and acreage statistics for up to three years prior to the filing of the petition.

**\* 9. ATTACH a complete and accurate list of the complete and full names and current street addresses (no postal addresses will be accepted) and job classifications of all agricultural employees, including agricultural employees hired through a labor contractor, in the bargaining unit sought by the Petition for Certification in the payroll period immediately preceding the filing of the Petition. The list shall also include the names, current street addresses (no postal addresses will be accepted) and job classifications of persons working for the employer as part of a family or other group for which the name of only one group member appears on the payroll.**

\* If the employer contends that the unit sought in the Petition for Certification is inappropriate, the employer shall **ATTACH**, in addition to the list described above, a complete and accurate list of the complete and full names and current street addresses (no postal addresses will be accepted) and job classifications of all agricultural employees, including labor contractor employees and family group employees, in the unit the employer contends is appropriate for the payroll period immediately preceding the filing of the Petition.

**\* 10. ATTACH the names, addresses and telephone numbers of all labor contractors who supplied labor to the employer during the payroll period immediately preceding the filing of the Petition and during the payroll period which the employer contends was its peak employment period.**

☐ Check if "None"

**11. Which languages other than English and Spanish should be used on the ballots in any election which may be conducted pursuant to the Petition for Certification?**

| Language: | | Number of Employees for Only This Language: | |
|---|---|---|---|
| Language: | | Number of Employees for Only This Language: | |
| Language: | | Number of Employees for Only This Language: | |

## Declaration

**I declare under penalty of perjury that I have read the above Response to the Petition for Certification and that the statements herein are true to the best of my knowledge and belief.**

By: _____   Date: _____

Signature of Representative or Person Filing Response

| Name | Seth Mehrten |
|---|---|
| Title | Partner |
| Addr | 1141 West Shaw Avenue, Suite 104 | Phone | (559) 248-2360 |
| City | Fresno | State | CA | Zip | 93711 | Fax | (559) 248-2370 |
| Email | SMehrten@TheEmployersLawFirm.com |

ALRB 42 E (Rev 11/08)     Page 4 of 4     Print Form

34

**State of California**
**Agricultural Labor Relations Board**
**PROOF OF SERVICE**
(Cal. Code Regs., tit. 8, § 20164)

I am a citizen of the United States and a resident of the County of Riverside. I am over the age of eighteen years and not a party to the within titled action. My business address is: ALRB, 81-713 Hwy 111, Ste. A, Indio, CA, 92201.

On **March 1, 2024,** I served a copy of the following document(s):

**REGIONAL DIRECTOR'S TALLY; DECLARATION OF YESENIA DE LUNA IN SUPPORT OF THE REGIONAL DIRECTOR'S TALLY**

Case Name: **WONDERFUL NURSERIES, LLC**; Case Number**: 2024-RM-002**; on the parties in said action, in the following manner:

**By Electronic File:** The above-referenced documents were e-filed on the Agricultural Labor Relations Board;

**By Electronic Mail**: The above-referenced document was e-mailed to the following parties at the listed e-mail addresses:


**Via Electronic File:**
Santiago Avila-Gomez
Executive Secretary
Agricultural Labor Relations Board
1325 J Street, Suite 1900-B
Sacramento CA 95814
E-File: Efile@ALRB.ca.gov

**Via Electronic Mail:**
Edgar Aguilasocho, Esq.
Martinez Aguilasocho Law, Inc.
P.O. Box 1998
Bakersfield, CA 93303
eaguilasocho@farmworkerlaw.com
mmartinez@farmworkerlaw.com
asotelo@farmworkerlaw.com
brizo@farmworkerlaw.com
info@farmworkerlaw.com

**Via Electronic Mail:**
Yesenia De Luna
Anibal Lopez
Agricultural Labore Relations Board
1642 W. Walnut Avenue
Visalia, CA 93277
yesenia.deluna@alrb.ca.gov
anibal.lopez@alrb.ca.gov

**Via Electronic Mail:**
Ronald H. Barsamian, Esq.
Barsamian & Moody
1141 W. Shaw Avenue, Suite 104
Fresno, CA 93711-3704
ronbarsamian@aol.com
smehrten@theemployerslawfirm.com
pmoody@theemployerslawfirm.com
choulihan@theemployerslawfrim.com
jpereda@theemployerslawfirm.com
cdemera@theemployerslawfirm.com
laborlaw@theemployerslawfirm.com

35

Executed on **March 1, 2024**, at Coachella, California. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Rosario Miranda
_____
Rosario Miranda

# EXHIBIT 4




Office of the
General Counsel

**ALRB**
AGRICULTURAL LABOR
RELATIONS BOARD

GAVIN NEWSOM
GOVERNOR

***Via Electronic Mail***

March 1, 2024

Seth Mehrten
Barsamian & Moody
1141 West Shaw, Suite 104
Fresno, CA 93711
smehrten@theemployerslawfirm.com

Re:    *Wonderful Nurseries, LLC;* Case Number: 2024-RM-002

Dear Mr. Mehrten:

Our office has received redacted declarations alleging misconduct by the United Farm Workers of America regarding the majority support petition. Due to the redactions, we cannot see if the declarations have been signed at all, nor if they are from workers on the eligibility list. The allegations are serious in nature, which under Labor Code section 1156.37(f)(1)(D), would allow for a filing of objections within five days if the board certifies the labor organization.

Finally, in response to your request for use of signature exemplars, neither the Act, regulations, nor proposed regulations require or contemplate a procedure whereby the Regional Director must compare signatures of workers to make her determination as to the showing of majority support. The Regional Director continues to actively conduct an investigation as to the petition, as provided by Labor Code section 1156.37(e) and will make her determination therefrom.

Sincerely,

*Anibal Lopez*

Anibal Lopez
Assistant General Counsel

CC:
Sean Sullivan (sean.sulliva@wonderful.com)
Ron Barsamian (ronbarsamian@aol.com)

📞 (916) 653-3699        📧 www.alrb.ca.gov        📍 1325 J Street, Suite 1900 / Sacramento, CA 95814

# EXHIBIT 5

# STATE OF CALIFORNIA

# AGRICULTURAL LABOR RELATIONS BOARD

| | |
|---|---|
| **In The Matter of:**<br><br>WONDERFUL NURSERIES, LLC,<br><br>    **Employer,**<br><br>**and**<br><br>UNITED FARM WORKERS OF AMERICA<br><br>    **Petitioner**. | Case No.  2024-RM-002 |

## CERTIFICATION OF INVESTIGATION OF VALIDITY OF
## MAJORITY SUPPORT PETITION AND PROOF OF SUPPORT

### MAJORITY SUPPORT ESTABLISHED

An investigation having been conducted under the supervision of the Agricultural Labor Relations Board ("Board" or "ALRB") in accordance with the procedures set forth in Section 1156.37 of the Agricultural Labor Relations Act (Labor Code Section 1156.37); and the Regional Director having concluded that a majority of workers eligible to submit authorization cards did so in support of a Majority Support Petition;

Pursuant to the authority vested in the undersigned by the Board, **IT IS HEREBY CERTIFIED** that a majority of the agricultural employees in the bargaining unit described below have authorized the **UNITED FARM WORKERS OF AMERICA ("UFW")** to be their exclusive collective bargaining representative; Thus, pursuant to Labor Code Section 1156, the UFW is now the exclusive representative of all agricultural employees in the bargaining unit, set forth below, for purposes of collective bargaining with respect to rates of pay, wages, hours of employment, or other conditions of employment; furthermore, pursuant to subdivision (e)(3) of Labor Code Section 1156.37, this certification immediately triggers **WONDERFUL NURSERIES, LLC,** duty to bargain with the **UFW**;

UNIT: All agricultural employees of **WONDERFUL NURSERIES, LLC** in the **STATE OF CALIFORNIA**;

**40**

Pursuant to subdivision (f)(1) of Labor Code Section 1156.37, any person who objects to this certification may file a petition setting forth their objections no later than Monday, **MARCH 11, 2024**.

Signed at Sacramento, California

On the **4**<sup>th</sup> day of **March, 2024**

On behalf of the
AGRICULTURAL LABOR
RELATIONS BOARD

_____
Santiago Avila-Gomez,
ALRB Executive Secretary

**41**

## STATE OF CALIFORNIA

## AGRICULTURAL LABOR RELATIONS BOARD

**In The Matter of:**

WONDERFUL NURSERIES, LLC.,

      **Employer,**

**and**

UNITED FARM WORKERS OF AMERICA

      **Petitioner.**

Case No.  2024-RM-002

### CERTIFICACIÓN DE INVESTIGACIÓN DE VALIDEZ DE PETICIÓN DE APOYO DE LA MAYORÍA Y PRUEBA DE APOYO

### APOYO MAYORITARIO ESTABLECIDO

Una investigación que se haya llevado a cabo bajo la supervisión de el Consejo de Relaciones Laborales Agrícolas ("Consejo" o "ALRB") de acuerdo con los procedimientos establecidos en la Sección 1156.37 de la Ley de Relaciones Laborales Agrícolas (Sección 1156.37 del Código Laboral); y la Directora Regional concluyó que la mayoría de los trabajadores elegibles para presentar tarjetas de autorización lo hicieron en apoyo de una Petición de Apoyo de la Mayoría;

De conformidad con la autoridad conferida al abajofirmante por el Consejo, **POR LA PRESENTE SE CERTIFICA** que la mayoría de los empleados agrícolas en la unidad de negociación que se describe a continuación han autorizado a la **UNIÓN DE CAMPESINOS ("UFW")** como su representante exclusivo en la negociación colectiva; Por lo tanto, de conformidad con la Sección 1156 del Código Laboral, la UFW es ahora el representante exclusivo de todos los empleados agrícolas en la unidad, que se establece a continuación, para los propósitos de negociación colectiva con respecto a tasas de pago, salarios, horas de trabajo u otras condiciones de empleo; además, de conformidad con la subdivisión (e)(3) de la Sección 1156.37 del Código Laboral, esta certificación inmediatamente activa el deber del empleador, **WONDERFUL NURSERIES, LLC** de negociar con la **UFW;**

42

UNIDAD: Todos los empleados agrícolas de **WONDERFUL NURSERIES, LLC** en el **ESTADO DE CALIFORNIA**.

De conformidad con la subdivisión (f)(1) de la Sección 1156.37 del Código Laboral, cualquier persona que se oponga a esta certificación puede presentar una petición exponiendo sus objeciones a más tardar el **11 de MARZO de 2024**.

Firmado en Sacramento, California

Este día 4 **de MARZO, 2024**

On behalf of the
AGRICULTURAL LABOR
RELATIONS BOARD

_____
Santiago Avila-Gomez,
ALRB Executive Secretary

**43**

**STATE OF CALIFORNIA**
**AGRICULTURAL LABOR RELATIONS BOARD**

**PROOF OF SERVICE**
(Code Civ. Proc., §§ 1013a, 1013b, 2015.5)

Case Name:    WONDERFUL NURSERIES, LLC Employer; and
              UNITED FARM WORKERS OF AMERICA, Petitioner Labor Organization

Case No.:     Case No. 2024-RM-002

    I am over the age of 18 years and not a party to this action. I am employed in the County of Sacramento. My business address is 1325 J Street, Suite 1900-B, Sacramento, California 95814.

    On March 4, 2024, I served this CERTIFICATION OF INVESTIGATION OF VALIDITY OF MAJORITY SUPPORT PETITION AND PROOF OF SUPPORT on the parties in this action as follows:

- **By Email** to the parties and Regional Director pursuant to Board regulations 20164 and 20169 (Cal. Code Regs., tit. 8, §§ 20164, 20169) from my business email address angelica.fortin@alrb.ca.gov:

  | | |
  |---|---|
  | Ronald H. Barsamian | Ronbarsamian@aol.com |
  | Seth G. Mehrten | Smehrten@theemployerslawfirm.com |
  | Counsel for Wonderful Nurseries, LLC | |

  | | |
  |---|---|
  | Mario Martinez | Mmartinez@farmworkerlaw.com |
  | Edgar Aguilasocho | Eaguilasocho@farmworkerlaw.com |
  | Martinez Aguilasocho Law, Inc. | |
  | Counsel for United Farm Workers of America | |

  *Courtesy copy to:*

  | | |
  |---|---|
  | Yesenia De Luna | Yesenia.DeLuna@alrb.ca.gov |
  | ALRB Regional Director | |
  | Anibal Lopez | Anibal.Lopez@alrb.ca.gov |
  | ALRB Assistant General Counsel | |

    Executed on March 4, 2024, at Sacramento, California. I certify under penalty of perjury that the foregoing is true and correct.

            *Angelica Fortin*
            Angelica Fortin
            Legal Secretary

**44**

# EXHIBIT 6

# UNITED FARM WORKERS

29700 Woodford-Tehachapi Rd. • P.O. Box 62 • Keene, CA 93531
Telephone: (661) 823-6105 • Fax: (661) 823-6174
*www.ufw.org*

March 4th, 2024.

*Sent Via Email*

Ron Barsamian
Attorney for Wonderful Nurseries, LLC.
BARSAMIAN & MOODY
A Professional Corporation
Attorneys at Law
1141 West Shaw Avenue, Suite 104
Fresno, California 93711-3704

Re:  Negotiations- Wonderful Nurseries, LLC.

Email: ronbarsamian@aol.com

RE: **Negotiations Request**

Dear Ron,

In accordance with the UFW's certification to represent all agricultural employees of Wonderful Nurseries, LLC in the state of California as per the ALRB certification 2024-RM-002 dated March 11, 2024, we are hereby requesting the following information so that we may begin negotiating our first collective bargaining agreement.  Please provide the following information:

1. An electronic, non-PDF format list of all the Wonderful Nurseries agricultural employees including direct hires and farm labor contractors (FLCs).  Such list shall include each employees' names, dates of hire, rates of pay, job classification, last known home address, last known mailing address, cellular number, home telephone number and Employee identification number;

2. For each employee the number of hours worked annually and total gross earnings paid for 2023;

3. The number of acres, location of acres and the respective agricultural product and variety involved in the operation of those acres;

4. Maps of the company's properties owned, leased or rented in the state of California the UFW is certified in;

5. Names, titles and contact information of company representatives, FLCs and management;

**46**

6. Dates when each operation such as Grating, Dissbudding, Cutting, Pruning, Wax, etc. for each nursery season work begins and ends and the type of work performed per season for each and for all the nursery departments;

7. Identification, brand and type of each of the company's agricultural products;

8. Copies of any current employee manuals, company policies on employee discipline, employee job descriptions, benefit summaries (including summary plan descriptions for each healthcare, vision, dental, retirement plan, or 401(k) plan, or other benefit offered), along with individual contribution rates for each (monthly, annual) for all employees.

9. Total hourly and/or monthly cost of any healthcare, dental and vision benefits provided to each employee at Wonderful Nurseries, LLC including seasonal, year round employees and FLCs. Number of participants in each company-provided benefit plan (i.e. individual, employee +1, family) and cost for each (for the company and the employee).

10. A copy of all company fringe benefit policies including vacation pay, holidays, bonuses. All piece rates, incentives and explanation of each, and/or wages for each classification, for work performed, per product or any other monetary or nonmonetary benefits which relate to the employees.

Please provide the above referenced information within 10 days from the date of this letter for the purposes of negotiating our first agreement. Should you have any questions please feel free to contact me at enavarrete@ufw.org or the address listed above. Thank you for your anticipated cooperation.

Respectfully,

Erika Navarrete
UFW Vice President

Enclosure (1)
cc:      -Armando Elenes, UFW Fund Manager

         -Ronald H. Barsamian, Attorney for Wonderful Nurseries, LLC.
         BARSAMIAN & MOODY A Professional Corporation Attorneys at Law

         -Seth Mehrten, Partner of Wonderful Nurseries, LLC.

         -Loretta van der Pol, Chief for California State Mediation and Conciliation Service

47

# EXHIBIT 7

Re: Wonderful Negotiations

From:  Ron Barsamian (ronbarsamian@aol.com)

To:  aelenes@ufw.org

Cc:  enavarrete@ufw.org; smehrten@theemployerslawfirm.com

Date:  Thursday, May 2, 2024 at 11:08 AM PDT

We're in the hearing now as you know...we'll figure out schedules and get back to you tomorrow or early next week (some folks traveling)...thanks

Ronald H. Barsamian
Barsamian & Moody
Attorneys at Law
1141 West Shaw, Suite 104
Fresno, CA 93711
Tele. (559) 248-2360
Fax. (559) 248-2370
Cell. (559) 269-2560
E-Mail: RonBarsamian@aol.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of the contents of this e-mail is strictly prohibited. If you think you have received this e-mail in error, please e-mail or telephone the sender.

On Thursday, May 2, 2024 at 11:05:44 AM PDT, Ron Barsamian <ronbarsamian@aol.com> wrote:

ok...thanks

Ronald H. Barsamian
Barsamian & Moody
Attorneys at Law
1141 West Shaw, Suite 104
Fresno, CA 93711
Tele. (559) 248-2360
Fax. (559) 248-2370
Cell. (559) 269-2560
E-Mail: RonBarsamian@aol.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of the contents of this e-mail is strictly prohibited. If you think you have received this e-mail in error, please e-mail or telephone the sender.

On Thursday, May 2, 2024 at 10:38:58 AM PDT, Armando Elenes <aelenes@ufw.org> wrote:

The following dates I am unavailable for the rest of the month:

May 6-10

May 13-15, depending on hour I might not be available the 16th

May 20-21, 23-24

May 27

Armando Elenes,

Secretary Treasurer / Secretario Tesorero

United Farm Workers / Union de Campesinos

P.O. Box 62

Keene, CA 93531

T: 661.823.6105 |  C: 661.750.9756

aelenes@ufw.org   |   www.ufw.org



The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

**From:** Ron Barsamian <ronbarsamian@aol.com>
**Sent:** Thursday, May 2, 2024 9:23 AM
**To:** Armando Elenes <aelenes@ufw.org>
**Cc:** Erika Navarrete <enavarrete@ufw.org>; Seth Mehrten <smehrten@theemployerslawfirm.com>
**Subject:** Re: Wonderful Negotiations

<div style="border:1px solid">

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

</div>

Sure...could you please list what dates you're unavailable during the next several weeks so we can check out the schedules.  Moving to Zoom so won't be in Bakersfield everyday, so that would help

Ronald H. Barsamian
Barsamian & Moody
Attorneys at Law
1141 West Shaw, Suite 104
Fresno, CA 93711
Tele. (559) 248-2360
Fax. (559) 248-2370
Cell. (559) 269-2560
E-Mail: RonBarsamian@aol.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying of the contents of this e-mail is strictly prohibited. If you think you have received this e-mail in error, please e-mail or telephone the sender.

On Thursday, May 2, 2024 at 08:47:30 AM PDT, Armando Elenes <aelenes@ufw.org> wrote:

HI Ron,

I understand that some folks are tied up on the Wonderful hearing but I would like to request we put some dates on the books now.  Please advise your available dates to commence negotiations with Wonderful Nurseries.

Thanks,

Armando Elenes,

Secretary Treasurer / Secretario Tesorero

United Farm Workers / Union de Campesinos

P.O. Box 62

Keene, CA 93531

T: 661.823.6105 |  C: 661.750.9756

aelenes@ufw.org   |   www.ufw.org



The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT 8

STATE OF CALIFORNIA

AGRICULTURAL LABOR RELATIONS BOARD

| | | |
|---|---|---|
| WONDERFUL NURSERIES, LLC, | ) | Case No.  2024-MMC-001 |
| | ) | |
| Employer, | ) | ORDER (1) DENYING EMPLOYER |
| | ) | WONDERFUL NURSERIES, LLC'S |
| and, | ) | MOTION TO HOLD IN ABEYANCE |
| | ) | PETITIONER UNITED FARM |
| UNITED FARM WORKERS OF | ) | WORKERS OF AMERICA'S REQUEST |
| AMERICA, | ) | FOR REFERRAL TO MANDATORY |
| | ) | MEDIATION AND CONCILIATION, |
| Petitioner. | ) | AND (2) DIRECTING PARTIES TO |
| | ) | MANDATORY MEDIATION AND |
| | ) | CONCILIATION |
| | ) | |
| | ) | |
| | ) | Administrative Order No. 2024-23 |
| | ) | (July 10, 2024) |
| _____ | ) | |

On June 26, 2024,[1] petitioner United Farm Workers of America (UFW)

filed with the Agricultural Labor Relations Board (ALRB or Board) a request for referral

to mandatory mediation and conciliation (MMC) with employer Wonderful Nurseries,

LLC (Wonderful) pursuant to Labor Code section 1164.[2] (See Board reg. 20400.)[3]

Wonderful filed an answer on July 1, as well as a separate motion to hold the UFW's

request in abeyance pending the resolution of a lawsuit it filed in Kern County Superior

Court challenging the constitutionality of Labor Code section 1156.37 and validity of the

---

[1] All dates are in 2024 unless otherwise indicated.

[2] Subsequent statutory citations are to the Labor Code unless otherwise indicated.

[3] The Board's regulations are codified at California Code of Regulations, title 8, section 20100 et seq.

1

UFW's certification.[4] For the reasons below, the Board DENIES Wonderful's motion to hold the UFW's request in abeyance, GRANTS UFW's request, and hereby DIRECTS the parties to MMC.

## **<u>BACKGROUND</u>**

On February 23, the UFW filed a majority support petition pursuant to section 1156.37. The regional director conducted an investigation and issued a report on March 4 stating her determination the UFW established majority support.[5] The executive secretary thereupon issued a certification on March 4 designating the UFW as the exclusive collective bargaining representative of Wonderful's agricultural employees. (§ 1156.37, subd. (e)(3).)

Wonderful timely objected to the certification pursuant to subdivision (f)(1) of section 1156.37, and the Board set some of its objections for hearing in *Wonderful Nurseries, LLC* (Mar. 18, 2024) ALRB Administrative Order No. 2024-04. The hearing on Wonderful's objections remains ongoing.

On June 26, the UFW filed the underlying request for referral to MMC. The request is accompanied by a supporting declaration from UFW Secretary-Treasurer Armando Elenes. Elenes' declaration states (1) the UFW was certified as the exclusive collective bargaining representative for Wonderful's agricultural employees on March 4,

---

[4] *Wonderful Nurseries, LLC v. ALRB*, Kern County Superior Court case no. BCV-24-101649, filed May 13.

[5] The regional director electronically filed her report late in the evening on Friday, March 1. The Board deemed the report filed effective Monday, March 4. (Board reg. 20169, subd. (a)(2).)

2

(2) the UFW initially requested bargaining on March 4, (3) 90 days have passed since the UFW's initial bargaining request and the parties have not reached a collective bargaining agreement, and (4) Wonderful has employed at least 25 agricultural employees during a calendar week in the preceding year. Wonderful timely answered the UFW's request for referral to MMC on July 1 and separately moved to hold the UFW's request in abeyance pending its litigation challenge to section 1156.37 and the UFW's certification. The UFW filed an opposition to Wonderful's abeyance motion on July 3.

## **DISCUSSION**

The Legislature added the MMC statute (§ 1164 et seq.) to the Agricultural Labor Relations Act (ALRA or Act)[6] in 2002 after finding the Act had failed to achieve its goal of facilitating the adoption of collective bargaining agreements for agricultural workers. (*Gerawan Farming, Inc. v. ALRB* (2017) 3 Cal.5th 1118, 1132-1133.) A substantial factor contributing to this dilemma was the continued refusal of agricultural employers to timely bargain in good faith with unions certified to represent their agricultural employees. (*Id*. at p. 1132.) The MMC statute thus establishes a procedure for ensuring a more effective collective bargaining process by facilitating the expeditious resolution of first contracts. (*Id*. at p. 1141.)

The UFW's request satisfies the statutory and regulatory criteria for referral to MMC. (§ 1164, subd. (a)(2); Board reg. 20400, subd. (b).) Wonderful's answer does

---

[6] The ALRA is codified at section 1140 et seq.

3

not dispute this. Nevertheless, Wonderful resists referral to MMC on grounds:

> (1) the certification "will be proven invalid and will be revoked" after the conclusion of the objections hearing being conducted pursuant to subdivision (f) of section 1156.37;

> (2) section 1156.37 is unconstitutional;

> (3) the MMC statute constitutes an unlawful delegation of authority; and

> (4) the MMC statute imposes "unconditional conditions" and a "substantial monetary obligation" on Wonderful by requiring it to bear an equal share of the costs of MMC.

Separately, Wonderful asks the Board to hold the UFW's request in abeyance, contending it is not subject to arbitration, has not consented to arbitration, and will suffer irreparable harm if directed to MMC.

None of Wonderful's allegations provide a basis for the Board to hold this matter in abeyance or otherwise defer or decline the UFW's request for referral to MMC.[7] The UFW's certification issued in accordance with subdivision (e)(3) of section 1156.37. Wonderful plainly is subject to referral to MMC. (§§ 1156.37, subds. (e)(3), (f)(3), 1164, subd. (a).) A party's consent to MMC when requested by the other party to the collective bargaining relationship is not, and never has been, a prerequisite for referral to MMC proceedings. (§ 1164, subd. (a); Board reg. 20400, subd. (b).) The authorities cited by Wonderful are inapposite, involve private or contractual arbitration between private parties, and have no relevance to MMC proceedings conducted under the ALRA.

---

[7] In fact, the California Supreme Court already has rejected the contention the MMC statute constitutes an unlawful delegation of authority. (*Gerawan Farming, Inc.*, *supra*, 3 Cal.5th at pp. 1146-1152.)

4

Wonderful's remaining arguments also are unavailing. The Board has no authority to declare or refuse to enforce the provisions of sections 1156.37 or 1164 as unconstitutional. (Cal. Const., art. 3, § 3.5; *Wonderful Nurseries, LLC* (Apr. 12, 2024) ALRB Admin. Order No. 2024-08, pp. 7-8; *Wonderful Nurseries, LLC*, *supra*, ALRB Admin. Order No. 2024-04, pp. 6-7; *Gerawan Farming, Inc.* (2013) 39 ALRB No. 5, p. 4; *Hess Collection Winery* (2003) 29 ALRB No. 6, pp. 6-7.) Also unpersuasive is Wonderful's reliance on an order of the Deputy General Counsel of the New York Public Employment Relations Board (NYPERB) staying collective bargaining impasse proceedings pending resolution of an employer's objections to the union's certification. First, as indicated above, we have no authority to disregard or refuse to enforce the relevant statutory provisions of the ALRA. Second, with all due respect to the NYPERB and whatever the merits of the NYPERB's order cited by Wonderful as it relates to the statutes or regulations administered by it,[8] that case simply has no application or relevance to the UFW's request before *our* Board under *our* Act. Section 1156.37, subdivision (f)(3) plainly states that an employer's objections to a majority support certification shall not diminish the employer's bargaining obligation or delay the period of time after which MMC may be requested by either party to the bargaining relationship. (Cf. N.Y. COMP. CODES R. & REGS. tit. 12, § 263.29(d) [NYPERB authority to stay certification after objections filed].)

---

[8] Cf. N.Y. LAB. LAW §§ 702-b, 705-1; N.Y. COMP. CODES R. & REGS. tit. 12, §§ 263.29, 263.102.

5

The statutory scheme reflects the Legislature's intent that an employer's challenge to a union's certification shall not provide a basis for delaying or precluding MMC, but rather that such separate proceedings may occur concurrently. (*Wonderful Nurseries, LLC*, *supra*, ALRB Admin. Order No. 2024-08, p. 8; *Wonderful Nurseries, LLC*, *supra*, ALRB Admin. Order No. 2024-04, p. 7; see *Premiere Raspberries, LLC* (2018) 44 ALRB No. 8, pp. 4-5; *Premiere Raspberries, LLC* (2018) 44 ALRB No. 3, p. 3; *Premiere Raspberries, LLC* (2018) 44 ALRB No. 2, pp. 3-4.) The Legislature determined this to be necessary to avoid the types of delays and other tactics that have frustrated the collective bargaining process under our Act. If the UFW's certification is revoked because any of Wonderful's objections are sustained after hearing, then any contract resulting from MMC will be nullified. (See *Gerawan Farming, Inc. v. ALRB* (2020) 52 Cal. App. 5th 141, 160, fn. 10.) In any event, judicial review is available, including of constitutional claims, if Wonderful (or the UFW) is unsatisfied with the terms of a contract ordered into effect at the conclusion of MMC proceedings. (§ 1164, subd. (b).)

## **ORDER**

For the foregoing reasons, the Agricultural Labor Relations Board hereby DIRECTS petitioner United Farm Workers of America and employer Wonderful Nurseries, LLC to mandatory mediation and conciliation pursuant to Labor Code section 1164, subdivision (b) and Board regulation 20402, subdivision (b). Upon the issuance of this Order, the executive secretary shall request the California State Mediation and Conciliation Service furnish a list of nine mediators to be provided to the parties. The

6

parties shall have seven days from receipt of the list to select a mediator in accordance with Labor Code section 1164, subdivision (b) and Board regulation 20403.

IT IS SO ORDERED.

DATED: July 10, 2024

Victoria Hassid, Chair

Isadore Hall, III, Member

Barry Broad, Member

Ralph Lightstone, Member

Cinthia N. Flores, Member

7

**STATE OF CALIFORNIA**
**AGRICULTURAL LABOR RELATIONS BOARD**


**PROOF OF SERVICE**
(Code Civ. Proc., §§ 1013a, 1013b, 2015.5)


Case Name:   UNITED FARM WORKERS OF AMERICA, Petitioner Labor Organization,
and,
WONDERFUL NURSERIES, LLC, Employer

Case No.:   2024-MMC-001

I am over the age of 18 years and not a party to this action. I am employed in the County of Sacramento. My business address is 1325 J Street, Suite 1900-B, Sacramento, California 95814.

On July 10, 2024, I served this **ORDER (1) DENYING EMPLOYER WONDERFUL NURSERIES, LLC'S MOTION TO HOLD IN ABEYANCE PETITIONER UNITED FARM WORKERS OF AMERICA'S REQUEST FOR REFERRAL TO MANDATORY MEDIATION AND CONCILIATION, AND (2) DIRECTING PARTIES TO MANDATORY MEDIATION AND CONCILIATION [Admin. Order No. 2024-23]** on the parties in this action as follows:

- **By Email** to the parties pursuant to Board regulations 20164 and 20169 (Cal. Code Regs., tit. 8, §§ 20164, 20169) from my business email address angelica.fortin@alrb.ca.gov:

| | |
|---|---|
| Ronald H. Barsamian, Esq. | Ronbarsamian@aol.com |
| Seth G. Mehrten, Esq. | Smehrten@theemployerslawfirm.com |
| Barsamian & Moody | Laborlaw@theemployerslawfirm.com |
| Counsel for Employer Wonderful Nurseries, LLC | |

| | |
|---|---|
| Mario Martinez | MMartinez@farmworkerlaw.com |
| Edgar Aguilasocho, Esq. | EAguilasocho@farmworkerlaw.com |
| Martinez Aguilasocho Law | Info@farmworkerlaw.com |
| Counsel for Petitioner United Farm Workers of America | |

Executed on July 10, 2024, at Sacramento, California. I certify under penalty of perjury that the foregoing is true and correct.

*Angelica Fortin*
Angelica Fortin, Legal Secretary


Admin. Order No. 2024-23
Proof of Service

60

# EXHIBIT 9

**STATE OF CALIFORNIA**

**AGRICULTURAL LABOR RELATIONS BOARD**

UNITED FARM WORKERS OF AMERICA,      )    CASE NO. 2024-RM-002
)
          Petitioner Labor  )
          Organization     )    **ORDER DENYING MOTION TO**
)    **INTERVENE**
and,                    )
)
WONDERFUL NURSERIES, LLC  )
)
          Employer.    )
)
)

On March 25, 2024, the National Right to Work Legal Defense Foundation, Inc., on behalf of a group of thirteen alleged employees ("Proposed Intervenors"), filed a Motion to Intervene in the above-captioned proceeding of Wonderful Nurseries, LLC. For reasons set forth below, Proposed Intervenors' Motion is **Denied**.

## I.    PROCEDURAL BACKGROUND

The procedural history of this matter has been described in detail in several Administrative Orders issued by the Agricultural Labor Relations Board (ALRB or Board). (See Administrative Order Nos. 2024-04, 2024-05, 2024-06, and 2024-10.) That history is recounted here only to the extent necessary for the disposition of the Motion to Intervene.

Following the Regional Director's determination of majority support for labor organization United Farm Workers of America (UFW), the Board's Executive Secretary

issued a certification designating the UFW as the exclusive representative of Employer's agricultural employees. (See Lab. Code, § 1156.37, subd. (e)(3).)

Pursuant to section 1156.37, subdivision (f), of the Labor Code, Employer filed timely objections to that certification, enumerated one (1) through sixteen (16). Employer alleges, *inter alia*, that UFW obtained signatures on authorization cards that were obtained through "fraud, duress, trickery, and other unlawful conduct."

Following such objections, the Board may administratively rule on the objections, or order a hearing to rule on the objections." (Lab. Code, § 1156.37, subd. (f)(2).) Here, the Board administratively dismissed Employer's objections numbered 4- 6, 9- 12, 14, and 16. The Board ordered a hearing as Employer's objections numbered 1-3, 7, 8, and 13, and noted that the hearing would be conducted in accordance with Board regulation 20370. (Administrative Order Nos. 2024-04, 2024-06.)

On March 25, 2024, Proposed Intervenors filed a Motion to Intervene ("Motion").

On April 17, 2024, Executive Secretary, issued a Notice of Recommencement of Hearing and Reassignment of Matter. The hearing in this matter is now set to recommence on April 23, 2024, before the undersigned as the Independent Hearing Examiner.

On April 18, 2024, UFW filed its Opposition to the Motion. Employer has not submitted any opposition or response to the Motion, which is now ripe for decision.

## II.    DISCUSSION

Under section 387 of the Code of Civil Procedure ("C.C.P."), "[t]here are two types of intervention: mandatory intervention (sometimes called intervention as of right)

and permissive intervention." (*State Water Bd. Cases* (2023) 97 Cal. App. 5th 1035, 1043.) Proposed Intervenors assert they are entitled to mandatory intervention, pursuant to C.C.P. 387, subdivision (d)(1). (Motion, p. 1.) Under that provision, intervention is mandatory if "[a] provision of law confers an unconditional right to intervene." (Cal. Code Regs., § 387, subd. (d)(1)(A).) Courts must also grant a motion to intervene where a party claims an interest that would be impaired or impeded by the action "unless that person's interest is adequately represented by one or more of the existing parties." (Cal. Code Regs., § 387, subd. (d)(1)(B).)

While the Board may look to C.C.P. provisions for guidance, it does not generally apply to Board proceedings. (See *Gerawan Farming, Inc*. (2013) 39 ALRB No. 11.) However, even if it did apply, Proposed Intervenors would not be entitled to intervene as a matter of right.

First, Proposed Intervenors do not have "an unconditional right to intervene." Under Board Regulation 20370, subdivision (c), the "necessary parties" to an investigatory hearing concerning a representation matter "are the petitioner, the employer, and any other labor organization which has intervened pursuant to section 20325." (Cal. Code of Regs., tit. 8, § 20370, subd. (c).) In this matter, the necessary parties are UFW (the petitioner) and Wonderful Nurseries, LLC (the Employer).[1] Therefore, there are no other parties, including Proposed Intervenors, who have an unconditional right to intervene.

Second, Proposed Intervenors assert that they have an interest in protecting their

---

[1] No labor organization that has sought intervention pursuant to Board Regulation 20325.

rights, under Labor Code section 1152, "to freely choose or reject a bargaining agent," and that these rights are threatened by the UFW's alleged "unlawful, misleading, and fraudulent tactics." (Motion, p. 7.) It is doubt that Proposed Intervenors have demonstrated any interests that differ from the existing parties in this case. (See *Coastal Berry Farms, LLC* (1998) 24 ALRB No. 4, pp. 4-5 [noting that, in election objections proceeding, individual employees "could have no special interest in the outcome that differentiates them from the interest possessed by any other voter"].) While Proposed Intervenors assert that their interests "are separate and distinct from those of [Employer]," they fail to demonstrate how those interests are in any way distinct. Proposed Intervenors articulate no difference between the outcome they and Employer seek in this matter.

Moreover, Proposed Intervenors fail to demonstrate how their interests are not "adequately represented by one or more of the existing parties." (Cal. Code Regs., § 386, subd. (d)(1)(B).) To be sure, Proposed Intervenors do *assert* that no current party is capable of adequately protecting these rights. (*Id.*, pp. 8-9 [discussing intervention under Rule 24 of the Federal Rules of Civil Procedure].) But these assertions are supported by little more than speculation. (See Motion, pp. 9-11.) Here, the UFW has been certified as the bargaining representative of Employer's agricultural employees, and UFW owes a duty of fair representation to all such employees. (See *Gerawan Farming, Inc.* (2013) 39 ALRB No. 11 [citing *Vaca v. Sipes* (1967) 386 U.S. 171, 177; *United Farm Workers of America* (2011) 37 ALRB No. 3].) Proposed Intervenors, of course, seek to intervene and assert that the certification of the UFW was illegitimate. But that is exactly the position

4

ORDER DENYING MOTION TO INTERVENE

taken by Employer in this matter. Proposed Intervenors fail to explain how their interests will not be adequately represented by UFW (the certified representative) or Employer (the objecting party). Thus, intervention of Proposed Intervenors is not mandatory.

If intervention is not mandatory, it may still be "permissive" under C.C.P. section 387, subdivision (d)(2). Proposed Intervenors do not explicitly argue for "permissive" or "discretionary" intervention. However, even if they had, the undersigned finds little reason to depart from Board practice of denying intervention to individual employees in representation matters.

Both the Board and the National Labor Relations Board ("NLRB") "have generally rejected attempts by individual employees to intervene in representation and unfair labor practice cases." (*Gerawan Farming, Inc*., *supra*, 39 ALRB No. 11.) For example, in *Coastal Berry Farms, LLC*, the Board held that, in accordance with the prevailing rule under the NLRA, only "the actual parties to the election" had a sufficient "interest in the outcome of the proceeding" to have standing to file objections. (*Coastal Berry*, *LLC*, *supra*, 24 ALRB No. 4 at 6-7.) The ALRB, like the NLRB, has "consistently interpreted the phrase 'interest in the outcome of the proceeding' to apply only to the actual parties to the election." (*Id*.)

In *Gerawan Farming, Inc.*, the Board again noted that "the NLRB generally does not permit individual employees to intervene in representation and unfair labor practice cases." (*Gerawan Farming, Inc*., *supra*, 39 ALRB No. 11 at 3 [citing NLRB precedent].) As it is required to "follow applicable precedents of the National Labor Relations Act" (Lab. Code, § 1148), the Board has therefore denied requests from individual employees

5

ORDER DENYING MOTION TO INTERVENE

1    to intervene in such proceedings. (*Id.*) Again, individual employees do not have an
2    interest that can be differentiated from the necessary parties to objection proceedings.
3
     (*Id.*) Again, beyond speculation and hypothetical scenarios, Proposed Intervenors have
4
5    failed to show how their intervention is necessary protect any individuals' interests in this
6    matter.

7    **III.    ORDER**
8
9          For the foregoing reasons, Proposed Intervenor's Motion is **DENIED**.
10
11         It is so **ORDERED**.
12
13         Dated: April 22, 2024            *Vincent J. Mersich*
14                                           Vincent J. Mersich
15                                           Chief Administrative Law Judge
                                             Agriculture Labor Relations Board
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATE OF CALIFORNIA**
**AGRICULTURAL LABOR RELATIONS BOARD**

**PROOF OF SERVICE**
(Code Civ. Proc., §§ 1013a, 1013b, 2015.5)

Case Name:   **UNITED FARM WORKERS OF AMERICA**, Petitioner Labor
Organization,

and,

**WONDERFUL NURSERIES, LLC**, Employer.

Case No.:    Case No. 2024-RM-002

I am over the age of 18 years and not a party to this action. I am employed in the County of Sacramento. My business address is 1325 J Street, Suite 1900-B, Sacramento, California 95814.

I served this **ORDER DENYING MOTION TO INTERVENE** on the parties in this action as follows:

● **By Email** to the parties pursuant to Board regulation 20164 & 20169 (Cal. Code Regs., tit. 8, §§ 20164 & 20169) from my business email address lori.miller@alrb.ca.gov:

| | |
|---|---|
| Ronald H. Barsamian, Esq. | ronbarsamian@aol.com |
| Seth G. Mehrten, Esq. | smehrten@theemployerslawfirm.com |
| Barsamian & Moody | laborlaw@theemployerslawfirm.com |
| Counsel for Wonderful Nurseries, LLC | |

| | |
|---|---|
| Mario Martinez, Esq. | mmartinez@farmworkerlaw.com |
| Brenda Rizo, Esq. | brizo@farmworkerlaw.com |
| Martinez Aguilasocho Law, Inc. | info@farmworkerlaw.com |
| Counsel for United Farm Workers of America | |

● **Courtesy Copy** to

| | |
|---|---|
| Yesenia DeLuna | yesenia.deluna@alrb.ca.gov |
| Regional Director | |
| Rosalia Garcia | rosalia.garcia@alrb.ca.gov |
| Assistant General Counsel | |
| David Sandoval | david.sandoval@alrb.ca.gov |
| Assistant General Counsel | |

1

PROOF OF SERVICE

1        I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.  Executed on April 22, 2024, at Sacramento California.

3

4

5                             Lori A. Miller

6                             Legal Secretary

2

PROOF OF SERVICE

# EXHIBIT 10

STATE OF CALIFORNIA

AGRICULTURAL LABOR RELATIONS BOARD

| | | |
|---|---|---|
| UNITED FARM WORKERS OF AMERICA, | ) ) ) | Case No.  2024-RM-002 |
| Petitioner Labor Organization, | ) ) ) ) ) | ORDER GRANTING PROPOSED INTERVENORS' APPLICATION FOR SPECIAL PERMISSION TO APPEAL; DENYING APPEAL FROM ORDER DENYING MOTION TO INTERVENE |
| and, | ) ) | |
| WONDERFUL NURSERIES, LLC, | ) ) ) | |
| Employer. | ) ) ) | Administrative Order No. 2024-12 (May 6, 2024) |

On February 23, 2024,[1] petitioner labor organization United Farm Workers of America (UFW) filed a majority support petition pursuant to section 1156.37 of the Agricultural Labor Relations Act (ALRA or Act).[2] Following a determination of majority support and the issuance of a certification by the executive secretary of the Agricultural Labor Relations Board (ALRB or Board), employer Wonderful Nurseries, LLC (Wonderful) timely filed objections to the certification pursuant to subdivision (f)(1) of section 1156.37. In *Wonderful Nurseries, LLC* (Mar. 18, 2024) ALRB Administrative Order No. 2024-04, we set for hearing Wonderful's objection nos. 1, 2, 3, 7, 8, and 13, and dismissed the remaining objections.

---

[1] All dates are in 2024 unless otherwise indicated.

[2] The ALRA is codified at Labor Code section 1140 et seq. Subsequent statutory citations are to the Labor Code unless otherwise indicated.

1

The matter was assigned to an independent hearing examiner (IHE) and set for hearing on March 25. The IHE issued an order on March 27 staying the hearing on all objections for 30 days to allow the general counsel additional time to conduct its investigation of unfair labor practice charges involving Wonderful and the UFW. Wonderful appealed, and on April 12 the Board issued an order reversing the IHE's stay order and directing the objections hearing recommence without delay, among other things. (*Wonderful Nurseries, LLC* (Apr. 12, 2024) ALRB Admin. Order No. 2024-08; see *Wonderful Nurseries, LLC* (Apr. 18, 2024) ALRB Admin. Order No. 2024-10, p. 2.)

One day after the IHE ordered the objections hearing stayed, on March 28 a group of Wonderful's agricultural employees represented by the National Right to Work Legal Defense Foundation, Inc. (Foundation) filed a motion to intervene in the objections hearing.[3] After the Board lifted the stay and ordered the hearing to recommence, the IHE denied that motion in an order dated April 22. The proposed intervenor-employees timely filed the underlying application for special permission to appeal that order. (See Board regs. 20242, subd. (b), 20370, subd. (s).)[4] The UFW filed an opposition to the application on April 29.

For the following reasons, the Board GRANTS the proposed intervenors

---

[3] The proposed intervenors are Claudia Chavez, Domatila Vasquez, Maria Ester Gutierrez, Maria Chacon, Erik Ferrer Chacon, Gloria Gonzalez, Etelverto Torres, Florentina Torres Cruz, Maria C. Pedro, Francisco Antonio, Ines Cruz, Angelina Torres, and Selene Lizzaraga.

[4] The Board's regulations are codified at California Code of Regulations, title 8, section 20100 et seq.

special permission to appeal the IHE's order denying their intervention motion. Having considered the application, the Board DENIES the appeal on the merits.[5]

## **DISCUSSION**

### I.   **Propriety of Interlocutory Review**

Under Board regulation 20242, subdivision (b), interlocutory appeals are not allowed except upon special permission from the Board. As a general rule, the Board will entertain an interlocutory appeal only when the issues raised cannot be addressed effectively through exceptions pursuant to regulations 20282 or 20370, subdivision (j). (Board reg. 20242, subd. (b); *Premiere Raspberries, LLC* (2012) 38 ALRB No. 11, pp. 2-3; *King City Nursery, LLC* (Jan. 9, 2020) ALRB Admin. Order No. 2020-01-P, pp. 3-4.)

A party applying for special permission to appeal an interlocutory ruling must "set[] forth its position on the necessity for interim relief." (Board reg. 20242, subd. (b).) The proposed intervenors fail to do so. However, it is evident the proposed intervenors' request to participate with full party status in the objections hearing cannot be effectively remedied on exceptions pursuant to regulation 20370, subdivision (j). Therefore, we will grant the application for special permission to appeal the IHE's order

---

[5] The filings before us include ad hominem and personal attacks directed towards the IHE and between counsel. Suffice it to say, this type of conduct directed towards ALRB staff, including our IHEs, administrative law judges, and counsel, as well as other counsel, parties, or witnesses in a proceeding is inappropriate and will not be tolerated. Counsel are admonished to conform their conduct and behavior consistent with professional norms and to treat all other counsel, witnesses, or other staff or individuals participating in our proceedings with dignity and respect. (Bus. & Prof. Code, § 6068, subd. (b); see Board reg. 20800; *State of California (Department of Corrections)* (2001) PERB Dec. No. 1435-S, p. 2, fn. 2; see also *National Association of Government Employees* (1999) 327 NLRB 676; *In re: Joel I. Keiler* (1995) 316 NLRB 763.)

3

denying the intervention motion.

Accordingly, we turn now to the merits of the appeal.

## II.      The Proposed Intervenors Lack Standing to Intervene

According party status to individual employees or a group of employees in a representation proceeding is contrary to our regulations and precedent. Board regulation 20370, subdivision (c) clearly states: "The necessary parties to an investigative hearing are the petitioner, the employer, and any other labor organization which has intervened pursuant to section 20325." Thus, the proper parties in the underlying objections hearing are the petitioner (UFW) and employer (Wonderful).[6]

In *Coastal Berry Farms, LLC* (1998) 24 ALRB No. 4, the Board addressed a similar situation involving a group of employees who attempted to file objections to a secret ballot election conducted pursuant to section 1156.3. The Board held under the facts of that case the individual employees lacked standing to file objections. (*Id*. at p. 8.) In doing so, the Board interpreted the language in section 1156.3 stating "any person" may file objections as limited to those parties possessing an "interest in the outcome of the proceeding," which in the context of an election means only the "actual parties to the election." (*Id*. at p. 7; § 1140.4, subd. (d).)

Although *Coastal Berry Farms* involved a secret ballot election conducted pursuant to section 1156.3, we find the underlying rationale adopted by the Board in that

---

[6] No other labor organization intervened in this proceeding, nor does section 1156.37 contemplate intervention in a majority support proceeding by a separate labor organization.

case applicable here. In the context of a majority support proceeding, section 1156.37, subdivision (f)(1) allows "any person" to file objections to a labor organization's certification. As noted, section 1156.3, subdivision (e)(1), includes identical language purporting to allow "any person" to file objections after a secret ballot election. It is presumed the Legislature was aware of the Board's prior interpretation of this language under section 1156.3 when it adopted identical language in the context of section 1156.37. (*Gerawan Farming, Inc. v. ALRB* (2017) 3 Cal.5th 1118, 1155-1156.)

Accordingly, it necessarily follows the proposed intervenors here lacked standing to file objections in this matter because they are not parties to the majority support proceeding, which is limited to the petitioning labor organization and subject employer whose employees the labor organization seeks to represent. The proposed intervenors' lack of standing to file objections is consistent with the identification in Board regulation 20370, subdivision (c) of those parties deemed necessary to an objections proceeding such as this one. Neither the regulation nor our precedent contemplates individual employees or groups of employees participating as separate parties in such matters. (*Gerawan Farming, Inc*. (2013) 39 ALRB No. 11, pp. 3-4.) This approach is consistent with applicable precedent under the National Labor Relations Act (NLRA).[7] (§ 1148; *Gerawan Farming, Inc*., *supra*, 39 ALRB No. 11, p. 3 ["the Board and the National Labor Relations Board (the 'NLRB') have generally rejected attempts by individual employees to intervene in representation and unfair labor practice cases"];

---

[7] The NLRA is codified at 29 U.S.C. § 151 et seq.

5

*Coastal Berry Farms, LLC*, *supra*, 24 ALRB No. 4, pp. 6-7; see NLRB Casehandling Manual, Part 2, Representation Proceedings, § 11194.4; *Affinity Medical Center* (Jan. 11, 2013) 2013 NLRB LEXIS 13, *1; *Affinity Medical Center* (Apr. 30, 2013) 2013 NLRB LEXIS 292, *1.)

      Proposed intervenors allege they will be deprived due process if not allowed to participate at the objections hearing. Not so. At least one federal court has rejected this argument. (*Ashley v. NLRB* (M.D.N.C. 2006) 454 F.Supp.2d 441, affd. (4th Cir. Nov. 20, 2007) 255 Fed. Appx. 707 [2007 U.S. App. LEXIS 26928].) In *Ashley* a group of employees sought to intervene in a representation proceeding before the NLRB, which the NLRB denied. The employees filed a lawsuit asserting the denial of their intervention motion deprived them due process. The court held they lacked standing to pursue their due process claims in court after looking to the "entire panoply" of processes provided by the NLRB. (*Id*. at p. 445.) The court found "[a] plain reading of the NLRB's regulations confirms that Plaintiffs utilized the wrong procedures." (*Id*. at p. 446.) The court acknowledged the NLRB's rules against allowing employee intervention in representation proceedings, and proceeded to note that although "the NLRB does not allow individual employees to participate in the representation proceedings as an intervenor, it allows 'any person' to file an unfair labor practice claim." (*Ibid*.) The court then concluded the unfair labor practice process available to the employees provided "adequate procedural protections" for them to present their claims to the NLRB, and they thus suffered no due process deprivation. (*Ibid*.)

      The proposed intervenors in this case appear to contend their signatures on

6

authorization cards procured by the UFW were obtained through fraud or misrepresentation. At this time, four unfair labor practice charges have been filed against the UFW by agricultural employees of Wonderful asserting these types of claims, among others: unfair labor practice charge nos. 2024-CL-002 (filed Mar. 13), 2024-CL-003 (filed Mar. 14), 2024-CL-004 (filed Apr. 18), and 2024-CL-005 (filed Apr. 18). Two of those charges (nos. 2024-CL-004 and 2024-CL-005) were filed by employees included amongst the proposed intervenors here. Those charges are pending investigation by the general counsel, and the general counsel will determine whether reasonable cause exists to believe an unfair labor practice has been committed sufficient to warrant issuance of a complaint. (§ 1149; Board regs. 20216-20220.) Therefore, as in *Ashley*, adequate procedures exist by which the proposed intervenors may present their claims to the ALRB, and no due process deprivation is incurred by virtue of their inability to participate in the objections hearing.

     Finally, intervention by the employees here is inappropriate for an additional reason: they are members of the bargaining unit the UFW now is certified to represent as their exclusive collective bargaining representative. (§ 1156.37, subds. (e)(3), (f)(3).) Intervention by bargaining unit employees, whether in support of or in opposition to, their exclusive bargaining representative is improper. As noted, the employees have available to them other avenues by which to pursue claims against the UFW, but intervention in an objections hearing is not an appropriate forum by which to do so. (*Gerawan Farming, Inc.*, *supra*, 39 ALRB No. 11, p. 8 [allowing intervention by employees would be "unworkable and it would be fundamentally inconsistent with the

7

union's status as bargaining representative"]; see *Gerawan Farming, Inc. v. ALRB* (2019) 40 Cal.App.5th 241, 274-275; *Petaluma City Elementary School Dist./Joint Union High School Dist.* (2016) PERB Dec. No. 2485-E, p. 30.)

In sum, intervention by the employees here is inappropriate, contrary to precedent and our own regulations, and appropriately was denied by the IHE.

## **ORDER**

For the foregoing reasons, the Agricultural Labor Relations Board GRANTS the proposed intervenor-employees special permission to appeal the investigate hearing examiner's order denying their motion to intervene in the objections hearing. Having considered the appeal, the Board DENIES the appeal on the merits.

IT IS SO ORDERED.

DATED: May 6, 2024

Victoria Hassid, Chair

Isadore Hall, III, Member

Barry Broad, Member

Ralph Lightstone, Member

Cinthia N. Flores, Member

8

78

**STATE OF CALIFORNIA**
**AGRICULTURAL LABOR RELATIONS BOARD**

**PROOF OF SERVICE**
(Code Civ. Proc., §§ 1013a, 1013b, 2015.5)

Case Name:  UNITED FARM WORKERS OF AMERICA, Petitioner Labor Organization,
and,
WONDERFUL NURSERIES, LLC, Employer

Case No.:  2024-RM-002

       I am over the age of 18 years and not a party to this action. I am employed in the County of Sacramento. My business address is 1325 J Street, Suite 1900-B, Sacramento, California 95814.

       On May 6, 2024, I served this **ORDER GRANTING PROPOSED INTERVENORS' APPLICATION FOR SPECIAL PERMISSION TO APPEAL; DENYING APPEAL FROM ORDER DENYING MOTION TO INTERVENE (Administrative Order No. 2024-12)** on the parties in this action as follows:

- **By Email** to the parties pursuant to Board regulations 20164 and 20169 (Cal. Code Regs., tit. 8, §§ 20164, 20169) from my business email address angelica.fortin@alrb.ca.gov:

| | |
|---|---|
| Ronald H. Barsamian, Esq. | Ronbarsamian@aol.com |
| Seth G. Mehrten, Esq. | Smehrten@theemployerslawfirm.com |
| Barsamian & Moody | Laborlaw@theemployerslawfirm.com |
| Counsel for Employer Wonderful Nurseries, LLC | |

| | |
|---|---|
| Mario Martinez | MMartinez@farmworkerlaw.com |
| Edgar Aguilasocho, Esq. | EAguilasocho@farmworkerlaw.com |
| Martinez Aguilasocho Law | Info@farmworkerlaw.com |
| Counsel for Petitioner United Farm Workers of America | |

| | |
|---|---|
| W. James Young | Wjy@nrtw.org |
| National Right to Work Legal Defense Foundation, Inc. | |
| Counsel for Proposed Intervenors Claudia Chavez, et al. | |

- **Courtesy Copy**

| | |
|---|---|
| Yesenia DeLuna | Yesenia.Deluna@alrb.ca.gov |
| ALRB Regional Director | |
| Rosalia Garcia | Rosalia.Garcia@alrb.ca.gov |
| ALRB Assistant General Counsel | |
| David Sandoval | David.Sandoval@alrb.ca.gov |
| ALRB Assistant General Counsel | |

1

Admin. Order No. 2024-12
Proof of Service

Executed on May 6, 2024, at Sacramento, California. I certify under penalty of perjury that the foregoing is true and correct.

_Angelica Fortin_
Angelica Fortin
Legal Secretary

2

Admin. Order No. 2024-12
Proof of Service

**80**